UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Paula Kritzman, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN EXPRESS RETIREMENT PLAN, AMERICAN EXPRESS COMPANY, AMERICAN EXPRESS COMPANY EMPLOYEE BENEFITS ADMINISTRATION COMMITTEE, JOHN DOES 1-100<br>Defendants. | JUDGE KAPLAN<br><br>06 CV 0233<br>Civil Action No.<br><br>CLASS ACTION<br><br>JURY TRIAL REQUESTED<br> |

Plaintiff Paula Kritzman ("Plaintiff"), a participant in the "American Express Retirement Plan" (the "Plan"), on behalf of herself and a class of all others similarly situated, alleges as follows:

## INTRODUCTION

1. This is a class action brought pursuant to § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, on behalf of the participants in and beneficiaries of the Plan, a defined benefit plan established and sponsored by American Express Company ("American Express" or the "Company").

2. This action is brought on behalf of Plaintiff and all individuals who participated in the Plan at any time on or after July 1, 1995 (the "Class Period") whose retirement benefits have been converted to and/or calculated according to the Plan's cash balance formula. The Plan, as amended effective July 1, 1995, converted from a final average pay formula to a "cash balance" formula for the calculation of benefits accrued under the Plan. Generally, Plaintiff alleges that

the terms of the amended Plan violated ERISA in at least the following ways: (1) the Plan violated ERISA's prohibition on reducing rates of benefit accrual due to the increasing age of a plan participant, ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i); (2) the Plan violated ERISA's prohibition on forfeiture of accrued benefits, ERISA § 203(a), 29 U.S.C. § 1053(a) and I.R.C. § 411(a)(2); and (3) the Plan violated ERISA's present value calculation rules, ERISA §§ 203(e)(2), 29 U.S.C. § 1053(a)(2), 205(g)(3), 29 U.S.C. § 1055(g)(3) and IRC § 417(e)(3).

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331(a) and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

4. Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some Defendants reside or maintain their primary place of business in this district.

5. More specifically, this district is an appropriate venue for this action because the principal executive offices of Defendant American Express, the sponsor and administrator of the Plan, are located in the American Express Tower in the World Financial Center in lower Manhattan, New York. The Company's Manhattan headquarters is listed on a recent Plan Form 5500 annual filing with the Internal Revenue Service and Department of Labor as the Plan sponsor's address. Further, it is likely that many of the parties and potential witnesses, including Company directors, Plan committee members, corporate executives and many plan participants are located in close proximity to this district.

## PARTIES

### Plaintiff

6.     Plaintiff Kritzman is a citizen of the United States who was employed full-time with the Company from approximately October 1975 to September 30, 2005 during the Class Period, as defined below, and is or was a "participant" in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

### Defendants

**American Express Retirement Plan**

7.     Defendant American Express Retirement Plan is an employee pension benefit plan pursuant to ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). Specifically, the Plan is a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

8.     The Plan is a noncontributory defined benefit plan covering domestic and U.S. citizen career expatriate employees of the Company and its participating subsidiaries. Generally, eligible employees include full and part-time employees of the Company and its participating subsidiaries who have completed one year of service.

**American Express Company**

9.     Defendant American Express is a New York corporation with its principal offices located in New York, NY. The Company provides payment services, travel related services, financial advisory services and international banking services throughout the world.

10.    American Express is the Plan sponsor within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B), and is the ultimate Plan administrator pursuant to ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A). The Company is a fiduciary of the Plan pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that it has discretionary authority and control regarding

the administration and management of the Plan and/or the Plan's assets.

**American Express Company Employee Benefits Administration Committee**

11.     According to the Plan's Form 5500 for Plan year 2002 ("2002 Form 5500") submitted to the Internal Revenue Service and the U.S. Department of Labor, Defendant American Express Employee Benefits Administration Committee, appointed by the Compensation and Benefits Committee of the Company's Board of Directors, administers the Plan and is a named fiduciary of the Plan. The Employee Benefits Administration Committee is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that it has discretionary authority and control regarding the administration and/or management of the Plan and/or the Plan's assets.

12.     Defendants include individual members of the Employee Benefits Administration Committee. Their identities are currently unknown to Plaintiff. Once their identities are ascertained, Plaintiff will seek leave to join them to the instant action.

**Additional "John Doe" Defendants**

13.     Unknown "John Doe" Defendants 1-100 are residents of the United States and are or were fiduciaries of the Plan during the Class Period, in that they had discretionary authority and control regarding the administration and/or management of the Plan and/or the Plan's assets. Their identities are currently unknown to Plaintiff; once their identities are ascertained, Plaintiff will seek leave to join them under their true names.

## CLASS ACTION ALLEGATIONS

14.     Plaintiff brings this action as a class action pursuant to Rules 23(a), (b)(1) and/or (b)(2) of the Federal Rules of Civil Procedure on behalf of herself and the following class of persons similarly situated (the "Class"):

> All individuals, excluding Defendants, who have participated in the American Express Retirement Plan at any time on or after July 1, 1995 (the "Class Period") whose accrued or pension benefits are based, in whole or in part, on the Plan's Cash Balance Formula.[1]

15. The members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are, at a minimum, over 35,000 members of the Class who participated in, or were beneficiaries of, the Plan during the Class Period.[2]

16. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

   (a) whether the benefits earned by the Plan participants have been calculated correctly as required by ERISA;

   (b) whether the benefits provided under the terms of the Plan accrue at a rate which is reduced because of age;

   (c) whether the terms of the Plan provide for impermissible forfeiture of accrued benefits;

   (d) whether, following the conversion to the Cash Balance Formula, the Plan violated the minimum accrual provisions of ERISA § 204(b)(1), 29 U.S.C. § 1054(b)(1);

---

[1] Plaintiff notes that, upon conversion of the Plan, certain participants were made eligible for "grandfather provisions" (see footnote 3 *infra*). Upon information and belief, these provisions may affect the breadth of Plaintiff's wear-away claims described in Counts II-IV herein. However, such provisions have no bearing on Plaintiff's remaining claims as to any members of the Class.

[2] *See* the 2002 Form 5500, *available at* http://www.freeerisa.com, which indicated that, as of December 31, 2002, the Plan had 38,511 active participants.

5

(e) what remedies are needed to bring the Plan into compliance with the dictates of ERISA;

(f) whether the Class is entitled to a clarification of future benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B);

(g) whether the Class is entitled to an injunction pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); and

(h) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

17. Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other members of the Class each sustained damages and/or were negatively affected by Defendants' wrongful conduct in violation of federal law as complained of herein.

18. Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel highly competent and experienced in class action and complex litigation, including actions involving ERISA employee pension plans. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

19. Class action status in this ERISA action is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

20. Class action status is also warranted under the other subsections of Rule 23(b) because: (i) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants and/or (ii) Defendants have acted

6

or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

## FACTUAL ALLEGATIONS

21. The Plan was established on May 31, 1985 to replace the terminated American Express Funded Pension Plan. 2002 Form 5500. Prior to July 1, 1995, (the "Conversion Date"), the Plan provided retirement benefits based upon a traditional final average pay formula (the "Prior Formula"). Under the Prior Formula, a participant's normal pension benefit was an annuity calculated with respect to final average compensation and years of service.

22. In 1994, the Company's Board of Directors voted to amend the Plan, effective as of the Conversion Date, to convert the Prior Formula to a cash balance formula (the "Cash Balance Formula"), finding that such conversion would "significantly decrease the Plan's projected benefit obligation and annual pension cost." *See* American Express Company Form 10-K, Note 9, filed March 31, 1995 with the U.S. Securities and Exchange Commission ("SEC").

23. Generally, under the Cash Balance Formula, each participant has a hypothetical individual account, which accumulates credits ("Pay Credits") each pay period based upon a percentage ("Applicable Percentage") of the participant's compensation. Each participant's Applicable Percentage is based upon the sum of his/her age and years of service.

24. Employees who were participants in the Plan before and after the Conversion Date received opening account balances based upon a determination of the present value of their accrued benefits under the Prior Formula, with certain participants receiving increased transitional benefits.[3] Participants who joined the Plan on or after the Conversion Date had opening account balances of zero.

---

[3] For participants who were age 46 or older on June 30, 1995, the present value of the accrued benefit under the Prior Formula was increased by a percentage of the value of the early retirement benefit payable under the prior

25. Additionally, accounts earn interest credits ("Interest Credits") annually, based on the average of the daily five-year U.S. Treasury note yields for the previous plan year, with a minimum rate of 5% and a maximum rate equal to "the lesser of 10% or the annual maximum interest rate set by the U.S. government for determining lump sum values." *See* 2002 Form 5500.

26. Generally, participants become vested in their account balances after five years of service.

27. Under the Plan, a participant's pension benefit is stated as being the participant's account balance, including any opening account balance and pay credits, together with interest credits accrued thereon up to the payment date.

28. The normal form of payment is an annuity; optional forms of payment include various annuity options, as well as a lump sum distribution equal to the participant's cash balance account.

29. Employees who were participants in a predecessor plan prior to the Conversion Date are guaranteed a minimum benefit equal to their accrued benefit under their prior formula, *frozen as of the Conversion Date*. This means that they receive the greater of: (a) their benefits as calculated under the Cash Balance Formula; or (b) their benefits as determined under their prior traditional formula, calculated as if they terminated employment on June 30, 1995 (the "Frozen Benefit"). Accordingly, they accrue no new benefits unless and until their cash balance accounts catch up to and exceed their Frozen Benefits.

30. Normal retirement age under the Plan is 65.

---

plan at the participant's earliest retirement date (age 55 with ten years of service, or age 55 for prior participants of IDS, a subsidiary of the Company). The percentage for participants eligible for early retirement on June 30, 1995 was 100%. The percentage for participants not eligible for early retirement on June 30, 1995 was 100% minus 10% for each year from June 30, 1995 to the participant's earliest retirement date (but not less than 0%). *See* 2002 Form 5500.

31. Upon termination of employment with vested benefits, a participant may elect to receive distribution or defer payment up to age 65, with continuing interest credits.

32. The Plan's assets are held by American Express Trust Company, a wholly-owned subsidiary of American Express Financial Corporation, which is a wholly-owned subsidiary of American Express.

33. Although the Plan provides for a hypothetical individual account for each participant, it is not a "defined contribution plan," as that term is defined in ERISA Section 3(34), 29 USC § 1002(34). Rather, the Plan is a "defined benefit plan," as defined in ERISA Section 3(35), 29 USC § 1002(35). As such, the Plan must provide for a definitely determinable, non-forfeitable, accrued benefit. *Cooper v. IBM Pers. Pension Plan*, 274 F. Supp. 2d 1010, 1021 (N.D. Ill. 2003) (citing ERISA § 203(a), 29 U.S.C. § 1053(a).

34. Under ERISA, a participant's accrued benefit is not measured by his/her account balance; rather, ERISA defines a participant's accrued benefit under a defined benefit plan in the form of an annual benefit commencing at normal retirement age. *West v. AK Steel Corp. Retirement Accumulation Pension Plan*, 318 F.Supp. 2d 579, 582 (S.D. Ohio April 8, 2004). ERISA § 3(23)(A), 29 U.S.C. § 1002(23)(A).

35. Lastly, Plaintiff has not filed a claim for benefits under the Plan's claims procedures because she seeks relief from violations of ERISA statutory provisions which do not require the exercise of discretion by a Plan fiduciary. In addition, Plaintiff has not attempted to exhaust her administrative remedies because to do so would be futile, as the issues involved in this action are only issues of law.

## COUNT I

36. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

37. Pursuant to ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i), the rate of accrual of a defined benefit under a plan may not be reduced because of the attainment of any age by a plan participant.

38. Interest credits are a part of the accrued benefit. As such, they must be: (a) valued as an annual benefit commencing at age 65; and (b) taken into account in determining whether the Plan satisfies ERISA's benefit accrual requirements set forth in ERISA § 204(b)(1), 29 U.S.C. § 1054(b)(1). *Cooper*, 274 F. Supp. 2d 1010, 1021.

39. As of July 1, 1995, and at all times thereafter, the Plan reduces the rate of benefit accrual as a participant ages. The Plan provides a declining rate of accrual based on age because, among other reasons, evaluated as comparative annuity values at normal retirement age, the Plan's annual benefit to a worker for one year of service will accrue at a lower rate going forward than that of the same, otherwise similarly situated worker, at a younger age. This is because the value of the accrued benefit attributable to interest credits decreases as a participant approaches normal retirement age.

40. By way of example, the Plan's annual benefit to a worker at age 50 for one year of service will accrue at a lower rate going forward than that of the same, otherwise similarly situated worker at age 35. Interest credits are inherently more valuable to a younger participant than to an otherwise similarly situated older participant.

41. Accordingly, the Plan violates ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i).

42. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff and the Class are entitled to a judgment enjoining the Plan and the Company from continuing to violate the foregoing provision of ERISA and to determine and calculate their benefits in a manner which is consistent with such provision, as well as other appropriate equitable relief.

### COUNT II

43. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

44. ERISA § 204(b)(1)(H), 29 U.S.C. § 1054(b)(1)(H), prohibits the reduction of the rate of benefit accrual or the cessation of benefit accrual because of the attainment of any age.

45. By providing that the guaranteed minimum benefit for employees who were participants in a predecessor plan prior to the Conversion Date was equal to their Frozen Benefit, the Plan effectively provided that participants whose Frozen Benefits exceeded their opening account balances would accrue no new retirement benefits unless and until their cash balance accounts caught up to and exceeded their Frozen Benefits.

46. This effect, known as "wear-away," primarily affects older workers, who generally have greater Frozen Benefits than younger workers.[4] Naturally, older workers generally suffer longer wear-away periods on account of age. In other words, an older worker has to wait more years after the conversion to the cash balance formula to actually begin earning new retirement benefits. Thus, while two similarly situated (of identical work tenure, *e.g.*) workers may both see amounts being added by the Company to their hypothetical accounts, the younger worker's retirement benefits are actually growing, while an older worker stuck with "wear-away" may actually be gaining nothing because the Plan has caused his or her benefit accrual to cease until his or her cash balance account exceeds their Frozen Benefit.

---

[4] *See* Edward A. Zelinsky, "The Cash Balance Controversy," <u>19 Va. Tax Rev. 683</u> (2000).

47. Accordingly, the Plan violates ERISA § 204(b)(1)(H), 29 U.S.C. § 1054(b)(1)(H) and Plaintiff and the Class are entitled to appropriate relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

## COUNT III

48. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

49. With respect to participants stuck with "wear-away," the terms of the Plan completely eroded the economic value of any cash balance benefits provided to such participants during any wear-away periods.

50. This is because participants could receive their cash balance benefits accrued during any "wear-away" period only by forfeiting their accrued, vested Frozen Benefits. Such participants were not permitted to simply take their Frozen Benefits and add their cash balance benefits, accrued on or after the Conversion Date, to them.

51. Accordingly, the Plan violated the nonforfeiture provisions of ERISA § 203(a), 29 U.S.C. § 1053(a) and I.R.C. § 411(a)(2), and Plaintiff and the Class are entitled to appropriate relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

## COUNT IV

52. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

53. Under ERISA, a defined benefit plan's benefits must accrue in accordance with one of three alternative accrual rules in ERISA § 204(b)(1)(A)-(C), 29 U.S.C. § 1054(b)(1)(A)-(C), commonly known as the three percent rule, the 133 1/3% rule and the fractional rule, designed to support ERISA's early vesting requirements.

54. Cash balance plans typically must satisfy this requirement by complying with the 133 1/3% rule of ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B), which provides, in pertinent part, that "a defined benefit plan satisfies the requirements of this paragraph for a particular plan year if under the plan . . .the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year is not more than 133 1/3% of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year."

55. The Plan violated this rule by effectively reducing the rate of benefit accrual to zero for those participants with Frozen Benefits in excess of their opening account balances. With respect to any participant who earns a benefit following one or more years of zero benefit accrual, the Plan fails the 133 1/3% rule.

56. Accordingly, the Plan violates the accrual rules of ERISA by failing to comply with any of the rules set forth in § 204(b)(1)(A)-(C), 29 U.S.C. § 1054(b)(1)(A)-(C), and Plaintiff is entitled to appropriate relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

## COUNT V

57. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

58. Under ERISA, if an employer offers a participant the option of receiving a lump sum payment, rather than an annuity commencing at normal retirement age, the participant's cash benefit must at least equal the actuarial equivalent of that annuity. *Esden v. Bank of Boston*, 229 F.3d 154, 163 (2nd Cir. 2000).

59. For cash balance plans, this is determined by projecting the cash balance forward with the plan-prescribed interest credits and then discounting it back to present value at the applicable statutory interest rate.

60. The maximum discount rate for this calculation is prescribed by statute in IRC § 417(e) and ERISA § 205(g), 29 U.S.C. § 1055(g), and is currently the 30-year Treasury rate.

61. Interest credits are a part of the accrued benefit. Accordingly, once they have accrued and vested, they are nonforfeitable. *Esden*, 229 F.3d at 165. Therefore, they must be valued as an annual benefit commencing at age 65. *Cooper*, 274 F. Supp. 2d at 1021.

62. A plan which provides for interest credits at the statutorily-prescribed rate may merely pay out the balance of a participant's account as the actuarial equivalent of the age 65 annuity. Where a plan's rate for interest credits exceeds the statutory discount rate, simply paying out a participant's account balance results in smaller benefits than participants are entitled to receive. Where the actuarial equivalent exceeds the account balance, this higher figure must be paid out, or an impermissible forfeiture will have occurred in violation of ERISA § 203(a), 29 U.S.C. § 1053(a) and I.R.C. § 411(a)(2).

63. For the purposes of lump sum distributions, the Plan does not provide participants with the actuarial equivalent of their account balances; rather, a participant's lump sum distribution is simply equal to the balance of his/her account.

64. By not projecting the value of accrued interest credits to normal retirement age, then discounting them to present value for the purposes of lump sum distributions, the Plan blatantly ignores scenarios where the projection rate would exceed the discount rate, resulting in benefit entitlements greater than account balances.

65. Accordingly, the Plan violates the present value calculation rules of ERISA §§ 203(e)(2), 29 U.S.C. § 1053(e)(2), 205(g)(3), 29 U.S.C. § 1055(g)(3) and IRC § 417(e)(3), resulting in impermissible forfeiture of accrued benefits under ERISA § 203(a), 29 U.S.C. § 1053(a) and I.R.C. § 411(a)(2), where the Plan rate for Interest Credits exceeds the statutory maximum discount rate.

66. Therefore, Plaintiff and the Class are entitled to appropriate relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

### COUNT VI

67. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

68. ERISA § 102, 29 U.S.C. § 1022 requires a plan administrator to provide a summary of any material modification in the terms of the plan…written in a manner calculated to be understood by the average plan participant…"

69. The conversion to the Cash Balance Formula and its disparate, negative impact constituted a material modification in the terms of the plan, as described in ERISA § 102, 29 U.S.C. 1022.

70. The summary plan description provided by the Company failed to adequately describe, in a manner calculated to be understood by the average plan participant, the full effects of the conversion to the Cash Balance Formula, including explanations of the reduction in the rate of benefit accrual with increasing age and the wear-away effect.

71. Accordingly, the Company violated the provisions of ERISA § 102, 29 U.S.C. § 1022.

72. Therefore, Plaintiff is entitled to appropriate relief under ERISA 502(a)(3), 29 U.S.C. § 1132(a)(3).

## COUNT VII

73. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

74. At the time of the implementation of the Cash Balance Formula, ERISA § 204(h), 29 U.S.C. § 1054(h) provided that a defined benefit plan may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless the plan administrator provides a written notice setting forth the plan amendment and its effective date to each plan participant. Such notice was required to have been given after the adoption of the plan amendment and not less than 15 days before the effective date of the amendment.

75. The implementation of the Cash Balance Formula constituted a plan amendment providing for significant reductions in the rate of future benefit accrual.

76. Upon information and belief, Defendants violated ERISA § 204(h), 29 U.S.C. § 1054(h) by failing to provide the requisite notice in compliance therewith and in accordance with § 1.411(d)-6 of the Income Tax Regulations.

## COUNT VIII

77. Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

78. Upon information and belief, Defendants failed to adequately inform participants of material information as to how their benefits would be affected by the conversion to the Cash Balance Formula, and how their benefits under the Cash Balance Formula compare to the benefits they would have earned under the Prior Formula.

79. By failing to ensure that the Plan complied with ERISA's anti age-discrimination accrual rules, Defendants reduced the Plan's accrued liability and the Company's funding obligations at the expense of older participants.

80. Accordingly, Defendants violated their fiduciary duties owed to participants under ERISA § 404, 29 U.S.C. 1104, by failing to discharge their duties with respect to the plan solely in the interest of the participants and beneficiaries.

## COUNT IX

81. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

82. Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), Plaintiff and the Class are entitled to a judgment clarifying their right to receive future benefits from the Plan, calculated under the terms of the Plan, to the extent those terms are not inconsistent with the applicable provisions of ERISA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 with the Class defined as aforesaid and Plaintiff as a proper Class representative;

B. Judgment for Plaintiff and the Class against defendants on all claims asserted herein, including an amount of money sufficient to satisfy their claims;

C. Injunctive relief entitling Plaintiff and the Class to benefits which are the greater of: (1) the benefits to which the would have been entitled without regard to the conversion to the Cash Balance Formula; (2) or the benefits under the Plan with regard to the Cash Balance Formula;

D.  Injunctive and other equitable relief recounted above, including the enjoining of Defendants from enforcement of the Plan's unlawful provisions described above, the amendment of the Plan to make all of its relevant provisions age-neutral, and the modification of the Plan so as to eliminate any unlawful forfeiture of accrued benefits;

E.  Pre-and post-judgment interest;

F.  Attorneys' fees and costs pursuant to the common fund/benefit doctrine or any other applicable law; and

G.  Any other and further relief as the Court deems appropriate under the circumstances.

Dated: January 11, 2006

Respectfully submitted,

*/s/ Curtis V. Trinko*
Curtis V. Trinko (CT-1838)
**LAW OFFICES OF CURTIS V. TRINKO, LLP**
16 West 46th Street
Seventh Floor
New York, NY 10036


**SCHIFFRIN & BARROWAY, LLP**
Richard S. Schiffrin, Esq.
Joseph H. Meltzer, Esq.
Edward W. Ciolko, Esq.
Joseph A. Weeden, Esq.
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**Attorneys for Plaintiff**