LAW OFFICES OF
**MORGAN, LEWIS & BOCKIUS LLP**
101 PARK AVENUE
NEW YORK, NEW YORK 10178
(212) 309-6000
FAX: (212) 309-6273

ATTORNEYS FOR DEFENDANTS

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

————————————————————— :
                                            :
**PAULA KRITZMAN,**                         :
                                            :
                        **Plaintiff,**      :
                                            :    **06 CV 0233 (LAK)**
            **v.**                          :
                                            :
**AMERICAN EXPRESS RETIREMENT** :
**PLAN, AMERICAN EXPRESS**                  :
**COMPANY, AMERICAN EXPRESS**               :
**COMPANY EMPLOYEE BENEFITS**               :
**ADMINISTRATION COMMITTEE,**               :    ***ELECTRONICALLY FILED***
**JOHN DOES 1-100**                         :
                                            :
                        **Defendants.**     :
————————————————————— :

## DECLARATION OF TAMARA GARNES MATA, ESQ.

TAMARA GARNES MATA, ESQ., pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1.    I am an attorney with Morgan, Lewis & Bockius, LLP, counsel for Defendants in the above-captioned matter. I submit this Declaration in connection with Defendant's Motion To Dismiss Plaintiff's Complaint.

2.    Attached hereto as Exhibit A is a true and correct copy of *Engers v. AT&T Corp.,* No. 98-3660, 2001 U.S. Dist. LEXIS 25889 (D.N.J. June 6, 2001).

3.    Attached hereto as Exhibit B is a true and correct copy of *Lunn v. Montgomery Ward & Co., Inc. Ret. Sec. Plan,* No. 97 C 3026, 1998 WL 102751 (N.D. Ill. Feb. 26, 1998).

4.    Attached hereto as Exhibit C is a true and correct copy of *Register v. PNC Fin. Servs., Group,* No. 04-6097, 2005 WL 3120268 (E.D. Pa. Nov. 21, 2005).

5.    Attached hereto as Exhibit D is a true and correct copy of *Smith v. First Unum Life Ins. Co.,* No. 98-2415, 1999 U.S. Dist. LEXIS 8381 (E.D.N.Y. June 2, 1999).

I declare the foregoing to be true and correct under penalty of perjury of the laws of the United States of America. I have knowingly and voluntarily executed this Declaration.

TAMARA GARNES MATA, ESQ.

Dated: March 14, 2006

**EXHIBIT A**

2001 U.S. Dist. LEXIS 25889, *

LEXSEE

**Re: Phillip C. Engers, et al. v. AT&T Corp., et al.**

**Civil Action No. 98-3660 (NHP)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

**2001 U.S. Dist. LEXIS 25889**

**June 6, 2001, Decided**

**NOTICE:** [*1]  NOT FOR PUBLICATION

**PRIOR HISTORY:** Engers v. At&T Corp., 2001 U.S. Dist. LEXIS 25885 (D.N.J., June 6, 2001)

**DISPOSITION:** Plaintiffs' Ninth Claim for Relief dismissed. Plaintiffs' motion to certify class granted as to remaining claims.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employees filed a complaint against defendants, their employer and the employer's management pension plan, after the employer amended the plan. The employees alleged violations of their rights under the Employee Retirement Income Security Act (ERISA) and the Age Discrimination in Employment Act (ADEA). They moved to certify the suit as a class action. Defendants sought to dismiss two counts on jurisdictional grounds.

**OVERVIEW:** Defendants contended that the employees lacked standing to assert two claims. They argued that the employees could not assert claims under § 204(h) of ERISA, 29 U.S.C.S. § 1054(h), because they had not shown that the amended plan would result in significant reductions in the rate of their future pension benefit accruals. They also contended that the employees, who were all under the age of 65, lacked standing to bring claims under § 4(i)(1)(A) of the ADEA, 29 U.S.C.S. § 623(i)(1)(A), and § 204(b)(1)(H)(i) of ERISA, 29 U.S.C.S. § 1054(b)(1)(H)(i), because those provisions were intended to protect workers who had worked beyond the age of 65. The court agreed that, because they had not yet reached the normal retirement age, the employees lacked standing to assert the ADEA and § 204(b)(1)(H)(i) of ERISA claims. It ordered them to present evidence showing that they would suffer a reduction in their annual benefits by virtue of the plan amendment, which was necessary for them to have standing on the § 204(h) of ERISA claim. Without discussion, the court

found that the employees had satisfied the requisites of Fed. R. Civ. P. 23 for class certification with regard to their other claims.

**OUTCOME:** The court granted the motion to dismiss a count that asserted claims pursuant to the ADEA and ERISA. It ordered the employees to proffer evidence showing that they had standing to bring another ERISA claim. The court granted the motion to certify a class as to the employees' remaining claims.

**CORE TERMS:** accrual, normal retirement age, sixty-five, reduction, plan amendment, subject matter jurisdiction, commencing, annual, certification, pension, proffer, legislative history, attainment, heading, counter, reasonably expected, future benefit, pension benefits, confers, employee pension benefit plan, burden of establishing, plan administrator, protected interest, pension benefit, effective date, decertification, regulation, depending, ambiguous, invasion

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Action*
*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN1] Pursuant to Fed. R. Civ. P. 12(h)(3), a court may dismiss a case for lack of subject matter jurisdiction by motion of a party or sua sponte. Indeed, a court, is permitted, if not obliged, to inquire at any point in a case as to whether it has subject matter jurisdiction.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Action*
*Civil Procedure > Justiciability > Standing*
*Constitutional Law > The Judiciary > Case or Controversy > Standing*

2001 U.S. Dist. LEXIS 25889, *

*Evidence > Procedural Considerations > Burdens of Proof*
[HN2] U.S. Const. art. III, § 2, confers subject matter jurisdiction upon federal district courts only where a "case or controversy" exists. The doctrine of standing implicates the "case or controversy" requirement and hence, where a plaintiff has no standing, it follows that a court does not possess subject matter jurisdiction. The standing requirement includes three elements: (1) injury in fact to the plaintiff; (2) a causal connection between the injury and the conduct of the defendant complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. The plaintiff bears the burden of establishing the elements of standing.

*Civil Procedure > Justiciability > Standing*
*Constitutional Law > The Judiciary > Case or Controversy > Standing*
*Governments > Legislation > Statutory Remedies & Rights*
[HN3] To establish an injury in fact, a plaintiff must demonstrate an invasion of a legally protected interest which is concrete and particularized. A legally protected interest may be created where Congress confers substantive rights by statute upon the citizenry. Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute. It is axiomatic that one must be protected by such a statute or, stated another way, possess rights under the statute, in order to have those rights, violated in the first instance.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Reporting, Disclosure & Notice*
[HN4] See 29 U.S.C.S. § 1054(h).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Reporting, Disclosure & Notice*
[HN5] Pursuant to 29 U.S.C.S. § 1135, the Secretary of the Treasury has the authority to issue regulations concerning § 204(h) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1054(h). The Secretary has defined a significant reduction in the rate of future benefit accrual to include only an amendment that

is reasonably expected to change the amount of the future annual benefit commencing at normal retirement age. 60 Fed. Reg. 64322, Question & Answer 5. The Secretary has also provided that a plan administrator need not provide § 204(h) of ERISA notice to any participant whose rate of future benefit accrual is reasonably expected not to be reduced by the amendment. 60 Fed. Reg. 64323, Question & Answer 9. Hence, a ERISA plan participant is only entitled to § 204(h) of ERISA notice if a plan amendment is reasonably expected to reduce the participant's annual benefit commencing at retirement age.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
*Labor & Employment Law > Discrimination > Age Discrimination > Employment Practices*
[HN6] Section 4(i)(1)(A) of the Age Discrimination in Employment Act prohibits an employer from establishing or maintaining an employee pension benefit plan which requires or permits the reduction of the rate of an employee's benefit accrual, because of age. 29 U.S.C.S. § 623(i)(1)(A).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
[HN7] See 29 U.S.C.S. § 1054(b)(1)(H)(i).

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Tax Law > Federal Income Tax Computation > Retirement Plans > Nondiscrimination Rules (IRC sec. 401)*
[HN8] The Internal Revenue Code, at 26 U.S.C.S. § 411(b)(1)(H), contains the same language as 29 U.S.C.S. § 1054(b)(1)(H)(i). Section 1054(b)(1)(H)(i), 29 U.S.C.S. § 623(i)(1)(A), and 26 U.S.C.S. § 411(b)(1)(H) are part of the Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509, 100 Stat. 1874, 1973-78. The House Senate Conference Committee report on these three provisions indicates that the conferees

2001 U.S. Dist. LEXIS 25889, *

intended that the three provisions be interpreted in a consistent manner.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
[HN9] Both § 4(i)(1)(A) of the Age Discrimination in Employment Act (ADEA), 29 U.S.C.S. § 623(i)(1)(A), and § 204(b)(1)(H)(i) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1054(b)(1)(H)(i), apply only to employees who work beyond the normal retirement age of sixty-five. The language of the ADEA and ERISA provisions is ambiguous, and the legislative history of the Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509, 100 Stat. 1874, 1973-78, convincingly proves that Congress intends the provisions to apply only to those employees who work beyond the normal retirement age of sixty-five.

*Governments > Legislation > Interpretation*
*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
[HN10] The language of § 4(i)(1)(A) of the Age Discrimination in Employment Act, 29 U.S.C.S. § 623(i)(1)(A), and § 204(b)(1)(H)(i) of the Employee Retirement Income Security Act, 29 U.S.C.S. § 1054(b)(1)(H)(i), is indeed ambiguous, as neither statute defines the pivotal statutory phrase: rate of an employee's benefit accrual. It is generally understood that in the face of unclear statutory language, a court is to look to the legislative history of the statute. A court may also consider the headings of a statute as a guide in determining the meaning of the provision.

*Governments > Legislation > Interpretation*
*Tax Law > Federal Income Tax Computation > Retirement Plans > Defined Benefit & Hybrid Plans (IRC secs. 411, 414, 415)*

*Tax Law > Federal Income Tax Computation > Retirement Plans > Nondiscrimination Rules (IRC sec. 401)*
[HN11] The heading of 26 U.S.C.S. § 411(b)(1)(H) states: Continued accrual beyond normal retirement age. This heading offers some guidance as to statutory interpretation since Congress intends the Age Discrimination in Employment Act, the Employee Retirement Income Security Act, and the Internal Revenue Code provisions in the Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509, 100 Stat. 1874, 1973-78, to be interpreted consistently.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
[HN12] The legislative history of the Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509, 100 Stat. 1874, 1973-78, provides compelling evidence that Congress intends both § 4(i)(1)(A) of the Age Discrimination in Employment Act (ADEA), 29 U.S.C.S. § 623(i)(1)(A), and § 204(b)(1)(H)(i) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1054(b)(1)(H)(i), to apply only to those employees who continue to work after the normal retirement age of sixty-five. In other words, the ADEA and ERISA provisions ensure that employees who choose to work past the age of normal retirement continue to accrue pension benefits. Congress intends to protect the pension benefits of those employees who choose to continue to work after the age of sixty-five.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
[HN13] The rules preventing the reduction or cessation of benefit accruals on account of the attainment of age are not intended to apply in cases in which a plan satisfies the normal benefit accrual requirements for employees who have not attained normal retirement age.

*Civil Procedure > Justiciability > Standing*

Page 3

2001 U.S. Dist. LEXIS 25889, *

*Constitutional Law > The Judiciary > Case or Controversy > Standing*
*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
[HN14] Where none of the plaintiffs named in a suit fall into the category of employees who have reached the normal retirement age of sixty-five, they are not protected by § 4(i)(1)(A) of the Age Discrimination in Employment Act, 29 U.S.C.S. § 623(i)(1)(A), and § 204(b)(1)(H)(i) of the Employee Retirement Income Security Act, 29 U.S.C.S. § 1054(b)(1)(H)(i), and thus do not have standing to pursue claims under those sections.

*Civil Procedure > Class Actions > Prerequisites*
*Civil Procedure > Justiciability > Standing*
*Constitutional Law > The Judiciary > Case or Controversy > Standing*
[HN15] If none of the named plaintiffs purporting to represent a class meets the case or controversy requirement, none may seek relief on behalf of himself or any member of the class.

**COUNSEL:** Stephen R. Bruce, Esq., Washington, DC; Edgar Pauk, Esq., New York, NY; Gerald J. Smit, Esq., Bridgewater, NJ, for Plaintiffs.

Christopher H. Mills, Esq., Terrence J. Nolan, Esq., David J. Treibman, Esq., COLLIER, JACOB & MILLS, Somerset, NJ, for Defendants AT&T Corp. and AT&T Management Pension Plan

**JUDGES:** NICHOLAS H. POLITAN, U.S.D.J.

**OPINIONBY:** NICHOLAS H. POLITAN

**OPINION:** Dear Counsel:

This matter comes before the Court on the motion of plaintiffs Phillip C. Engers, Warren J. McFall, Donald Noerr, and Gerald Smit (hereinafter "plaintiffs") for the certification of this case as a class action. The Court heard oral argument on January 23, 2001, during which it was brought to the Court's attention that the Court possibly may not have subject matter jurisdiction over the Third and Ninth Claims for Relief in the Second Amended Class Action Complaint. Upon review of the submissions of the parties, and for the reasons expressed herein, it is ordered that plaintiffs shall proffer evidence which would tend to counter the defendants' contention

that none of the named plaintiffs will suffer a reduction in annual benefits commencing at age sixty-five by virtue of the [*2] Plan Amendment. The Court will also dismiss the Ninth Claim for Relief. Lastly, the Court will grant plaintiffs' motion to certify the class as to the remaining claims in the Second Amended Class Action Complaint.

**DISCUSSION**

The circumstances surrounding this case are set forth in this Court's previous Letter Opinion dated June 29, 2000. Suffice it to say that defendants AT&T and AT&T Management Pension Plan (hereinafter "AT&T") have raised the issue of whether the Court possesses subject matter jurisdiction over the Third and Ninth Claims for Relief in the Second Amended Class Action Complaint. The Court's findings are as follows.

**I. "Case or Controversy" and the Standing Requirement**

Specifically, AT&T has argued that subject matter jurisdiction is lacking in this Court because the named plaintiffs in this action do not have standing to bring the causes of action asserted in the Third and Ninth Claims for Relief. At the outset, it must be explained that [HN1] pursuant to Federal Rule of Civil Procedure 12(h)(3), a court may dismiss a case for lack of subject matter jurisdiction by motion of a party or sua sponte. Indeed, the Court, is permitted, if not obliged, [*3] to inquire at any point in a case as to whether it has subject matter jurisdiction. See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 704, 72 L. Ed. 2d 492, 102 S. Ct. 2099 (1982); Quern v. Mandley, 436 U.S. 725, 730 n.3, 56 L. Ed. 2d 658, 98 S. Ct. 2068 (1978); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 278, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977); Medlin v. Boeing Vertol Co., 620 F.2d 957, 960 (3d Cir. 1980).

[HN2] Article III, § 2 of the Constitution confers subject matter jurisdiction upon federal district courts only where a "case or controversy" exists. The doctrine of standing implicates the "case or controversy" requirement and hence, where a plaintiff has no standing, it follows that a court does not possess subject matter jurisdiction.

The standing requirement includes three elements: (1) injury in fact to the plaintiff; (2) a causal connection between the injury and the conduct of the defendant complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992). The plaintiff bears the burden of establishing the elements of standing. See id. at 561. [*4]

2001 U.S. Dist. LEXIS 25889, *

[HN3] To establish an injury in fact, a plaintiff must demonstrate "an invasion of a legally protected interest which is . . . concrete and particularized . . . ." Lujan, 504 U.S. at 560 n. 1. A legally protected interest may be created where Congress confers substantive rights by statute upon the citizenry. See Linda R. S. v. Richard D., 410 U.S. 614, 617 n.3, 35 L. Ed. 2d 536, 93 S. Ct. 1146 (1973) ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute."). It is axiomatic that one must be protected by such a statute or, stated another way, possess rights under the statute, in order to have those rights, violated in the first instance.

**A. Third Claim for Relief**

In the Third Claim for Relief, plaintiffs, allege that AT&T violated ERISA by implementing significant reductions in the rate of future accruals before adoption of the Plan amendments and without providing participants with notice of the Plan amendments as required by § 204 (h) of ERISA. AT&T contends that § 204(h) confers no rights on the plaintiffs, and therefore the plaintiffs do not have standing to assert the Third Claim for [*5] Relief.

[HN4] Section 204(h) of ERISA provides as follows:

(h) Notice of significant reduction in benefit accruals

(1) A plan described in paragraph (2) may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to-

-

(A) each participant in the plan . . . .

29 U.S.C. § 1054(h).

[HN5] Pursuant to 29 U.S.C. § 1135, the Secretary of the Treasury has the authority to issue regulations concerning § 204(h) of ERISA. The Secretary has defined a "significant reduction in the rate of future benefit accrual" to include only an amendment that "is reasonably expected to change the amount of the future annual benefit commencing at normal retirement age." See 60 Fed. Reg. at 64322, Q&A 5. The Secretary has also provided that the plan administrator "need not provide § 204(h) notice to any participant whose rate of future

benefit accrual is reasonably expected [*6] not to be reduced by the amendment." See 60 Fed. Reg. at 64323, Q&A 9. Hence, a Plan participant is only entitled to § 204 (h) notice if the Plan Amendment is reasonably expected to reduce the participant's annual benefit commencing at retirement age.

AT&T has submitted evidence which demonstrates that none of the named plaintiffs will suffer a reduction in annual benefits commencing at age sixty-five by virtue of the Plan Amendment. See Certification of Kevin R. Armant, P 18. This evidence also tends to show that at any point in time plaintiffs' "Accrued Benefit at Age 65" under the Cash Balance formula will always be greater than the "Accrued Benefit at Age 65" would have been under either the Special Update or the prior Plan formula. See Certification of Kevin R. Armant, Exhs. E-H.

Indeed, if this is the case, then the named plaintiffs would not fall under the scope of § 204(h) and thus would not be entitled to notification. As such, the named plaintiffs would not have standing to pursue a claim under § 204(h). Consequently, this Court directs plaintiffs to proffer evidence which would tend to counter the defendants' contention that none of the named [*7] plaintiffs will suffer a reduction in annual benefits commencing at age sixty-five by virtue of the Plan Amendment. Such a proffer would satisfy plaintiffs' burden of establishing that this Court possesses subject matter jurisdiction over the Third Claim for Relief.

**B. Ninth Claim for Relief**

In the Ninth Claim for Relief, plaintiffs allege that AT&T violated § 4(i)(1)(A) of ADEA, 29 U.S.C. § 623(i)(1)(A), and § 204(b)(1)(H)(i) of ERISA, 29 U.S.C. § 1054(b)(1)(H)(i), because the Plan Amendment reduces the rate of accrual based on age. AT&T argues that the named plaintiffs have no standing because § 4(i)(1)(A) of ADEA and § 204(b)(1)(H)(i) of ERISA only apply to employees who continue to work past the age of sixty-five.

[HN6] Section 4(i)(1)(A) of ADEA prohibits an employer from establishing or maintaining "an employee pension benefit plan which requires or permits . . . the reduction of the rate of an employee's benefit accrual, because of age . . . ." 29 U.S.C. 623(i)(1)(A). Similarly, [HN7] § 204(b)(1)(H)(i) of ERISA states that "a defined benefit plan shall be treated as not satisfying the requirements of this [*8] paragraph if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age." 29 U.S.C. § 1054(b)(1)(H)(i). [HN8] The Internal Revenue Code at 26 U.S.C. § 411(b)(1)(H) contains the same language as the ERISA provision. These three provisions were passed as part of the Omnibus Budget Reconciliation Act of 1986

2001 U.S. Dist. LEXIS 25889, *

("OBRA"), P.L. 99-509, 100 Stat. 1874, 1973-78. The House Senate Conference Committee report on these three provisions indicates that the conferees intended that the three provisions be interpreted in a consistent manner. See H.R. Conf. Rep. No. 1012, 99th Cong., 2d Sess. 378-79 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3868, 4023-24.

Defendants direct the Court's attention to the recent case of Eaton v. Onan Corp., 117 F. Supp.2d 812 (S.D.Ind. 2000). In Eaton, [HN9] the district court held that both § 4(i)(1)(A) of ADEA and § 204(b)(1)(H)(i) of ERISA apply only to employees who work beyond the normal retirement age of sixty-five. See 117 F. Supp.2d 812, 826 (S.D.Ind. 2000). Finding the language of the pertinent [*9] ADEA and ERISA provisions ambiguous, the Eaton court concluded that OBRA's legislative history convincingly proves that Congress intended the provisions at issue to apply only to those employees who work beyond the normal retirement age of sixty-five. See id. at 826-29.

This Court is inclined to agree with Judge Hamilton's well-reasoned opinion in Eaton. [HN10] The language of the ADEA and ERISA provisions at issue is indeed ambiguous, as neither statute defines the pivotal statutory phrase: "rate of an employee's benefit accrual." It is generally understood that in the face of unclear statutory language, a court is to look to the legislative history of the statute. See Toibb v. Radloff, 501 U.S. 157, 161, 115 L. Ed. 2d 145, 111 S. Ct. 2197 (1991); United States v. Gregg, 226 F.3d 253, 257 (3d Cir. 2000). A court may also consider the headings of a statute as a guide in determining the meaning of the provision. n1 See Helen L. V. DiDario, 46 F.3d 325, 333 n.15 (3d Cir. 1995) (looking to heading of regulation in addition to legislative history to find intent of Congress).

n1 [HN11] The heading found in the Internal Revenue Code provision enacted by OBRA, 26 U.S.C. § 411(b)(1)(H), states "Continued accrual beyond normal retirement age." (emphasis added). This heading offers some guidance since Congress intended the ADEA, ERISA and Internal Revenue Code provisions in OBRA to be interpreted consistently.

[*10]

In particular, it is clear to this Court that [HN12] the legislative history of OBRA provides compelling evidence that Congress intended both ADEA and ERISA provisions at issue to apply only to those employees who continue to work after the normal retirement age of sixty-five. In other words, the ADEA and ERISA provisions at issue, here were enacted to ensure that employees who

choose to work past the age of normal retirement continue to accrue pension benefits.

The Conference Report demonstrates that Congress intended to protect the pension benefits of those employees who choose to continue to work after the age of sixty-five. See OBRA 1986 Conference Report at 378, *reprinted in* 1986 U.S.C.C.A.N. at 4023. For example, the Conference Report stated the following:

[HN13] Under the conference agreement, the rules preventing the reduction or cessation of benefit accruals on account of the attainment of age are not intended to apply in cases in which a plan satisfies the normal benefit accrual requirements for employees who have not attained normal retirement age.

OBRA 1986 Conference Report at 379, *reprinted in* 1986 U.S.C.C.A.N. at 4024 (emphasis added).

The statements [*11] of the bill's sponsors indicates the same intent. Senator Grassley explained the legislation as follows: "I am introducing legislation today that would amend the Age Discrimination in Employment Act (ADEA) and the Employee Retirement Income Security Act (ERISA) to require continued pension benefit accruals for workers who work past the normal retirement age of 65." 131 Cong. Rec. 18868 (July 11, 1985) (emphasis added). Representative Jeffords (now Senator) made the following comments:

The bill before us is also a pension bill which extends valuable pension accrual protections to older Americans who work beyond normal retirement age. It is important for this body to understand what this "Older Americans Pension Benefits" provision does and does not do. What it does is prevent a covered employee pension benefit plan from eliminating or reducing an employee's pension benefit accruals, because of the attainment of any age, for the period of employment after the employee attains the normal retirement age under his or her plan.

132 Cong. Rec. 32963 (Oct. 17, 1986) (emphasis added). Representative Roukema offered the following remarks:

2001 U.S. Dist. LEXIS 25889, *

The legislation amends [*12] current law to preclude the "attainment of any age" as a reason for eliminating or reducing pension benefits accruals after normal retirement age. Therefore, employees who want or need to continue working beyond normal retirement age will no longer be able to be treated adversely under their pension plans because of their age.

132 Cong. Rec. 32975 (Oct. 17, 1986) (emphasis added). And lastly, Representative Clay stated the bill would "make it clear that employee benefit plans may not reduce pension accruals or allocations on the basis of an employee's age. In short, these changes will assure that older Americans who work beyond normal retirement age continue to earn pension credits." 132 Cong. Rec. 32975 (Oct. 17, 1986) (emphasis added).

Consequently, since [HN14] none of the named plaintiffs fall into this category - namely, employees who have reached the normal retirement age of sixty-five - they are not protected by § 4(i)(1)(A) of ADEA or § 204(b)(1)(H)(i) of ERISA and thus do not have standing to pursue those claims. Indeed, it must be remembered that [HN15] "if none of the named plaintiffs purporting to represent a class meets the case or controversy requirement, none [*13] may seek relief on behalf of himself or any member of the class." O'Shea v. Littleton, 414 U.S. 488, 494, 38 L. Ed. 2d 674, 94 S. Ct. 669 (1974). See also 3B J. Moore, FEDERAL PRACTICE, 23.10-1, n.8 (2d ed. 1971). The Court does not have subject matter jurisdiction over the Ninth Claim for Relief. Accordingly, the Court will dismiss the Ninth Claim for Relief contained in the Second Amended Class Action Complaint.

**II. Certification of the Class**

The named plaintiffs have moved for certification of the class. Because the Ninth Claim for Relief has been dismissed, no ADEA claims remain in this case, and therefore no ADEA representative action must be considered. Only certification of the class as to the ERISA claims under Fed.R.Civ.P. 23 is necessary.

Upon review of the Second Amended Class Action Complaint and the submissions of the parties, it is the opinion of this Court that the named plaintiffs have satisfied the requisites of Fed.R.Civ.P. 23 for class certification with regards to the remaining claims in the Second Amended Class Action Complaint. Therefore, the Court will certify the Second Amended Class Action Complaint pursuant to Fed.R.Civ.P. 23(c). At this juncture, the [*14] remaining claims include the Third, Fourth, Fifth, Sixth, and Seventh Claims for relief in the Second Amended Class Action Complaint. The Third Claim for Relief may be subject to decertification and dismissal depending upon whether plaintiffs proffer evidence which would tend to counter the defendants' contention that none of the named plaintiffs will suffer a reduction in annual benefits commencing at age sixty-five by virtue of the Plan Amendment.

**CONCLUSION**

For the foregoing reasons, the Court rules as follows:

1. Regarding the Third Claim for Relief, the named plaintiffs are ordered to proffer evidence which would tend to counter the defendants' contention that none of the named plaintiffs will suffer a reduction in annual benefits commencing at age sixty-five by virtue of the Plan Amendment. The Third Claim for Relief may be subject to decertification and dismissal depending upon the named plaintiffs' submissions;

2. The Ninth Claim for Relief is **DISMISSED;**

3. Plaintiffs' motion to certify the class is **GRANTED** as to the remaining claims. The remaining Claims contained in the Second Amended Class Action Complaint, to wit, the Third, Fourth, Fifth, Sixth, [*15] and Seventh Claims for Relief, are hereby certified as a class action pursuant to Fed.R.Civ.P. 23.

NICHOLAS H. POLITAN

U.S.D.J.

**EXHIBIT B**

Westlaw.

1998 WL 102751
Not Reported in F.Supp., 1998 WL 102751 (N.D.Ill.)
(Cite as: 1998 WL 102751 (N.D.Ill.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois.
Gordon LUNN, Individually, and behalf of all others
similarly situated,
Plaintiffs,
v.
MONTGOMERY WARD & CO., INC. RETIREMENT
SECURITY PLAN, Defendant.
**No. 97 C 3026.**

Feb. 26, 1998.

**MEMORANDUM OPINION AND ORDER**
GETTLEMAN, J.

*1 Plaintiff Gordon Lunn has filed an amended class action complaint against defendant Montgomery Ward & Co, Inc. Retirement Security Plan (the "RSP Plan"). The RSP Plan moves to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

**FACTUAL BACKGROUND**
According to the amended complaint, Montgomery Ward & Co., Inc. ("Montgomery Ward") sponsors two retirement plans: the RSP Plan, which is a defined benefit plan, and the Savings and Profit Sharing Plan (the "SPS Plan"), which is a defined contribution plan. Plaintiff began working for Montgomery Ward on November 4, 1981, and participated in both plans. Although plaintiff reached the normal retirement age of 65 in 1988, he continued working for Montgomery Ward until age 69. Plaintiff claims that the RSP Plan's method of calculating his retirement benefits, and the benefits of other Montgomery Ward employees who worked past the normal retirement age of 65, violates the terms of the RSP Plan, the terms of the SPS Plan, and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 et seq.

In order to participate in the RSP Plan, Montgomery Ward employees must join the SPS Plan. RSP Plan §§ 2.11, 8.4.

[FN1] Participation in the SPS Plan requires employees to contribute 3% of their gross salary to the SPS Plan trust. SPS Plan § 4.1. Upon normal retirement at age 65, the RSP Plan calculates the amount of the "retirement benefit payable." The retirement benefit payable is the equivalent of 1.5% of the wages that the employee earned during his entire career with Montgomery Ward while participating in the plans. RSP Plan § 8.1. If a Montgomery Ward employee continues working past the normal retirement age of 65 and retires at a later date, the RSP Plan provides that "the amount of the Retirement Benefit payable ... shall be the same amount which the Participant was entitled to receive on his Normal Retirement age, as provided in Section 8.1 hereof, with additional credit for Service after such date." RSP Plan § 8.3. In the meantime, no benefits are paid until retirement. RSP Plan § 8.5.

FN1. Under Rule 10(c), "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes ." Fed.R.Civ.P. 10(c). Although a plaintiff need not attach to his complaint the documents upon which his action is based, a defendant may introduce certain relevant documents if the plaintiff fails to do so. Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir.1993). Ordinarily, under Rule 12(b)(6) when "matters outside the pleading are presented to and not excluded by the court, the motion [to dismiss is] treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(b)(6); Venture Assoc. Corp., 987 F.2d at 431. Nevertheless, documents that are attached to a motion to dismiss are considered part of the pleadings "if they are referred to in the plaintiff's complaint and are central to [his] claim." Id.; see also, Wright v. Assoc. Ins. Co. Inc., 29 F.3d 1244, 1248 (7th Cir.1994). In the instant case, plaintiff did not attach to the amended complaint or incorporate by reference either the RSP Plan or the SPS Plan. Plaintiff, however, refers to and quotes from the plans extensively, relying heavily upon the terms and effect of each plan. The plans are central to plaintiff's claims, and therefore may be considered in deciding defendant's motion to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

dismiss. Defendant has submitted a copy of each plan.

Whether the amount of the retirement benefit payable under the RSP Plan is calculated at the normal retirement date under Section 8 .1 or at a postponed retirement date under Section 8.3, it is offset by the amount that would be paid annually by an annuity purchased with the funds in the employee's SPS Plan account, which consists of the employee's 3% contributions and the income earned thereon. RSP Plan § 8.4; SPS Plan §§ 2.6, 9. Section 8.4 provides: "the amount of the Retirement Benefit payable ... to any Participant shall be reduced by ... the annuity which could be purchased for the Participant ... with the amount ... in his [SPS Plan] Account attributable to Required Contributions ... as of the date of his retirement." For example, assume that 1.5% of the wages an employee retiring at the normal retirement age of 65 has earned during his entire career with Montgomery Ward (i.e., the retirement benefit payable) is $6000 a year, or $500 per month. Next, assume the employee's 3% contributions to the SPS Plan and the income earned thereon totals $20,000, and for this amount, an insurance company will provide an annuity of $200 per month. The RSP Plan will pay the employee $300 per month ($500 per month minus the $200 per month annuity amount). Thus, at retirement, the employee has two options; he can take $500 per month, paid in two separate checks: one for $300 from the RSP Plan and one for $200 from the insurance company; or he can take $300 per month from the RSP Plan and $20,000 in cash. In either case, the RSP Plan pays $300 per month.

**\*2** Plaintiff claims that when he retired at age 69, the offset amount based on the SPS Plan, "was not actuarially adjusted to reflect the plaintiff's contributory benefit payable at normal retirement age plus the incremental amounts contributed to the account by [him] after age 65." Plaintiff claims that the offset was instead "calculated on the basis of the entire [SPS] Plan amount in [his] account at actual retirement." Plaintiff asserts that the calculation of the offset should have excluded two amounts: (1) all of the income earned, between age 65 and his actual retirement, on the contributions and earnings in his SPS Plan account at age 65; and (2) all of the income earned on his 3% contributions

between age 65 and his actual retirement. Plaintiff also claims that the annuity factor used by the RSP Plan was based on his life expectancy at his actual retirement age, and that the annuity factor used should have been based on the longer life expectancy he had at his normal retirement date. If the RSP Plan had used the method of calculation he suggests, plaintiff claims that his employer-paid benefit upon actual retirement would have been much higher and his overall pension from both plans would have been greater.

Thus, plaintiff claims that the RSP Plan: (1) caused him and others similarly situated to suffer a forfeiture of a portion of their rights in accrued benefits derived from their own contributions, in violation of 29 U.S.C. § 1053(a); (2) caused him and others similarly situated to suffer a reduction in the rate of benefit accrual under the employer-paid defined benefit provided in the RSP Plan, in violation of 29 U.S.C. § 1054(b)(1)(H)(i); (3) failed to provide notice to him and others similarly situated of the suspension of benefits under the RSP Plan upon reaching retirement age, in violation of 29 U.S.C. § 1053 and implementing regulations of the Department of Labor; and (4) violated Section 9.3 of the RSP Plan, which, according to plaintiff, provides that a late retiree shall be paid "a benefit of Equivalent Actuarial Value" to that of a participant who retires at age 65, and Section 10.1 of the SPS Plan which, according to plaintiff, guarantees that each employee enrolled in the SPS Plan "shall have a non-forfeitable interest in all amounts credited to his [[SPS Plan] Account," constituting a breach of fiduciary duty under 29 U.S.C. § 1104(a)(1)(D).

## DISCUSSION
## I. STANDARDS FOR A MOTION TO DISMISS

In ruling on a motion to dismiss, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would a plaintiff's allegations entitle him to relief. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1429-30 (7th Cir.1996). The purpose of a motion to dismiss is to test the sufficiency of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

1998 WL 102751                                                                    Page 3
Not Reported in F.Supp., 1998 WL 102751 (N.D.Ill.)
**(Cite as: 1998 WL 102751 (N.D.Ill.))**

complaint, not to decide its merits. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990).

*3 Generally, for purposes of a motion to dismiss, the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Travel All Over the World,* 73 F.3d at 1428. If, however, certain allegations are inconsistent with the terms of a written document that is attached to or otherwise considered part of the complaint, the inconsistent allegations are not accepted as true, and the terms of the written document, fairly construed, prevail. *Perkins v. Silverstein,* 939 F.2d 463, 469 n. 4 (7th Cir.1991); *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago,* 927 F.2d 988, 991 (7th Cir.1991).

**II. CLAIMED VIOLATIONS**

**A. Violations of the RSP Plan and the SPS Plan**

Plaintiff claims that defendant violated Section 9.3 of the RSP Plan and Section 10.1 of the SPS Plan, thereby breaching its fiduciary duty under 29 U.S.C. § 1104(a)(1)(D). Plaintiff asserts that Section 9.3 of the plan provides that a late retiree shall be paid "a benefit of Equivalent Actuarial Value" to that of a participant who retires at age 65, and that Section 10.1 of the SPS Plan guarantees that each employee enrolled in the SPS Plan "shall have a nonforfeitable interest in all amounts credited to his [SPS Plan] Account." Plaintiff's allegations, however, are inconsistent with the actual unambiguous terms of the RSP Plan and the SPS Plan.

**1. The RSP Plan**

Section 9.3 does not state that late retirees are entitled to "a benefit of Equivalent Actuarial Value" to that of an employee who retires at age 65. Rather, Section 9.3 states that "a Participant who Retires on a Postponed Retirement Date shall be eligible for the Retirement Benefit provided for in Section 8.3 hereof *or* a benefit of Equivalent Actuarial Value thereto as provided for herein and payable from and after his Postponed Retirement Date." RSP Plan Section 9.3 (emphasis added). The retirement benefit provided by Section 8.3 is "the same amount which the Participant was

entitled to receive on his Normal Retirement date, as provided in Section 8.1 hereof, with additional credit for Service after such date." Section 8.1 provides for a retirement benefit payable that is the equivalent of "1.5% of the Participant's Total Earnings while a Participant...." The amount of total earnings by an employee who retires at a postponed retirement date will be higher than that of an employee who retires at the normal retirement age because the late retiree will have worked longer. Because the retirement benefit payable, for both late retirees and employees who retire at the normal retirement age, is the equivalent of 1.5% of the employee's total earnings, the late retiree's retirement benefit payable will also be larger. Thus, the late retiree receives "additional credit for [his] Service after" his normal retirement date, and Sections 8.1, 8.3, and 9.3 of the RSP Plan are satisfied.

As plaintiff has alleged, the amount of the retirement benefit payable, whether calculated at the normal retirement date under Section 8.1 or at a postponed retirement date under Section 8.3, is always offset by the amount that would be paid annually by an annuity purchased with the funds in the employee's SPS Plan account, which consists of the employee's 3% contributions and the income earned thereon. Plaintiff claims that his offset, as a late retiree, was wrongfully "calculated on the basis of the entire [SPS] Plan amount in [his] account at actual retirement" when the calculation should have excluded: (1) all of the income earned, between age 65 and his actual retirement, on the contributions and earnings in his SPS Plan account at age 65; and (2) all of the income earned on his 3% contributions between age 65 and his actual retirement. Plaintiff also claims that the annuity factor used by the RSP Plan should have been based on the longer life expectancy he had at his normal retirement date of 65, not the shorter life expectancy he had at age 69. Section 8.4, however, states, "*[n]otwithstanding any other provision of the Plan,* the amount of the Retirement Benefit payable ... to any Participant shall be reduced by the ... annuity which could be purchased for the Participant under the SPS Plan with the *amount ... in his* [SPS Plan] *account ... as of the date of his Retirement.*" (emphasis added). "Retirement" means "such time as a Participant is eligible to receive currently *and* elects to receive currently a Retirement Benefit or an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

1998 WL 102751                                                      Page 4
Not Reported in F.Supp., 1998 WL 102751 (N.D.Ill.)
**(Cite as: 1998 WL 102751 (N.D.Ill.))**

Optional Retirement Benefit *upon or after his termination of Service.*" RSP Plan Section 2.30 (emphasis added). Thus, the date of an employee's "retirement" is his actual retirement date, not his normal retirement date. The RSP Plan clearly provides that the offset will be calculated using the employee's age at actual retirement and the entire amount in the employee's SPS Plan account at actual retirement. Plaintiff cannot, therefore, claim that he was entitled, under the terms of the RSP Plan, to have his life expectancy at 65 used in the offset calculation or to have income earned between age 65 and actual retirement on amounts in his SPS Plan account excluded from the offset calculation. The RSP Plan simply does not provide for or require such a calculation. Plaintiff claims that his benefit should have been calculated, in effect, at age 65 and then recalculated every year thereafter until he actually retired. Plaintiff cannot claim that he was entitled to such a calculation because, under Section 8.5, he was not entitled to any benefit until he stopped working. Plaintiff does not claim that his RSP Plan benefit was not the amount he would have received if he had retired at age 65, with additional credit for continuing to work until his actual retirement (the benefit that he was actually entitled to under the RSP Plan). Accordingly, plaintiff has failed to state a claim of violation of the RSP Plan or for any related breach of fiduciary duty.

**2. The SPS Plan**

*4 Plaintiff claims that defendant violated Section 10.1 of the SPS Plan, which guarantees that each employee enrolled in the SPS Plan "shall have a non-forfeitable interest in all amounts credited to his [SPS Plan] Account." Plaintiff does not allege that he received less than all of the amounts credited to his SPS Plan account. The fact that the SPS Plan account balance is used to calculate the offset under the RSP Plan does not affect the amount of the SPS Plan benefit. Accordingly, plaintiff fails to state a claim of violation of the SPS Plan or for any related breach of fiduciary duty.

**B. ERISA Violations**

Plaintiff claims that defendant: (1) caused him and others similarly situated to suffer a forfeiture of a portion of their rights in accrued benefits derived from their own

contributions, in violation of 29 U.S.C. § 1053(a); (2) caused him and others similarly situated to suffer a reduction in the rate of benefit accrual under the employer-paid defined benefit provided in the RSP Plan, in violation of 29 U.S.C. § 1054(b)(1)(H)(i); and (3) failed to provide notice to him and others similarly situated of the suspension of benefits under the RSP Plan upon reaching retirement age, in violation of 29 U.S.C. § 1053 and implementing regulations of the Department of Labor. The court will address each ERISA claim in turn.

**1. Forfeiture**

Plaintiff argues that defendant has caused a forfeiture of the retirement benefit derived from his own mandatory contributions. These mandatory contributions are the 3% contributions required under the SPS Plan. Under 29 U.S.C. § 1053(a), an employee's "right to normal retirement benefit [must be] nonforfeitable upon the attainment of normal retirement age ..."The parties rightfully agree that, under § 1053(a), an employee's right to accrued benefits derived from his own contributions must vest immediately, while accrued benefits derived from employer contributions may vest over time. Plaintiff, however, does not claim that immediate vesting failed to occur. Rather, plaintiff argues that defendant should have given him his SPS Plan annuity or its lump sum equivalent at age 65, even though he continued to work for Montgomery Ward, because ERISA does not authorize the suspension of benefits derived from an employee's contributions during continued employment after age 65. Plaintiff does not cite any authority to support his assertion, beyond § 1053(a) itself and a repealed section of the Internal Revenue Code, 26 U.S.C. § 401(a)(9)(C).

Plaintiff's position is untenable. Section 1053(a) does not prohibit the suspension of benefits derived from an employee's own contributions during continued employment after age 65. Moreover, the *current* version of § 401(a) requires only that "the payment of benefits" under all plans, regardless of employer or employee funding, "begin not later than the 60th day after the *latest* of the close of the plan year in which (A) ... the participant attains the earlier of age 65 or the normal retirement age specified under the plan, (B) occurs the 10th anniversary of ... participation in the plan, or (C) *the participant terminates his service with*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

1998 WL 102751                                                                                                   Page 5
Not Reported in F.Supp., 1998 WL 102751 (N.D.Ill.)
**(Cite as: 1998 WL 102751 (N.D.Ill.))**

*the employer."* 26 U.S.C. § 401(a)(14) (emphasis added). Thus, because plaintiff continued to work for Montgomery Ward, he cannot claim that he was entitled, under ERISA, to his SPS Plan annuity or its lump sum equivalent at age 65.

**\*5** In the alternative, plaintiff argues that, even if it was permissible to temporarily suspend his SPS Plan benefits until his actual retirement, the RSP Plan and the SPS Plan must then actuarially adjust the amount of those benefits to compensate for the delay in payment. In support of his position, plaintiff cites cases and other materials discussing "defined benefit" plans involving employee contributions. There is, however, no defined benefit plan involving employee contributions in this case. Rather, there are two separate plans: the RSP Plan, which is a defined benefit plan to which Montgomery Ward alone makes contributions, and the SPS Plan, which is a "defined contribution" plan that is partially funded by employee contributions and the earnings thereon. Defendant need not make any actuarial adjustment to the benefit from the SPS Plan because defined contribution plans "provide[ ] for benefits based solely on the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 26 U.S.C. § 414(i). Thus, plaintiff is simply entitled to the entire balance in his account. If payment is delayed, the "adjustment" to an employee's distribution is the increase in his account balance that ordinarily occurs because the money remains invested and continues to accumulate interest.

Finally, plaintiff complains "a plan may not give the required adjustment with one hand, and then take it back with the other ... [t]he net result [being] that the combined benefit is not the actuarially equivalent to the combined benefit that [plaintiff] would have received at normal retirement age." Plaintiff is apparently arguing that defendant cannot allow an employee's SPS Plan account balance to grow, but then use the larger balance to offset the RSP Plan benefit. Ultimately, plaintiff asserts that while the "combined benefit" is the same under defendant's calculation and under the calculation he proposes, the employer-paid portion of the combined benefit, under his calculation, does not wrongfully decrease over time.

First, the amount of the retirement benefit payable under the RSP Plan, whether calculated at the normal retirement date or at a postponed retirement date, is always offset by the amount that would be paid annually by an annuity purchased with the funds in the employee's SPS Plan account. The offset formula is the same for employees who retire at age 65 and employees who retire late, and, in either case, the SPS Plan benefit is unaffected. Thus, there is no "penalty" for retiring late with respect to the method of calculating the offset.

In any event, the fundamental problem with plaintiff's argument is that there is no "combined benefit" flowing from the RSP Plan and the SPS Plan. As stated above, there are two separate plans, each with its own benefit. Each plan, and the benefit it provides, must be evaluated separately. Plaintiff cannot claim a violation of ERISA or either plan based on the relationship between the two plans.

**\*6** As the court has already stated, the SPS Plan account balance is used to offset the amount of the retirement benefit payable under the RSP Plan, but the offset does not affect the amount of the SPS Plan benefit. With respect to the RSP Plan benefit, participation in the RSP Plan requires participation in the SPS Plan, but participation in the RSP Plan is entirely voluntary. When an employee decides to participate in the RSP Plan and receive a benefit from it, that employee agrees to defendant's use of his SPS Plan account balance at his retirement to offset his retirement benefit payable under the RSP Plan. Moreover, the offset is itself part of the formula used to calculate the amount due to an employee under the RSP Plan; it is not a subsequent deduction from the amount due. *Williams v. Caterpillar, Inc.,* 944 F.2d 658, 664 (9th Cir.1991). Benefits provided by one plan may be offset by benefits received under other plans provided by the same employer. *Pritchard v. Rainfair, Inc.,* 945 F.2d 185, 189-90 (7th Cir.1991); *Holliday v. Xerox Corp.,* 732 F.2d 548, 550-52 (6th Cir.1984). Plaintiff's allegations demonstrate that he is receiving exactly the benefit provided by the RSP Plan. Accordingly, he fails to state a claim for forfeiture under ERISA. [FN2]

> FN2. Even if defendant did provide some sort of "combined benefit," which it does not, the court could not conclude that a portion of the benefit is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

1998 WL 102751                                                                            Page 6
Not Reported in F.Supp., 1998 WL 102751 (N.D.Ill.)
**(Cite as: 1998 WL 102751 (N.D.Ill.))**

forfeited when an employee receives the same
amount under either defendant's or plaintiff's
calculation.

## 2. The Rate of Benefit Accrual

In the amended complaint, plaintiff claims that defendant
caused him and others similarly situated to suffer a
reduction in the rate of benefit accrual under the
employer-paid defined benefit provided in the RSP Plan in
violation of 29 U.S.C. § 1054(b)(1)(H)(i). In his brief,
plaintiff argues that "after he turned 65 his combined benefit
accrual rate was reduced" because defendant used "actuarial
increases [related to] the portion of the [combined] benefit
derived from employee contributions ... to decrease the
employer-derived [[portion of the combined] benefit." As
the court has already explained, there is no combined
benefit; there are two separate plans and two separate
benefits. Under the RSP Plan, the offset formula is the same
for employees who retire at age 65 and employees who
retire late, and no matter when an employee retires, the
retirement benefit payable, which is offset, is always the
equivalent of 1.5% of the wages that the employee earned
during his entire career with Montgomery Ward while
participating in the plans. Thus, the rate of benefit accrual is
not reduced at age 65, and plaintiff fails to state a claim
under 29 U.S .C. § 1054(b)(1)(H)(i).

## 3. Notice of the Suspension of Benefits

The parties agree that a notice of suspension of benefits is
required only when the suspension results in a forfeiture.
Because the court has found that plaintiff fails to state a
claim for forfeiture under ERISA, plaintiff cannot state a
claim for failure to provide notice of suspension of benefits.

## CONCLUSION
Plaintiff's amended complaint is dismissed with prejudice.

Not Reported in F.Supp., 1998 WL 102751 (N.D.Ill.)

### Motions, Pleadings and Filings (Back to top)

• 1:97cv03026 (Docket) (Apr. 28, 1997)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT C**

Westlaw.

Slip Copy                                                                              Page 1
Slip Copy, 2005 WL 3120268 (E.D.Pa.), 36 Employee Benefits Cas. 1321, Pens. Plan Guide (CCH) P 23994A
**(Cite as: 2005 WL 3120268 (E.D.Pa.))**

C

**Motions, Pleadings and Filings**

United States District Court,
E.D. Pennsylvania.
Sandra REGISTER, et al., Plaintiffs,
v.
PNC FINANCIAL SERVICES GROUP, INC., et al.,
Defendants.
**No. 04-CV-6097.**

Nov. 21, 2005.

Bryan L. Clobes, Michael S. Tarringer, Miler, Faucher & Cafferty, Andrea L. Adlam, David H. Weinstein, Weinstein, Kitchenoff & Asher, LLC, Philadelphia, PA; Hilary K. Ratway and William P. Butterfield, Finkelstein, Thompson & Loughran, Washington, DC, for Plaintiffs.

William A. Slaughter, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, for Defendants.

*MEMORANDUM*

DAVIS, J.

**\*1** Presently before this Court is Defendants' Motion to Dismiss the Amended Complaint (Doc. No. 22) and Plaintiffs' response thereto (Doc. No. 28). For the reasons that follow, Defendants' Motion to Dismiss is granted.

I. FACTUAL BACKGROUND

On December 30, 2004, Plaintiffs filed suit against Defendants PNC Financial Services Group, Inc. ("PNC"), PNC Bank, N.A., Pension Committee of PNC Financial Services Group, Inc. Pension Plan and PNC Financial Services Group, Inc. Pension Plan (together "Defendants") for alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Plaintiffs bring this action on behalf of current and former PNC employee-participants in and beneficiaries of the PNC Financial Services Group, Inc. Pension Plan. This case arises from PNC's conversion of its employee pension plan from a traditional defined benefit plan to a cash balance plan.

A. Background on Cash Balance Plans

Cash balance plans have existed for twenty years; however, it was not until the last few years that cash balance plans became widely adopted. This movement from traditional defined benefit plans to cash balance plans reflects the changing labor market. From an employee's perspective, cash balance plans are better suited to increased job-mobility and contemporary labor markets because they accrue evenly over an employee's career, allow greater portability, and are easier to understand because they resemble 401ks. *See Esden v. Bank of Boston,* 229 F.3d 154, 158 n. 5 (2d Cir.2000). From an employer's perspective, cash balance plans are more advantageous because employees have a greater appreciation for the value of their pension benefit under a cash balance plan. *Id.* In addition, the employer retains the funding/tax benefits associated with a defined benefit plan. *Id.* Cash balance plans on their own are not terribly controversial. *See Campbell v. Bank Boston, N.A.,* 327 F.3d 1, 8 (1st Cir.2003). However, the transition from traditional defined benefit plans to cash balance plans has sparked a series of lawsuits.

While there is no doubt that a cash balance plan is a defined benefit plan under ERISA, there are key differences between a cash balance plan and a traditional defined benefit plan. *See Esden v. Bank of Boston,* 229 F.3d 154, 158 (2d Cir.2000) ("notwithstanding that cash balance plans are designed to imitate some of the features of defined contribution plans, they are nonetheless defined benefit plans under ERISA"). The two factors that affect the accrual of a traditional pension benefit are the years of service and the amount of pay, whereas the factors that affect the accrual of a cash balance plan benefit are the years of service, the amount of pay, the number of years a participant has until normal retirement date and the interest rate. The way in which the benefits are expressed also differs; the traditional defined benefit plan is typically expressed as an annual annuity payable at normal retirement date, whereas the benefit in a cash balance plan is typically expressed as a lump sum value.

B. PNC's Pension Plan Conversion

**\*2** Prior to January 1, 1999, PNC's pension plan was a final

Westlaw.

Slip Copy                                                                                                    Page 2
Slip Copy, 2005 WL 3120268 (E.D.Pa.), 36 Employee Benefits Cas. 1321, Pens. Plan Guide (CCH) P 23994A
**(Cite as: 2005 WL 3120268 (E.D.Pa.))**

average pay plan, i.e. a traditional defined benefit plan. Under this plan, the normal retirement benefit was calculated by multiplying a fixed percentage with the participant's years of service and the participant's final average pay. [FN1] Defs' Mot. to Dismiss at Ex. B, PNC Bank Corp. Amended and Restated Pension Plan ¶ 4.1 [hereinafter Prior Plan]. The normal retirement benefit was expressed in terms of an annual annuity that was payable when the participant turned sixty-five. If a participant retired before his normal retirement date, the participant was potentially eligible to receive a subsidized early retirement benefit. [FN2] *Id.* ¶ 4.2. The participant had the option to receive his benefit as a lump sum amount, the actuarial equivalent of the annual benefit. *Id.* ¶ 5.2.

> FN1. The calculation involved different fixed percentages for service up to and including 25 years (1.3%) and service in excess of 25 years (1.0%). Defs' Mot. to Dismiss at Ex. B, PNC Bank Corp. Amended and Restated Pension Plan ¶ 4.1. If a participant's final average compensation was in excess of the covered compensation, the benefit also included an amount equal to a fixed percentage (0.45%) multiplied by the amount the final average compensation exceeded the covered compensation and by the credited service up to and including 35 years of service. *Id.*

> FN2. Normal retirement date was defined as the participant's sixty-fifth birthday. *Id.* ¶ 1.29. The participant's benefit was fully subsidized if the participant retired at age 62 or older. *Id.* ¶ 4.2. A participant's benefit was partially subsidized if the participant retired between the ages of 50 and 62. *Id.*

On January 1, 1999, PNC replaced its traditional defined benefit plan with a cash balance plan. Under the new cash balance formula, benefits that had accrued under the prior plan were restated in the form of opening hypothetical cash balance accounts. Defs' Mot. to Dismiss at Ex. A, PNC Bank Corp. Amended and Restated Pension Plan ¶ 4.2 [hereinafter Cash Balance Plan]. Each participant's hypothetical account is credited annually with an earnings credit, which is a percentage of pay ranging from 3% to 8%.

[FN3] *Id.* ¶ 4.2. The earnings credit percentage is based on the sum of the participant's age and years of service. [FN4] *Id.* Interest credits based upon the 30- year Treasury rate are credited quarterly to the participant's account. *Id.* ¶ 4.5. At the participant's normal retirement date, the account is actuarially converted into an annual annuity. *Id.* ¶ 4.6.

> FN3. An account may also be credited with transitional earnings credits. *Id.* ¶ 4.4.

> FN4. If the sum of a participant's age and service is less than 40, he receives 3% of pay; if it is between 40 and 49 he receives 4% of pay; if it is between 50 and 59, he receives 5% of pay; if it is between 60 and 69, he receives 6% of pay; if it is 70 or more, he receives 8% of pay. Cash Balance Plan ¶ 4.3.

## II. LEGAL STANDARD

Dismissal for failure to state a claim is appropriate when it clearly appears that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Robb v. City of Philadelphia,* 733 F.2d 286, 290 (3d Cir.1984). A court may consider any document appended to and referenced in the complaint on which plaintiff's claim is predicated. *See* Fed.R.Civ.P. 10(c); *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1426 (3d Cir.1997); *In re Westinghouse Securities Litigation,* 90 F.3d 696, 707 (3d Cir.1996). A claim may be dismissed when the facts alleged and the reasonable inferences therefrom are legally insufficient to support the relief sought. *See Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc.,* 836 F.2d 173, 179-80 (3d Cir.1988).

## III. DISCUSSION

Plaintiffs allege that (1) the plan change violates ERISA because it results in the absence of benefit accruals for a number of years for some participants in violation of ERISA § 204(b)(1)(B); (2) an employee's benefit accrual decreases on account of the employee's age in violation of ERISA § 204(b)(1)(H); (3) the plan change notification did not comply with ERISA § 204(h); (4) the Summary Plan

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                                              Page 3
Slip Copy, 2005 WL 3120268 (E.D.Pa.), 36 Employee Benefits Cas. 1321, Pens. Plan Guide (CCH) P 23994A
**(Cite as: 2005 WL 3120268 (E.D.Pa.))**

Description violates ERISA § 102; and (5) Defendants did not meet their fiduciary duties under ERISA § 404. Defendants have moved to dismiss on all counts.

A. ERISA § 204(b)(1)(B) [FN5]

> FN5. This count is brought on behalf of Plaintiffs Beckman, Rhoades and Daggett and on behalf of the subclass of current and former employee-participants in and beneficiaries of the Plan as of December 31, 1998 who were or would have been eligible for an early retirement subsidy under the prior plan. Pls' Opp. at 9 n6.

**\*3** Plaintiffs allege that because of the way the initial account balances under the cash balance plan were calculated, the benefits for some participants will not increase for a number of years in violation of ERISA § 204(b)(1)(B). Compl. ¶ 46. *See* 29 U.S.C. § 1054(b)(1). Plaintiffs believe this stagnation of some participants' benefits results from the failure to include the prior plan's early retirement subsidies in the calculation of the initial account balance under the new plan. Compl. ¶ 46. This statement of the issue actually confounds two issues: (1) whether the new pension plan survives the required anti-backloading test under ERISA § 204(b)(1) and (2) whether early retirement factors need to be factored into the initial account balances under the Cash Balance Plan. Each issue will be addressed in turn.

1. The Anti-Backloading Test

A pension plan must pass one of the three anti-backloading tests set forth in ERISA. 29 U.S.C. § 1054(a)(1), (b)(1). The anti-backloading tests prevent an employer from allowing minimal accrual of benefits in the initial years of employment to be followed by large benefit accruals as an employee nears retirement. *See Hoover v. Cumberland, Md. Area Teamsters Pension Fund,* 765 F.2d 977, 982 n. 10 (3d Cir.1985). Two of the anti-backloading tests do not apply to benefits calculated using a career pay history. 29 U.S.C. § 1054(b)(1)(A), (C). Since a cash balance plan is calculated using a career pay history, only one of the three tests is applicable. [FN6] Therefore, the plan must satisfy the 133-1/3% test. *See id.* § 1054(b)(1)(B). A plan will fail this

test if the value of the benefit an employee accrues in any one year is 33-1/3% greater than the value of the benefit accrued in any prior year of employment. *Id.*

> FN6. In a cash balance plan, a pay credit is added to the cash balance account for each year of earnings. Therefore, it follows that a career pay history is used to calculate the benefit.

When a company changes its pension plan, ERISA protects benefits previously earned under the prior plan provisions. 29 U.S.C. § 1054(g)(1). At no point can the participant receive less than his accrued benefit at the time the plan was changed. [FN7] *Id.* In order to comply with this provision of ERISA, the new PNC plan provides that a participant receives the greater of his cash balance benefit and his frozen accrued benefit, including any applicable early retirement subsidies, under the prior plan. *See* Cash Balance Plan ¶ 1.2. For some participants, the frozen prior plan benefit may be greater than the benefit under the new plan for a few years. When this occurs, the participant's benefit will not accrue any additional value.

> FN7. The accrued benefit at the time of the plan change is typically "frozen."

Plaintiffs claim that since some employees' benefits will not increase for a few years after the plan change, it is inevitable that the plan will fail the 133-1/3% test, as no accrual followed by the resumption of accruals will inevitably be more than a third higher. Compl. ¶ 46. While it is certainly true that the resumption of accruals after a time of no accrual will result in a change in accrual rate that is higher than one third, the 133-1/3% test has provisions that address a situation such as this one, where the period of no accrual results from a plan amendment. *See* 29 U.S.C. § 1054(b)(1)(B)(I). The test states that "any amendment to the plan which is in effect for the current year shall be treated as in effect for all other plan years." *Id.* Once a plan amendment occurs, only the new plan is taken into consideration when performing the test. Since the protected prior benefits under the old plan are disregarded, no wearaway of the benefit occurs. [FN8] Plaintiffs do not allege that the cash balance plan, when viewed by itself, violates the 133-1/3% test. Therefore, Plaintiffs have failed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                                    Page 4
Slip Copy, 2005 WL 3120268 (E.D.Pa.), 36 Employee Benefits Cas. 1321, Pens. Plan Guide (CCH) P 23994A
**(Cite as: 2005 WL 3120268 (E.D.Pa.))**

to state a claim for relief.

> FN8. A recent district court case held that "because plaintiffs' anti-backloading claim attempts to compare the unamended benefit formulas with the amended benefit formulas, plaintiffs fail to state a claim for relief." _Allen v. Honeywell Retirement Earnings Plan,_ 382 F.Supp.2d 1139, 1160 (D.Ariz.2005).

2. Early Retirement Factors

*4 Plaintiffs contend that the pre-plan amendment early retirement subsidies should have been applied to the calculation of the lump sum value of the accrued benefit. Compl. ¶ 46. Employers "are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate" pension plans. _Curtis-Wright Corp. v. Schoonejongen,_ 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995); _Lockheed Corp. v. Spink,_ 517 U.S. 882, 890-91, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996). PNC's new pension plan provides that the initial account balance will be set equal to "an amount which is the lump sum value of [the employee's] Accrued Benefit, determined under the provisions of the Prior Plan." Cash Balance Plan ¶ 4.2. Accrued Benefit, as defined under the prior plan, is the benefit payable at normal retirement date. [FN9] Prior Plan ¶¶ 1.1, 1.38. Since the Accrued Benefit is payable at age 65, no early retirement subsidies apply. [FN10] The ability to amend the plan lies with the employer. The employer was free to define the initial account balance under the new plan as it did, i.e. to exclude the value of any early retirement subsidies when calculating the initial account balance. As long as the value of the early retirement subsidy is preserved as it applied to the benefit accrued under the old plan, there is no violation of ERISA. _See_ 29 U.S.C. § 1054(g).

> FN9. Normal Retirement Date is defined as the employee's sixty-fifth birthday. _Id._ ¶ 1.29.

> FN10. Under the prior plan, early retirement subsidies applied to those retiring between age 50 and age 64. Prior Plan ¶ 4.2.

Plaintiffs have failed to state a claim for relief under ERISA

§ 204(b)(1)(B). As a result, this count is dismissed.

B. ERISA § 204(b)(1)(H)

A pension plan violates ERISA's age discrimination provision if, under the plan, "the employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age." 29 U.S.C. § 1054(b)(1)(H). Whether or not a cash balance plan violates this age discrimination provision turns on statutory interpretation. The issue is whether "the rate of an employee's benefit accrual" for a cash balance plan refers to the change in the benefit payable in the form of an annuity that commences at age 65 or to the annual amount credited to the employee's cash balance account.

Under ERISA, an "Accrued Benefit" is defined as "the individual's accrued benefit determined under the plan ... expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002. A number of courts have held that future cash balance interest credits are part of the accrued benefit. _See_ _Berger v. Xerox,_ 338 F.3d 755 (7th Cir.2003); _Esden v. Bank Boston,_ 229 F.3d 154 (2d Cir.2000); _Lyons v. Georgia-Pacific Corp. Salaried Employees Retirement Plan,_ 221 F.3d 1235 (11th Cir.2000). In other words, in calculating a participant's accrued benefit, the cash balance account value was projected with interest to age 65, the normal retirement date, and then actuarially converted into an annual benefit commencing at age 65. Although the interest had not yet been "credited" to the cash balance account, the plan provided that it would be in the future, so the future interest credits were determined to be part of the accrued benefit. Plaintiffs argue that it follows that the rate of benefit accrual for § 411(b)(1)(H) purposes includes all future interest credits. Pls' Opp. at 12-13.

*5 Under a cash balance plan, an amount of money credited to a younger individual will have more time to accrue interest and will result in a larger annuity upon retirement than the same amount credited to an employee closer to retirement age. [FN11] An amount contributed to a younger employee is worth more (when expressed as an annuity starting at age 65) than the same amount contributed to an older employee, because the younger employee has more time to accrue interest before normal retirement age.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                      Page 5
Slip Copy, 2005 WL 3120268 (E.D.Pa.), 36 Employee Benefits Cas. 1321, Pens. Plan Guide (CCH) P 23994A
**(Cite as: 2005 WL 3120268 (E.D.Pa.))**

Plaintiffs correctly note that interest credits attributed to a certain earnings credit are more substantial for younger participants. Pls' Opp. at 15. As a result, Plaintiffs allege that the "rate of benefit accrual" decreases for all participants based on age in violation of ERISA § 204(b)(1)(H). [FN12] Whether or not this is true turns on whether the "rate of benefit accrual" is measured in terms of the change in the benefit payable in the form of an annuity at age 65.

> FN11. This is as true for someone age 25 versus age 30 as it is for someone age 45 versus age 50.

> FN12. Plaintiffs note that the rate of benefit accrual decreases more dramatically when the sum of participant's age and service is greater than 70. While this is true, this is because the plan provides increasing pay credits based on the sum of participant's age and service. After the sum of participant's age and service reaches 70, the pay credits (which start at 3%) are held constant at 8% of pay. Plaintiffs, misunderstanding the effects of this increasing pay credit percentage, allege that workers who starts at an older ages "lose the benefits of the increasing earnings credit after a shorter time of service." While this is true, the workers who start at older ages receive the benefit of higher pay credits from the time they start work. By way of illustration: a worker who starts at age 30 has 3% of his pay credited to his cash balance account, while a worker who starts at age 50 has 5% of his pay credited. Even if they are making the same amount, the older worker has more pay credited.

1. Previous Decisions that Address Whether Cash Balance Plans Violate ERISA Age Discrimination Provisions

The Southern District of Indiana, the first court to address this issue, found that there were two reasons the cash balance design did not violate the ERISA age discrimination provisions. *Eaton v. Onan Corp., 117 F.Supp.2d 812 (S.D.Ind.2000).* First, the court found that the ERISA age discrimination provisions did not apply to employees who have not yet reached normal retirement age. *Id. at 815.* After

finding that the statute did not unambiguously require that the rate of benefit accrual be measured in terms of an annuity payable at normal retirement age, the court reviewed the legislative history, the broader purposes of the legislation and the practical implications of its decision. *Id. at 825-34.* The court found that statutory headings in the text of the original enactment and in the IRC's parallel discrimination provision refer to the accrual of benefits beyond normal retirement age, *id. at 826,* and that the legislative history confirms that the age discrimination provisions were enacted to protect employees after normal retirement age. *Id. at 827-29.*

Second, the court found that even if the pension age discrimination provisions apply to all participants, when "their language is properly applied to cash balance plans, the undisputed facts show that the rate of benefit accrual does not depend on age." *Id. at 816.* After recognizing that the "rules for defined benefit plans simply were not developed to address the features of cash balance plans," the court held that the concept of the benefit accrual rate did not have a single, self-evident meaning. *Id. at 818, 830.* After considering the practical effects of alternative interpretations, the court found that, for cash balance plans, the accrual rate should be "the change in the employee's cash balance account from one year to the next," not the change in the accrued benefit. *Id. at 832-33.* [FN13]

> FN13. The court noted that if it adopted plaintiff's interpretation of the rate of benefit accrual, "it is likely that hundreds of cash balance plans with millions of participants will be deemed illegal." *Id. at 823.*

*6 After *Eaton,* the First Circuit noted that the answer to whether or not a cash balance plan violated ERISA's age discrimination provision depends on "an interpretation of the complex ERISA statutory scheme." *Campbell v. Bank Boston, 327 F.3d 1, 9 (1st Cir.2003).* While declining to "resolve this complicated issue," the court noted that the ERISA age discrimination provision may not even apply to employees younger than the age of normal retirement. *Id. at 10* (citing Eaton and stating that the legislative history "buttresses this argument"). The court also noted that it was "by no means clear" that the rate of accrual needs to be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                                                Page 6
Slip Copy, 2005 WL 3120268 (E.D.Pa.), 36 Employee Benefits Cas. 1321, Pens. Plan Guide (CCH) P 23994A
**(Cite as: 2005 WL 3120268 (E.D.Pa.))**

defined in terms of an annuity payable at normal retirement date. *Id.*

Without citing either case that had addressed the issue, the Southern District of Illinois found that a cash balance plan violated ERISA's age discrimination provision. *Cooper v. IBM Personal Pension Plan,* 274 F.Supp.2d 1010 (S.D.Ill.2003). The court held that Congress did not intend the term "benefit accrual" to mean something different from "accrued benefit." *Id.* at 1022. "The syntax differs ever so slightly so as to comport with the requirements of good English usage, but the concept is the same." *Id.* The court held that the rate of accrual should be measured in terms of an annuity payable at normal retirement age. In terms of an age 65 annuity, the interest credits are always more valuable for a younger employee than an older employee. *Id.* at 1021. Therefore, the court found that a cash balance plan violated the "literal and unambiguous provisions" of ERISA § 204(b)(1)(H). *Id.* at 1022.

Recently, the District of Maryland compared *Cooper* with *Eaton* and *Campbell*. *Tootle v. ARINC, Inc.,* 222 F.R.D. 88, 93 (D.Md.2004). Struggling with the inevitable result of *Cooper,* that all cash balance plans violate the ERISA age discrimination provision by virtue of their design, the court refused to find all cash balance plans per se discriminatory. *Id.* The court agreed with the reasoning in *Eaton,* finding that the legislative history and the statutory language provided strong evidence that the age discrimination provision was not intended to protect workers until after they attained normal retirement age. *Id.* In addition, the court held that the rate of benefit accrual should be that defined in *Eaton* or that included in the ERISA provisions for defined contribution plans. *Id.* at 94.

## 2. Analysis

This issue turns on what is meant by the "rate of an employee's benefit accrual" in ERISA § 204(b)(1)(H). This Court agrees with the *Eaton* court's secondary analysis of this issue. ERISA does not define the "rate of an employee's benefit accrual" for purposes of applying the ERISA age discrimination provisions. *Eaton,* 117 F.Supp.2d at 825. *See also* Pls' Opp. at 14 ("the term 'benefit accrual' is not explicitly defined in the statute"). Plaintiffs contend that the

"rate of an employee's benefit accrual" must be based upon the change in value of the employee's annuity at normal retirement age. [FN14] Pls' Opp. at 12-18. This conclusion assumes that the accrued benefit, which is the participant's benefit at normal retirement date, is the benefit referred to in "rate of an employee's benefit accrual." However, this phrase does not require that the rate be measured solely in terms of an annuity payable at normal retirement age. *Eaton,* 117 F.Supp.2d at 825.

> FN14. Plaintiff addresses the *Eaton* decision by arguing that *Eaton* was based on an incorrect premise, i.e. that there conflicting definitions of accrued benefit. Pls' Opp. at 17. However, in *Eaton,* the court found that there were different possible definitions for the "rate of employee's benefit accrual," not for accrued benefit. *Eaton,* 117 F.Supp.2d at 825.

*7 The concept of the benefit accrual rate does not have a single self-evident meaning. [FN15] *Id.* at 830. Cash balance plans accrue benefits differently than traditional defined benefit plans. Under a traditional defined benefit plan, the benefits are defined in terms of the age 65 annuity. Therefore, it follows logically that the rate of benefit accrual is the change in the accrued benefit. Cash balance plans are not defined in terms of an age 65 annuity, rather they are defined in terms of an account balance that grows with pay credits and interest. Therefore, it follows logically that the rate of benefit accrual is determined by the change in the account balance.

> FN15. This is complicated by the fact that the "rules for defined benefit plans simply were not developed to address the features of cash balance plans." *Eaton,* 117 F.Supp.2d at 818.

This view is buttressed by the Conference Report on OBRA 1986, the ERISA amendment that established § 204(h)(1)(H), and statements by the Department of Treasury, one of the agencies charged with administering ERISA. The Conference Report on OBRA 1986, in discussing benefit accruals under the provision, states that "[p]resent law specifies certain requirements with respect to the rate at which benefits are accrued (i.e., earned) under a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

pension plan." H.R. Conf. Rep. No. 99-1012, at 375 (1986). The word "accrued" in this context means earned," it does not refer to the "accrued benefit."

Rulings, interpretations and opinions of administrative agencies "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." [FN16] *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944). Informal agency interpretations are not binding but are entitled to respect under *Skidmore* deference to the extent they are persuasive. *George Harms Construction Co., Inc. v. Chao*, 371 F.3d 156, 161 (3d Cir.2004) (citing *Madison v. Resources for Human Development, Inc.*, 233 F.3d 175, 186 (3d Cir.2000)). An agency interpretation may merit some deference whatever its form. *Santiago v. GMAC Mortgage Group, Inc.*, 417 F.3d 384, 389 n. 4 (3d Cir.2005) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 234, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)).

> FN16. The factors to be considered when determining the weight to be given to the administrative agency's interpretation include "the thoroughness evident in its consideration, the validity of its reasoning, and its consistency with earlier and later pronouncements." *Skidmore*, 323 U.S. at 140.

The Department of Treasury has consistently stated that cash balance plans are not age discriminatory. The proposed 2002 Treasury Department regulations stated that cash balance plans are not inherently age discriminatory. Prop. Treas. Reg. § 1.411, 67 Fed.Reg. 76,123 (Dec. 11, 2002). [FN17] In its Revenue Proposals for 2005 and 2006, the Department of Treasury, after noting the disagreement between the *Cooper* and *Eaton* courts, stated that "cash balance plans and cash balance conversions are not inherently age-discriminatory." Department of Treasury, *General Explanations of the Administration's Fiscal Year 2006 Revenue Proposals* 82 (2005); Department of Treasury, *General Explanations of the Administration's Fiscal Year 2005 Revenue Proposals* 104 (2004). The preamble to the Department of Treasury's regulations under IRC § 401(a)(4) stated that the "fact that interest adjustments through normal retirement age are accrued in

the year of the hypothetical allocation will not cause a cash balance plan to fail to satisfy the requirements of § 411(b)(1)(H)." 56 Fed.Reg. 47,524, 47,528 (Sept. 19, 1991).

> FN17. The proposed regulations emphatically reject the first holding in *Eaton*, that the age discrimination provisions only apply after normal retirement age.

*8 The proposed Treasury regulations provided that the rate of benefit accrual under a cash balance plan is additions to the cash balance account for the year. Prop. Treas. Reg. § 1.411, 67 Fed.Reg. 76,123 (Dec. 11, 2002). After considering the practical effects of alternative interpretations, the *Eaton* court found that, for cash balance plans, the accrual rate should be "the change in the employee's cash balance account from one year to the next." *Eaton*, 117 F.Supp.2d at 832-33. [FN18] This Court cannot find any reason that § 204(h)(1)(H) should be construed otherwise. Since this Court finds that "rate of an employee's benefit accrual" does not necessarily refer to the accrued benefit at age 65, PNC's cash balance plan is not age discriminatory. Therefore, Plaintiffs have failed to state a claim for relief.

> FN18. The court noted that if it adopted plaintiff's interpretation of the rate of benefit accrual, "it is likely that hundreds of cash balance plans with millions of participants will be deemed illegal." *Id.* at 823.

C. ERISA § 204(h)

Plaintiffs contend that the cash balance conversion "significantly reduced the rate of future pension plan benefit accruals for each plan participant" and that Defendants, although they were aware of this, did not inform Plaintiffs of these reductions. Compl. ¶ 65. In the ERISA § 204(h) notice, which is incorporated through reference into the Motion to Dismiss, Defendants summarized the new cash balance plan and stated that the plan change "may affect" and "in some instances reduce" the rate of future benefit accruals. Defs' Mot. to Dismiss at Ex. C, Section 204(h) Notice. At issue is whether these disclosures by Defendants satisfied the requirements of ERISA § 204(h) or whether

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                      Page 8
Slip Copy, 2005 WL 3120268 (E.D.Pa.), 36 Employee Benefits Cas. 1321, Pens. Plan Guide (CCH) P 23994A
**(Cite as: 2005 WL 3120268 (E.D.Pa.))**

more was required.

At the time of the plan amendment, ERISA § 204(h) provided that a plan "may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date." [FN19] 29 U.S.C. § 1054(h)(1) (1998). A summary of the amendment meets these requirements "if the summary is written in a manner calculated to be understood by the average plan participant and contains the effective date." Treas. Reg. 1.411(d)-6, Q & A(10) (1998). [FN20] "The summary need not explain how the individual benefit of each participant or alternate payee will be affected by the amendment." Id.

> FN19. ERISA § 204(h) has since been amended to require that the notice is sufficient to enable participants to understand the effect of the amendment. 29 U.S.C. § 1054(h)(2), as amended by Pub.L. No. 107-16 § 659(b), effective Jan. 1, 2002.

> FN20. This regulation has also since been amended.

The Section 204(h) notice provided by PNC comprehensively summarizes the new cash balance plan and is written in a way that can be "understood by the average plan participant." See Defs' Mot. to Dismiss at Ex. C, Section 204(h) Notice at 1-13, 16-20. The notice describes how the initial account balance will be calculated and how benefits will accrue in the future. Id. at 7-10. The notice also explains that the interest accrual will be greater for younger employees since more time passes before they reach retirement. Id. at 8. The Treasury Regulations make it clear that all that is required in the § 204(h) notice is the effective date and an understandable summary of the plan amendment, both of which Defendants provided. See id. at 1-13, 16-20; Treas. Reg. 1.411(d)-6, Q & A(10) (1998). Defendants did not notify participants that their benefit accrual rates would be "significantly reduced" in the future, but, quite simply, they did not need to. As a result, this

claim is dismissed. [FN21]

> FN21. Plaintiffs cite four cases for their proposition that the notice in this case was insufficient. Pl.'s Opp. at 36-37. These cases are easily distinguishable: Abels v. Titan Intern., Inc., 85 F.Supp.2d 924 (S.D.Iowa 2000) (finding notice to be insufficient when participants were not notified of the plan amendment); DiCioccio v. Duquesne Light Co., 911 F.Supp. 880 (W.D.Pa.1995) (finding insufficient notice when notice occurred on the day of the amendment not 15 days before); Koenig v. Int'l Life Corp., 880 F.Supp. 372 (E.D.Pa.1995) (finding insufficient notice when participants were never notified of the plan's amendment); Pickering v. USX Corp., 809 F.Supp. 1501 (D.Utah 1992) (finding that notifying the union was insufficient and that individual participants needed to receive notice).

D. ERISA § 102

*9 Plaintiffs allege that the Summary Plan Description ("SPD") "fails to disclose the Cash Balance Formula's failure to include the protected early retirement subsidy" and fails to disclose "that plan participants' rate of future benefit accruals was being reduced as a function of getting older." Compl. ¶ 67. The SPD requirements are addressed by Section 102 of ERISA, 29 U.S.C. § 1022, and a Department of Labor regulation, 29 C.F.R. § 2520.102-2(a), (b). Defendants rely on ERISA § 102. [FN22] Plaintiffs believe they are quoting ERISA § 102, but instead rely on 29 C.F.R. § 2520.102-2(a), (b). [FN23]

> FN22. ERISA § 102 provides that "the summary plan description ... shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy, 2005 WL 3120268 (E.D.Pa.), 36 Employee Benefits Cas. 1321, Pens. Plan Guide (CCH) P 23994A
**(Cite as: 2005 WL 3120268 (E.D.Pa.))**

plan participant and shall be furnished in accordance with section 1024(b)."

FN23. 29 C.F.R. § 2520.102-2(a) provides that the "format of the summary plan description must not have the effect of misleading, misinforming or failing to inform participants and beneficiaries. Any description of exception, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant.... The advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations."

The first issue is whether Defendants' failure to disclose the fact that the Cash Balance Formula does not include the protected early retirement subsidy violates ERISA § 102. The SPD does not contain any reference to early retirement subsidies; however, this makes sense because the cash balance plan does not have any early retirement subsidies. Because an early retirement subsidy was not mentioned in the SPD, the average plan participant should understand that the early retirement subsidy was no longer a part of the plan. The SPD does not "fail to inform," rather it correctly describes the provisions of the new plan, as required by ERISA § 102. [FN24]

FN24. It should be noted that this is really an issue about the plan modification, an issue which is addressed by 29 U.S.C. § 1024(b), which requires that participants are given a summary description of the modification or change. Since the summary description was provided, this statute has not been violated.

The second issue is whether Defendants' failure to disclose "that plan participants' rate of future benefit accruals was being reduced as a function of getting older" violates ERISA § 102. Plaintiffs claim that since this was not disclosed, the SPD was not "written in a manner calculated to be understood by the average plan participant," nor "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." Compl. ¶ 68. The SPD

provides a comprehensive description of the cash balance plan. *See* Defs' Mot. to Dismiss at Ex. D, Summary Plan Description ¶ 6.00-6.21. While the SPD does not state that the benefit accrual is reduced as a function of getting older, it accurately outlines how the benefit accrual works. *Id.* ¶ 6.03-6.07. ERISA § 102 does not require that the SPD describe how the benefit accrual rates change as participants age.

In their response to Defendants' Motion to Dismiss, Plaintiffs imply that the SPD does not comply with 29 C.F.R. § 2520.102-2(a), (b). Pls' Opp. at 38-39. Plaintiffs focus on the language stating that any description of a reduction of plan benefits shall not be minimized. However, this language refers to a reduction in the current plan benefits, not to the reduction of future benefits resulting from a plan amendment. *See Layaou v. Xerox Corp., 238 F.3d 205, (2d Cir.2001)* (finding that company's failure to provide notice in the SPD that a participant's benefit would be offset by an appreciated amount of his prior distributions violated § 102).

Plaintiffs have failed to state a claim for relief under ERISA § 102. As a result, this count is dismissed.

E. Fiduciary Duties Under ERISA § 404

**\*10** Plaintiffs allege that Defendants breached their fiduciary duty under ERISA § 404 by making misrepresentations and by failing to disclose the significant reduction in the rate of future benefit accruals, protected benefits and benefit accruals with age. Compl. ¶ 72. Defendants allege that the statements provided in the 204(h) notice and in the SPD comprehensively describe the new plan and fully comply with the applicable statutes. Defs' Mot. to Dismiss at 38-41. Defendants also allege that no untrue statements have been made and that Plaintiffs have not properly pled all of the elements for breach of fiduciary duty. *Id.* at 42-43.

To state a claim for breach of fiduciary duty for misrepresentations, a plaintiff must establish: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                    Page 10
Slip Copy, 2005 WL 3120268 (E.D.Pa.), 36 Employee Benefits Cas. 1321, Pens. Plan Guide (CCH) P 23994A
**(Cite as: 2005 WL 3120268 (E.D.Pa.))**

(4) detrimental reliance by the plaintiff on the misrepresentation. *Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. & Research Found.,* 334 F.3d 365, 384 (3d Cir.2003) (citing *Daniels v. Thomas & Betts Corp.,* 263 F.3d 66, 73 (3d Cir.2001)). Assuming, under the deferential motion to dismiss standard, that misrepresentations, or at least omissions were made by Defendants, Plaintiffs have not pled anything that could be construed as detrimental reliance in their Complaint. Therefore, this claim is dismissed for failure to state a claim. [FN25]

> FN25. Plaintiffs' failure to allege specific misrepresentations or detrimental reliance was raised by Defendants in their first Motion to Dismiss, after which Plaintiffs filed the current (first amended) complaint. Plaintiffs had the opportunity to rectify this once and did not. The Third Circuit has allowed a plaintiff to amend his complaint where plaintiff's counsel represented that the plaintiff could (and would) plead detrimental reliance in a breach of fiduciary duty claim if allowed to amend. *Burstein,* 334 F.3d at 389. Plaintiffs claim that they "could amend the complaint if this Court deems it necessary." Pls' Opp. at 41.

IV. CONCLUSION

Accordingly, this Court grants Defendants' Motion to Dismiss. An appropriate order follows.

Slip Copy, 2005 WL 3120268 (E.D.Pa.), 36 Employee Benefits Cas. 1321, Pens. Plan Guide (CCH) P 23994A

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 2684621 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Defendants in Further Support of their Motion to Dismiss (Aug. 08, 2005)

• 2005 WL 2150519 (Trial Motion, Memorandum and Affidavit) Order (Jul. 06, 2005)

• 2:04cv06097 (Docket) (Dec. 30, 2004)

• 2004 WL 3122956 (Trial Pleading) Complaint (Jan. 01, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT D**

LEXSEE

**HERMAN SMITH, Plaintiff, -against- FIRST UNUM LIFE INSURANCE Co., Defendant.**

**98-CV-2415 (JG)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

**1999 U.S. Dist. LEXIS 8381**

**June 2, 1999, Decided**

**NOTICE:** [*1]   FOR ELECTRONIC PUBLICATION ONLY

**DISPOSITION:** Defendant's motion for summary judgment granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant insurance company filed a motion for summary judgment in plaintiff's action, governed by the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., to recover disability benefits under defendant's insurance policy with plaintiff's former employer. Defendant contended that plaintiff failed to file a timely notice of claim, and that plaintiff commenced the action beyond the contractual limitations period.

**OVERVIEW:** Plaintiff was employed by his former employer as a computer operator supervisor. Plaintiff suffered injuries as a result of an accident on the job, and the employer terminated plaintiff's employment. Plaintiff filed a claim for long term disability benefits with defendant insurance company, and defendant denied the claim. Plaintiff initially brought an action against defendant in state court, but it was successfully removed on the ground that plaintiff's claims were governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq. Defendant moved for summary judgment, which the court granted. The court found that the section of ERISA that governed plaintiff's action did not provide a statute of limitations and, therefore, the court had to apply the most analogous state statute of limitations. N.Y. C.P.L.R. 201 allowed the limitations period specified in the employee benefit plan to govern plaintiff's claim. The court thus found that plaintiff had not complied with the limitations period in defendant's

contract with plaintiff's former employer and, therefore, his action was barred as untimely filed.

**OUTCOME:** The court granted defendant insurance company's motion for summary judgment when the court found that, because plaintiff failed to adhere to the limitations period specified in the employee plan contract, plaintiff's suit to recover disability benefits under defendant's insurance policy was barred by the statute of limitations.

**CORE TERMS:** statute of limitations, limitations period, summary judgment, disability benefits, written proof, genuine issue, moving party, beneficiary, expired, late notice, notice-of-claim, repudiation, three-year, preemption, shorter, reasonably possible, insurance policy, long term, termination, terminated, expiration, eligible, Employee Retirement Income Security Act, employee benefit plan, complete defense, saving clause, benefit plan, go forward, notice-of-occurrence, unequivocal

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN1] Courts must grant summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether material facts are in dispute, courts must resolve all ambiguities and draw all inferences in favor of the non-moving party.

1999 U.S. Dist. LEXIS 8381, *

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
[HN2] The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. When the moving party has carried its burden under Fed. R. Civ. P. 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the rule, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. The non-moving party cannot survive a properly supported motion for summary judgment by resting on its pleadings without offering any significant probative evidence tending to support the complaint. Moreover, the moving party is not required to affirmatively disprove unsupported assertions made by the non-movant. Conclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption*
[HN3] 29 U.S.C.S. § 1132(a)(1)(B) confers upon employee plan beneficiaries a federal right of action to recover benefits due under their plan.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Administrative Provisions*
*Governments > Legislation > Statutes of Limitations > Statutes of Limitations Generally*
[HN4] The Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., does not provide a statute of limitations for bringing a claim under 29 U.S.C.S. § 1132(a)(1)(B). A court must apply the most analogous state statute of limitations.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Administrative Provisions*
*Governments > Legislation > Statutes of Limitations > Statutes of Limitations Generally*
[HN5] Parties to an employee benefit plan governed by the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., may contract for a shorter limitations period pursuant to N.Y. C.P.L.R. 201. That section permits a shorter period when prescribed by written agreement. Where a benefit plan specifies a limitations period shorter than six years, therefore, the contractual period governs.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Administrative Provisions*
*Governments > Legislation > Statutes of Limitations > Statutes of Limitations Generally*
[HN6] A claim under 29 U.S.C.S. § 1132 begins to accrue when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries. The repudiation or denial of benefits must be clear, unequivocal, and continuing for the claim to accrue. This accrual standard applies even where the policy at issue has prescribed a different accrual date, such as when the proof of loss was required to be furnished.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption*
[HN7] See 29 U.S.C.S. § 1144(a).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption*
[HN8] See 29 U.S.C.S. § 1142(b)(2)(A).

*Insurance Law > General Liability Insurance > Notice Obligations*
[HN9] An insured has an obligation to comply with the notice-of-claim and notice-of-occurrence clauses of an insurance policy. The insured's failure to provide notice of a claim within a reasonable time without a valid excuse for delay constitutes a complete defense for the insurance company whether or not it was prejudiced by the delay.

**COUNSEL:** HERMAN SMITH, Plaintiff, pro se, Jamaica, N.Y.

EVAN GORDON, Esq., New York, N.Y., for Defendant.

**JUDGES:** JOHN GLEESON, United States District Judge.

**OPINIONBY:** JOHN GLEESON

**OPINION:**

    MEMORANDUM AND ORDER

JOHN GLEESON, United States District Judge:

    Herman Smith, plaintiff pro se, initiated this action against First UNUM Life Insurance Company ("First UNUM") to recover disability benefits under First UNUM's insurance policy with plaintiff's former employer. Defendant now moves for summary judgment, claiming that plaintiff failed to file a timely notice of

1999 U.S. Dist. LEXIS 8381, *

claim and that plaintiff commenced this action beyond the period allowed by the contractual statute of limitations.

FACTS

On December 13, 1977, First UNUM, an insurance company incorporated in New York, entered into a contract with Erisco, Inc., whereby First UNUM would provide long term disability insurance to Erisco employees. The contract states the following:

> NOTICE OF CLAIM: Written notice of claim must be given to the Company within 20 days after the occurrence or commencement of any loss covered by the Policy, or as soon [*2] thereafter as is reasonably possible.
>
> * * * *
>
> PROOFS OF LOSS: Written proof covering the occurrence, the character, and the extent of loss must be furnished to the Company within 90 days after the termination of the period for which the Company is liable. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible. No action at law or in equity shall be brought to recover on this Policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirement of this Policy. No such action shall be brought after the expiration of 3 years after the time written proof of loss is required to be furnished.

Defendant's Ex. A, GP 60-4C.

Erisco employed plaintiff as a computer operator supervisor. Plaintiff held this position on January 5, 1991, when he suffered injuries as the result of an accident on the job. Sixty-two days after this accident, on March 27, 1991, Erisco terminated plaintiff's employment. According to plaintiff, in May 1991 he called Lee Butta, the head [*3] of Erisco's insurance department, to inquire about filing a claim for long term disability benefits. Butta told plaintiff to call First UNUM's New Jersey office to request an application. Plaintiff called the number Butta provided him and spoke to a woman in First UNUM's application department. She asked plaintiff if he was currently employed by Erisco, and he told her that Erisco had terminated him. She then informed plaintiff that he was not eligible for benefits because he was not an active employee. Plaintiff subsequently filed a claim of discrimination against Erisco.

Sometime thereafter, the New York State Workers' Compensation Board determined that Erisco had violated the Workers' Compensation Law by firing plaintiff, and it ordered Erisco to reinstate him. On September 20, 1994, the Workers' Compensation Board held a hearing regarding plaintiff's damages. In its ensuing memorandum of decision, it directed plaintiff to apply to Erisco's insurance carrier for long term disability benefits, allowing plaintiff to request a further hearing on damages in the event the insurance carrier denied him benefits to which he would have been entitled but for his termination.

On September [*4] 12, 1994, plaintiff filed a claim for long term disability benefits with First UNUM. First UNUM denied plaintiff's claim in a letter dated October 3, 1994, on the ground that he had not submitted his application within the time frame specified in First UNUM's contract with Erisco. On November 3, 1994, plaintiff requested a review of First UNUM's decision to deny benefits, stating that one week before he qualified for benefits, a dispute arose between him and Erisco that prevented him from being eligible to apply for benefits within the time limit. By letter dated January 24, 1995, defendant upheld its denial of benefits.

In the meantime, Erisco appealed the decision of the Workers' Compensation Board. On November 6, 1997, the Board issued a notice of decision indicating that Erisco and plaintiff had settled their dispute for $ 75,000, thereby closing the case.

Plaintiff thereafter commenced this action against First UNUM in New York State Supreme Court, Queens County, on March 24, 1998. Defendant removed the case to this Court on March 30, 1998, pursuant to 28 U.S.C. § 1441 and 1446, on the ground that plaintiff's claims are governed by the Employee Retirement Income Security Act of 1974 [*5] ("ERISA"), 29 U.S.C. § 1001 et seq. Defendant now moves for summary judgment. Oral argument occurred on May 28, 1999.

DISCUSSION

A. The Standard for Summary Judgment

[HN1] Courts must grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deter-

1999 U.S. Dist. LEXIS 8381, *

mining whether material facts are in dispute, courts must resolve all ambiguities and draw all inferences in favor of the non-moving party. See Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).

[HN2] The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. See Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223 (2d Cir. 1994). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that [*6] there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party cannot survive a properly supported motion for summary judgment by resting on its pleadings "without offering 'any significant probative evidence tending to support the complaint.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290, 20 L. Ed. 2d 569, 88 S. Ct. 1575 (1968)). Moreover, the moving party is not required to affirmatively disprove unsupported assertions made by the non-movant. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Conclusory allegations, conjecture, and speculation are "insufficient to create a genuine issue of fact." Kerzer, 156 F.3d at 400 (citing D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.), cert. denied, 524 U.S. 911, 141 L. Ed. 2d 151, 118 S. Ct. 2075 (1998)). n1

n1 In his submissions in response in response to defendant's motion for summary judgment and during oral argument on that motion, plaintiff has demonstrated that he understands the nature and consequences of this motion, as the Second Circuit requires for pro se litigants. See Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620-21 (2d Cir. 1999). I am satisfied that plaintiff realizes that he must respond to defendant's motion by setting forth specific facts showing there exists a genuine issue of fact for trial, and that if he does not, his case may be dismissed and no trial will occur.

[*7]

B. The Employee Retirement Income Security Act

Plaintiff's claim arises under ERISA § 502(a)(1)(B), [HN3] 29 U.S.C. § 1132(a)(1)(B), which confers upon employee plan beneficiaries a federal right of action to recover benefits due under their plan. The policy under which plaintiff seeks to recover disability benefits fits within ERISA's definition of plans covered by the statute. See 29 U.S.C. § 1002(1)(A) (defining employee welfare benefit plan as any plan "established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of . . . disability"). Defendant contends, however, that plaintiff's action cannot go forward because (1) plaintiff filed a late notice of claim, which bars him from recovering benefits under the plan, and (2) plaintiff filed this suit after the statute of limitations had expired.

1. The Statute of Limitations

Defendant asserts that plaintiff filed this action three months after the statute of limitations in its contract with plaintiff's employer had expired. The contract states that "no action at law or in equity shall [*8] be brought to recover on this Policy . . . after the expiration of 3 years after the time written proof of loss is required to be furnished." Defendant's Ex. A, GP 60-4C. Under the contract, the claimant must provide the insurance company written proof of loss "within 90 days after the termination of the period for which the Company is liable." Id.

[HN4] ERISA does not provide a statute of limitations for bringing a claim under 29 U.S.C. § 1132(a)(1)(B), the section of ERISA that applies to plaintiff's action. Consequently, courts must apply the most analogous state statute of limitations. See Medoy v. Warnaco Employees' Long Term Disability Ins. Plan, 43 F. Supp. 2d 303, 1999 WL 199009, at *2 (E.D.N.Y. 1999); see also Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge, 827 F.2d 1324, 1328 (9th Cir. 1987). In Miles v. New York State Teamsters Conference Pension & Retirement Fund, 698 F.2d 593 (2d Cir.), cert. denied, 464 U.S. 829, 78 L. Ed. 2d 108, 104 S. Ct. 105 (1983), the Second Circuit held that New York's six-year statute of limitations for contract actions set forth in N.Y. C.P.L.R. § 213 is "the most nearly analogous state [*9] limitation statute" for ERISA actions and thus "controls" when an ERISA claim can be brought. Id. at 598; see also Tarallo-Brennan v. Smith Barney, Harris Upham & Co., Inc., 1999 U.S. Dist. LEXIS 6787, No. 97 Civ. 7527, 1999 WL 294873, at *2 (S.D.N.Y. May 10, 1999).

It is well-settled in this circuit, however, that [HN5] parties to an employee benefit plan governed by ERISA may contract for a shorter limitations period pursuant to N.Y. C.P.L.R. § 201. See Tarallo-Brennan, 1999 WL 294873, at *1; Lugo v. AIG Life Ins. Co., 852 F. Supp. 187, 195 (S.D.N.Y. 1994). That section permits a shorter period when "prescribed by written agreement." N.Y.C.P.L.R. § 201 (Consol. 1998). Where a benefit

1999 U.S. Dist. LEXIS 8381, *

plan specifies a limitations period shorter than six years, therefore, the contractual period governs. See Tarallo-Brennan, 1999 WL 294873, at *1; Manginaro v. The Welfare Fund of Local 771, 21 F. Supp. 2d 284, 293 (S.D.N.Y. 1998).

In this case, the benefit plan provides for a three-year limitations period, which the contract measures from the date written proof of loss is required to be furnished. Defendant concedes, however, that the limitations period begins to run when the insurance company unambiguously [*10] communicates to the beneficiary that it is denying him benefits. In Miles, the Second Circuit established the rule that [HN6] a § 1132 claim begins to accrue "when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries." Miles, 698 F.2d at 598; see also Larsen v. NMU Pension Trust of NMU Pension & Welfare Plan, 902 F.2d 1069, 1073-74 (2d Cir. 1990) (holding that correspondence which did not clearly repudiate claimant's rights as survivor of plan participant was not sufficient to trigger statute of limitations). The repudiation or denial of benefits must be "clear," "unequivocal," and "continuing" for the claim to accrue. Mitchell v. Shearson Lehman Bros., Inc., 1997 U.S. Dist. LEXIS 7323, No. 97 Civ. 0526, 1997 WL 277381, at *2 (S.D.N.Y. May 27, 1997) (quoting Daill v. Sheet Metal Workers' Local 73 Pension Fund, 100 F.3d 62, 66 (7th Cir. 1996)). This accrual standard applies even where, as here, the policy at issue has prescribed a different accrual date, such as when "the proof of loss was required to be furnished." Id. (quoting Price v. Provident Life and Accident Ins. Co., 2 F.3d 986, 988 (9th Cir. 1993)); see also Patterson-Priori v. UNUM [*11] Life Ins. Co. of Am., 846 F. Supp. 1102, 1106 (E.D.N.Y. 1994).

Plaintiff initially filed his claim with First UNUM on September 12, 1994. By letter dated October 3, 1994, First UNUM denied plaintiff's claim because he did not submit it in a timely manner. On November 3, 1994, plaintiff requested a review of First UNUM's decision refusing him benefits, stating that one week before he qualified for benefits, a dispute arose between him and Erisco that prevented him from being eligible to apply within the time limit. First UNUM's January 24, 1995 letter upholding its initial denial of benefits, which plaintiff admits he received, constituted a "clear," "unequivocal," and "continuing" repudiation of plaintiff's application for benefits. Plaintiff's claim thus began accruing on that date.

Since the contract between Erisco and First UNUM establishes a three-year limitations period, the time in which plaintiff could initiate an action against First UNUM expired on January 24, 1998. Plaintiff did not commence this action, however, until March 24, 1998, three months after the limitations period had ended. His

only justification for failing to file this case within the three-year period [*12] lies in Erisco's appeal of the Workers' Compensation Board's decision ordering Erisco to reinstate him. That appeal, plaintiff contends, prevented him from initiating an action against First UNUM because it left unresolved whether Erisco had terminated him properly. I disagree. Moreover, on November 6, 1997, Erisco settled its dispute with plaintiff for $ 75,000, thereby closing the case before the Workers' Compensation Board. Plaintiff thus had approximately two and one-half months from the time he resolved his dispute with Erisco in which to file an action against First UNUM before the limitations period expired, yet waited four and one-half months to do so.

Plaintiff has offered no other reason to excuse his failure to adhere to the limitations period specified in the employee plan contract. This suit, therefore, is barred by the statute of limitations.

2. The Late Notice of Claim

Congress enacted ERISA in order to make employee benefit plans an exclusively federal concern. See Lugo v. AIG Life Ins. Co., 852 F. Supp. 187, 190 (S.D.N.Y. 1994) (citing Aetna Life Ins. Co. v. Borges, 869 F.2d 142, 147 (2d Cir.) (stating that ERISA's goal is "to provide uniform, national [*13] regulation of benefit plans"), cert. denied, 493 U.S. 811, 107 L. Ed. 2d 25, 110 S. Ct. 57 (1989)). Accordingly, ERISA contains a broad preemption provision, providing that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any [covered] employee benefit plan." [HN7] 29 U.S.C. § 1144(a). ERISA's "saving clause," however, expressly exempts from preemption any state law "which regulates insurance." [HN8] 29 U.S.C. § 1142(b)(2)(A).

Defendant contends that plaintiff's filing a late notice of claim justifies its refusal to award him benefits and provides it a complete defense under New York law. According to New York law, [HN9] an insured has an obligation to comply with the notice-of-claim and notice-of-occurrence clauses of an insurance policy. See State of N.Y. v. Blank, 27 F.3d 783, 793 (2d Cir. 1994); Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc., 822 F.2d 267, 271 (2d Cir. 1987) ("Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy."). The insured's failure to provide notice of a claim within a reasonable [*14] time without a valid excuse for delay constitutes a complete defense for the insurance company whether or not it was prejudiced by the delay. See Olin Corp. v. Insurance Co. of North America, 743 F. Supp. 1044, 1053 (S.D.N.Y. 1990) (citing Utica Mut. Ins. v. Fireman's Fund Ins. Cos., 748 F.2d 118, 121 (2d

1999 U.S. Dist. LEXIS 8381, *

Cir. 1984)), aff'd, 929 F.2d 62 (2d Cir. 1991); Security Mut. Ins. Co. of N.Y. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 340 N.Y.S.2d 902, 905, 293 N.E.2d 76 (1972). Defendant argues that New York's "no-prejudice" rule with respect to notice-of-claim provisions regulates insurance within the meaning of ERISA's saving clause and thus escapes ERISA preemption. Consequently, defendant maintains, New York's law governs the notice-of-claim issue in this case.

I need not address whether New York's "no preju-dice" rule escapes preemption under ERISA or whether plaintiff actually filed a late notice of claim because, in any event, plaintiff's action against First UNUM cannot go forward since it is barred by the statute of limitations.

CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted.

So Ordered.

JOHN GLEESON, U.S.D.J.

Dated:  [*15] June 2, 1999

Brooklyn, New York