## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Paula Kritzman, Individually and on behalf of all others similarly situated, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 06-CV-0233 |
| | : |
| AMERICAN EXPRESS RETIREMENT | : **CLASS ACTION** |
| PLAN, AMERICAN EXPRESS COMPANY, | : |
| AMERICAN EXPRESS COMPANY EMPLOYEE | : JURY TRIAL REQUESTED |
| BENEFITS ADMINISTRATION COMMITTEE, | : |
| JOHN DOES 1-100, | : ***ELECTRONICALLY FILED*** |
| | : |
| Defendants. | : |
| | : |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

**LAW OFFICES OF CURTIS V. TRINKO, LLP**
16 West 46th Street
Seventh Floor
New York, NY 10036
(212) 490-9550

**SCHIFFRIN & BARROWAY, LLP**
Joseph H. Meltzer, Esq.
Edward W. Ciolko, Esq.
Mark K. Gyandoh, Esq.
Joseph A. Weeden, Esq
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

## TABLE OF CONTENTS

I.  Introduction ........................................................................................................1

II. Factual Background.............................................................................................4

   A.  Defined Benefit Plans v. Defined Contribution Plans ..............................................4

   B. The Plan.......................................................................................................6

II. Legal Argument..................................................................................................8

   A. The Complaint States a Claim that the Plan Violates the Age-Based
       Accrual Rules of ERISA §204(b)(1)(H)(i) ........................................................8

   B. The Complaint States a Claim that the Opening Account Balances
       Were Age Discriminatory and Resulted in Impermissible Forfeitures..............17

   C. The Complaint States a Claim that the Opening Account Balances
       Violated ERISA's Backloading and Vesting Rules..........................................19

   D.  The Complaint States a Claim Because the Summary of
       Material Modification Provided to Participants was Insufficient...................20

   E.  The Complaint States a Claim Because Defendants Failed to
       Give the Requisite Notice and the Claim is not Time-Barred ......................22

   F.  Both Counts VIII and IX State Claims Separate and Apart From
       Other Claims of the Complaint ...................................................................23

   G. Plaintiff Withdraws Counts II and V of Her Complaint ................................23

III. Conclusion .....................................................................................................23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Burke v. Kodak Ret. Plan*, 336 F.3d 103.............................................................................21

*Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032 ........................21, 23

*Cooper et al. v. The IBM Personal Pension Plan*,

274 F. Supp. 2d 1010, 1017 (SD. Ill. 2003) …………………………………………...…15

*Eaton et al. v. Onan Corp.* et al., 117 F.Supp.2d 812 .....................................................4, 5

*Esden v. Bank of Boston*, 229 F.3d 154 ...........................................................5, 12, 18, 19

*Heidgerd v. Olin Corp.*, 906 F.2d 903 ........................................................................21, 22

*Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 .................................................................4

*Lyons v. Georgia Pacific Corp.*, 221 F.3d 1235 ...............................................................18

*Nachman Corp. v. PBGC*, 446 U.S. 359............................................................................4

*Register v. PNC Finance Services Group*, No. 04-6097
2005 WL 3120268 (E.D. Pa. 2005) ....................................................................................20

*Richards v. Fleetboston Financial Corp. et al.*, Civil Action No. 04-1638(JHC),
2006 U.S. Dist. LEXIS 15601 (D. Conn. Mar. 31, 2006)................................12, 16, 23

## FEDERAL STATUTES

ERISA § 3(2)(A), 29 U.S.C. § 1002 .....................................................................................6

ERISA § 3(23)(A), 29 U.S.C. § 1002 .................................................................................13

ERISA § 3(35), 29 U.S.C. § 1002........................................................................................7

ERISA § 102, 29 U.S.C. § 1022 ........................................................................................22

ERISA § 203(a), 29 U.S.C. § 1053.....................................................................................21

ERISA § 204(b)(H)(i) ...........................................................................................................9

I.R.C. § 411(a) ....................................................................................................................21

U.S.C. § 1054(b)(1) .................................................................................................19, 9

**FEDERAL RULES**

26 C.F.R. 1.411(a)-4 ....................................................................................................18

29 C.F.R. § 2520.102-2 ...............................................................................................22

**MISCELLANEOUS**

Edward A. Zelinsky, "The Cash Balance Controversy," 19 Va.Tax.Rev. 683, 692............5

Plaintiff Paula Kritzman ("Plaintiff" or "Kritzman"), by her undersigned counsel, respectfully submits this memorandum of law in opposition to Defendants' Motion to Dismiss[1] Plaintiff's Class Action Complaint for Violations of the Employee Retirement Income Security Act of 1974 ("ERISA") (the "Complaint").

## I.    Introduction

At issue in this case is the fundamentally discriminatory and *illegal* pension plan adopted by American Express Company ("Amex" or the "Company"). As alleged in the Complaint, and described herein, Defendants[2] in contravention of the clear mandates of ERISA, have created a system whereby employees accrue benefits at different rates based strictly on their age. Defendants cannot do this, plain and simple; and their attempts at justification ring hollow.

Plaintiff worked for Amex from approximately October 1975 to September 30, 2005, during which time she was a participant in the American Express Retirement Plan (the "Plan").[3] Prior to July 1, 1995 (the "Conversion Date"), the Plan provided retirement benefits based upon a traditional final average pay formula (the "Prior Formula"). Under the Prior Formula, a participant's normal pension benefit was an annuity calculated based on final average compensation and years of service. In such plans, an employee typically earns only modest benefits when they are young, with benefits growing at a geometric rate in present value terms as an employee ages.

---

[1] Defendants' memorandum of law in support of their motion to dismiss will be cited to as "Def. Mem. at _____ ."

[2] The capitalized term "Defendants" refers to the American Express Retirement Plan, the American Express Company, and the American Express Company Employee Benefits Administrative Committee and its members.

[3] Governed by ERISA, the Plan was established on May 31, 1985 to replace the terminated American Express Funded Pension Plan. 2002 Form 5500.

In 1994, the Company's Board of Directors voted to amend the Plan, effective as of the Conversion Date, to convert the Prior Formula to a cash balance formula (the "Cash Balance Formula"), finding that such conversion would "significantly decrease the Plan's projected benefit obligation and annual pension cost." *See* American Express Company Form 10-K, Note 9, filed March 31, 1995 with the Securities and Exchange Commission ("SEC"). The conversion increased the value of benefits for virtually all younger employees, but substantially reduced the future benefit accruals of older employees, such as Plaintiff. The harm suffered by Plaintiff and the Class can by measured by tens of millions of dollars in lost benefits.

The new Plan formula violates two ERISA requirements regulating the type of benefit formula in a defined benefit plan. First, it violates ERISA Section 204(b)(1)(H), which provides that a plan cannot reduce the rate of an employee's benefit accrual because of the attainment of any age. Thus, for example, a defined benefit plan would violate this section if under the plan benefit formula an employee accrues an annuity benefit of $100 per year (commencing at "normal retirement age" under the plan) in one year and an annuity benefit of $90 in a later year. In fact, this is exactly what Amex's cash balance plan provides: an employee accrues each year a smaller benefit under the plan than the employee accrued in the prior year. Defendants essentially ask the Court to read the statute wrongly and apply these age-related accrual rules not to the plan's accrued defined benefit—which under ERISA is the annuity benefit commencing at normal retirement age—but to the cash balance account itself, which merely represents the current present value of the accrued benefit.[4]

---

[4] Defendants assert that the Plan was not age-discriminatory because many older participants had larger year-to-year increases in their hypothetical account balances than their younger counterparts. However, this contention fails as a matter of law. Defendants ignore the reality that the Plan is a defined benefit plan and analyze the Plan as if it were a defined contribution plan (the differences between the two are explained in more detail below), to which

Second, the plan violates ERISA's requirements because some participants experienced a period of time in which they accrued no additional benefits at all following the amendment that converted the plan benefit formula into a cash balance formula. This resulted from a design feature in the plan that is often referred to as "wear-away" (the period in which no new benefits are earned is referred to as the "wear-away" period). By definition, wear-away periods violate either ERISA Section 204(b)(1)(A)-(C), which limit the backloading of benefits, or ERISA section 203(a), which provides that a plan cannot provide for forfeitures of already-accrued benefits. [5]

In addition, even if the plan formula had complied with all of ERISA's procedural requirements, the amendment process itself was plagued with statutory defects, most prominently the failure to provide adequate and timely notice to employees whose future benefit accruals were reduced by the cash-balance amendment. *See* ERISA Section 204(h). As a result of these failures, the Plan amendments were not lawfully adopted; therefore the benefits of Plaintiff and the Class must be calculated under the original plan formula to the extent that such calculation yields a higher benefit.

---

Congress applied different age-based rules (which do in fact measure the market value of employer contributions to an actual plan account). Despite the appearance and structure of the Plan, it is not a defined contribution plan; rather, it is a defined benefit plan. As such, as controlling law in this jurisdiction clearly indicates, the Plan must be administered by principles of law (and applicable statutes) that govern traditional defined benefits plans. Among those rules is the mandate that a participant's accrued benefit is measured not by his/her hypothetical account balance, but, rather as an annual benefit commencing at normal retirement age. Further, among those rules is the prohibition against reducing a participant's *rate of benefit accrual* with increasing age. Accordingly, a defined benefit plan may not reduce the rate of a participant's benefit accrual, measured in terms of an annuity commencing at normal retirement age, on account of age.

[5] The "backloading" rules ensure compliance with ERISA's early vesting requirements by providing that a participant's benefits must accrue ratably over the course of his or her career.

Despite the seeming complexity of this litigation, this matter is rather simple.  Simply put, the Plan always has been and remains a defined benefit plan and must, therefore, comply with *all* of the rules pertaining to defined benefit plans.  Rather than acknowledge their failure to treat all employees equal, regardless of age, Defendants seek dismissal of Plaintiffs well-plead Complaint.  Defendants' misconstruction of and attempts to evade applicable law pertaining to their defined benefit plan at issue underscores the lack of validity to all of their arguments.

## II.    Factual Background

### A.    Defined Benefit Plans v. Defined Contribution Plans

Because Defendants base much of their argument on the (incorrect) supposition that the Plan is a defined contribution plan and not a defined benefit plan, an overview of the differences between the two plans is warranted.  ERISA, the comprehensive Federal law governing employee benefit plans, recognizes only two categories of retirement plan: the defined benefit plan and the defined contribution plan.  *See Nachman Corp. v. PBGC,* 446 U.S. 359 (1980); *Eaton et al. v. Onan Corp. et al.*, 117 F. Supp. 2d 812, 816 (S.D. Ind. 2000).  "[A] defined benefit pension . . . grants the employee an output specified in terms of retirement income while a defined contribution [plan] . . . grants the employee an input specified in terms of employer contributions."  Edward A. Zelinsky, "The Cash Balance Controversy," 19 Va. Tax Rev. 683, 692  (2000).  In other words, a defined benefit plan entitles a plan participant to a fixed periodic benefit payment upon retirement, determined pursuant to a plan-specified formula.  *See Eaton*, 117 F. Supp. at 812; *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999).  Employers typically fund defined benefit plans on an actuarial basis, guaranteeing that the plan is adequately funded to pay all benefits due a plan participant at retirement.  *See Eaton*, 117 F. Supp. at 816.  In a defined benefit plan, the plan "consists of a general pool of assets rather than

individual dedicated accounts." *Hughes Aircraft*, 525 U.S. at 439. Upon termination of a defined benefit plan, the employer is entitled to any plan assets in excess of the assets needed to purchase insurance contracts to pay the promised benefits.

In contrast, a defined contribution plan establishes an actual individual account for each participant, where periodic contributions to the account are often supplemented voluntarily by contributions from the plan participant. *See Eaton*, 117 F. Supp. at 817. "The participant's retirement benefit is determined by the balance in the individual account, which will depend on the contributions [by the participant and employer] plus net investment earnings on the contributions." *Id.* There can be no asset reversion to the employer when a defined contribution plan terminates, since all assets are held in actual accounts that belong to the plan's participants.

A cash balance plan is a defined benefit pension plan that has the "look and feel" of a defined contribution plan. More particularly, in a cash balance plan, a *hypothetical* account is established in each participant's name. *See Esden v. Bank of Boston*, 229 F.3d 154, 158 (2d Cir. 2000). Amounts are credited to that "account" over time, driven by two variables: (1) the employer's hypothetical "contributions," and (2) hypothetical earnings expressed as interest credits" on those earnings. *Id.* The "contributions" to the hypothetical account are made by the employer and "are usually expressed as a percentage of salary, the rate of which may vary with employee tenure." *Id.* The interest credits, although sometimes at a fixed interest rate, are usually determined by tying them to an extrinsic index such as U.S. Government securities of a specified maturity. *Id.*

"[F]rom a legal standpoint [cash balance plans] are governed by the same rules that govern traditional defined benefit plans under ERISA." Kenneth R. Elliot, *Cash Balance*

5

*Pension Plans: The New Wave*, Compensation and Working Conditions, Summer 2000, at 7. Thus, the form of benefit paid under a cash balance plan must be "expressed in the form of an annual benefit commencing at normal retirement age."  ERISA Section 3(23)(A).  Cash balance plans meet this requirement by providing a formula that converts the "hypothetical" account balance into "an annual benefit commencing at normal retirement age."  In order to receive a lump sum benefit—which is not equal to the account balance, but rather is the actuarial equivalent of the annual benefit—the participant must affirmatively elect to be paid a lump sum in lieu of the annual benefit.

B.    **The Plan**

Plaintiff and all other Class Members are participants in the Plan, which is an employee pension benefit plan pursuant to ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).  Compl. ¶ 7. Specifically, the Plan is a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).  *Id.*  The Plan is noncontributory and generally covers domestic and U.S. citizen career expatriate employees of the Company and its participating subsidiaries.  Compl. ¶ 8.  Generally, eligible employees include full and part-time employees who have completed one year of service.  *Id.*

As stated above, effective July 1, 1995, the Plan converted to a cash balance formula. Generally, under the cash balance formula, each participant has a hypothetical individual account, which is periodically credited with a "pay credit" each pay period based upon a percentage ("Applicable Percentage") of the participant's compensation.  Compl. ¶ 23.  Each participant's Applicable Percentage is based upon the sum of his/her age and years of service. *Id.*  Employees who were participants in the Plan before and after the Conversion Date received opening account balances based (which Defendants contend equaled the present value of their

6

accrued benefits under the prior traditional plan formula, with certain participants receiving increased transitional benefits).[6]  Compl. ¶ 24.  Participants who joined the Plan on or after the Conversion Date did not receive an opening account balance.  *Id.*

Additionally, accounts earn interest credits ("Interest Credits") annually, based on the average of the daily five-year U.S. Treasury note yields for the previous plan year, with a minimum rate of 5% and a maximum rate equal to "the lesser of 10% or the annual maximum interest rate set by the U.S. government for determining lump sum values."  *See* 2002 Form 5500.

Generally, participants become vested in their account balances after five years of service.  Compl. ¶ 26.  Under the Plan, a participant's normal pension benefit is an annuity equal to the participant's opening account balance, pay credits, and interest credited through normal retirement age (even if the participant separates from employment prior to normal retirement age).  Optional forms of payment include various annuity options, as well as a lump sum distribution equal to the participant's cash balance account.  Compl. ¶ 28.

Employees who were plan participants prior to the Conversion Date are guaranteed a minimum benefit equal to their accrued benefit under their prior formula, *frozen as of the Conversion Date*.  Compl. ¶ 29.  This means that they receive the greater of: (a) their benefits as calculated under the Cash Balance Formula; or (b) their benefits as determined under their prior traditional formula, calculated as if they terminated employment on June 30, 1995 (the "Frozen

---

[6] For participants who were age 46 or older on June 30, 1995, the present value of the accrued benefit under the Prior Formula was increased by a percentage of the value of the early retirement benefit payable under the prior plan at the participant's earliest retirement date (age 55 with ten years of service, or age 55 for prior participants of IDS, a subsidiary of the Company). The percentage for participants eligible for early retirement on June 30, 1995 was 100%.  The percentage for participants not yet eligible for early retirement on June 30, 1995 was 100% minus 10% for each year from June 30, 1995 to the participant's earliest retirement date (but not less than 0%).  *See* 2002 Form 5500.

7

Benefit"). *Id.* Accordingly, they accrued no new benefits unless and until their cash balance accounts catch up to and exceed their Frozen Benefits. *Id.*

Normal retirement age under the Plan is 65. Compl. ¶ 30. Upon termination of employment with vested benefits, a participant may elect to receive distribution or defer payment up to age 65. Compl. ¶ 31. Pursuant to ERISA, if a participant elects to receive immediate distribution, the distribution is equal to the hypothetical account balance at normal retirement age (age 65), including the crediting of interest through normal retirement age, but then reduced in accordance with a statutory interest rate under ERISA § 205(G)(3). Because the plan guarantees interest credits of at least 5%, the lump sum distribution will be larger than the account balance if the statutory interest rate is less than 5% at the time of distribution.

## III.    Legal Argument

### A.    The Complaint States a Claim that the Plan Violates the Age-Based Accrual Rules of ERISA § 204(b)(1)(H)(i).

Count I of Plaintiff's Complaint alleges that the Plan reduces the rate of benefit accrual as a participant ages, in violation of ERISA § 204(b)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i). This provision of ERISA plainly states that a defined benefit plan cannot reduce "the rate of an employee's benefit accrual . . . because of the attainment of any age." *Id.* ERISA requires that the accrued benefit in a defined benefit plan must be "expressed in the form of an annual benefit commencing at normal retirement age." ERISA § 3(23(A). There is *no exception* for defined benefit plans that use a cash-balance formula. Defendants proffer several flawed reasons as to why Count I of Plaintiff's Complaint should be dismissed.

Defendants present tables that purport to show that the annual benefit accrual—or portion of a participant's benefit earned in a particular year—does not decline as the participant ages. Def. Mem. at 6 and 8. The chart purports to compare the benefit accruals for an eight-year

period for two employees: one 35 years old in 2006 and one 50 years old in 2006.  The charts assume a 6% return and a 6% annual salary increase for employees, which Plaintiff will accept for illustrative purposes.[7]

Defendants' second chart (Def. Mem. at 8) purports to show that an employee's accrued benefit in fact increases rather than decreases with age.  However, Defendants' chart does not indicate the rate of growth in the accrued benefit because it illustrates only the "addition" to the employee's hypothetical "account" each year.  As Defendants' own brief concedes, an employee is not entitled to receive the account balance, but rather the lump sum equivalent of the accrued benefit, which is an annual benefit commencing at normal retirement age (which for both employees is age 65).

The following chart illustrates the statutory accrued benefit that the two hypothetical employees earn each year.[8]

### Plaintiff's Table 1

| | Employee A | | | Employee B | |
|---|---|---|---|---|---|
| Age | Benefit Accrual | Accrual Rate[9] | Age | Benefit Accrual | Accrual Rate |
| 35 | $1,911 | 1.91% | 50 | $1,043 | 1.04% |

---

[7]  The second chart also assumes an opening account balance of $75,000, which is irrelevant to the analysis of whether the cash-balance plan's benefit structure involves declining rates of accrual as a participant ages, since not all participants received opening account balances.  Moreover, under the facts, it is improbable that employees with identical salary histories would have identical opening account balances in 2006.

[8]  Per IRS Notice 98-6, the accrued benefit is the pay credit, plus interest credits through normal retirement age, converted into an annuity under the plan's formula.  The annuity conversion rate under ERISA §205(g), using a 6% interest rate, is .108657.   We have also assumed that pay and interest credits are made once a year, which simplifies the calculation but does not substantively change the results illustrated on the chart.

[9]  The accrual rate is the accrued benefit earned each year expressed as a percentage of compensation for the year.

| 36 | $2,500 | 2.36%[10] | 51 | $1,411 | 1.33%[11] |
|----|--------|-----------|----|--------|-----------|
| 37 | $2,500 | 2.23% | 52 | $1,411 | 1.26% |
| 38 | $2,500 | 2.10% | 53 | $1,411 | 1.19% |
| 39 | $2,500 | 1.98% | 54 | $1,411 | 1.12% |
| 40 | $2,500 | 1.87% | 55 | $1,411 | 1.06% |
| 41 | $2,500 | 1.76% | 56 | $1,411 | 1.0% |
| 42 | $2,500 | 1.66% | 57 | $1,411 | 0.99% |
| 43 | $2,500 | 1.60% | 58 | $1,411 | 0.89% |

It is worth observing that the dollar amount of the benefit accrual is virtually identical for the final seven years. This is because Defendants' assumptions set the annual increases in compensation at the same rate (6%) as the interest rate. *See* Def. Mem. at 6. If compensation were unchanged, the dollar value of the benefit accrued each year (as well as the percentage rate) would decline in each of those years. In any event, the chart clearly illustrates that in each year, the benefit accruals of the older employee, in both dollar and percentage terms, are significantly lower than for the younger employee.

The following chart illustrates the results if compensation is assumed to be $100,000 in each year of the example.

**Plaintiff's Table 2**

---

[10]   The reason this accrual is higher than the accrual for the participant in the previous year is that the pay credit percentage increased in this year, because the participant's age and service now exceed 44. *See* Def. Mem. at 5. The accrual rate will again decline for the following years in the example. Moreover, the accrual rate for the older employee is significantly lower this year than for the younger employee.

[11]   Similar to the explanation in note 9, the reason this accrual is higher than the accrual for the participant in the prior year is that the pay credit increased because the participant's age and service now exceeds 60.

| | Employee A | | | Employee B | |
|---|---|---|---|---|---|
| Age | Benefit Accrual | Accrual Rate | Age | Benefit Accrual | Accrual Rate |
| 35 | $1,912 | 1.91% | 50 | $1,043 | 1.04% |
| 36 | $2,359 | 2.36%[12] | 51 | $1,332 | 1.33%[13] |
| 37 | $2,225 | 2.23% | 52 | $1,256 | 1.26% |
| 38 | $2,099 | 2.10% | 53 | $1,185 | 1.19% |
| 39 | $1980 | 1.98% | 54 | $1,118 | 1.12% |
| 40 | $1,868 | 1.87% | 55 | $1,055 | 1.06% |
| 41 | $1,764 | 1.76% | 56 | $  995 | 1.00% |
| 42 | $1,662 | 1.66% | 57 | $  938 | 0.94% |
| 43 | $1,568 | 1.57% | 58 | $  885 | 0.86% |

Again, the chart clearly illustrates that the rate of benefit accrual declines because of age.

The legal dispute among the parties, then, is whether the "accrued benefit" in a cash balance plan is the annual benefit commencing at normal retirement age, as plainly defined by ERISA § 3(23), or whether it is the annual increase in a hypothetical account balance.

Thus, Defendant's argument is, in essence, that as a matter of statutory interpretation, a participant's accrued benefit is measured in terms of his or her hypothetical account balance, rather than as an annual benefit commencing at normal retirement age.  Such flawed arguments

---

[12]   The reason this accrual is higher than the accrual for the participant in the previous year is that the pay credit percentage increased in this year, because the participant's age and service now exceed 44.  The accrual rate will again decline for the following years in the example.  Moreover, the accrual rate for the older employee is significantly lower this year than for the younger employee.

[13]   Similar to the explanation in note 11, the reason this accrual is higher than the accrual for the participant in the prior year is that the pay credit increased because the participant's age and service now exceeds 60.

have been rejected in this Circuit and should be roundly rejected again. In *Esden v. Bank of Boston*, 229 F.3d 154 (2nd Cir. 2000), the Court determined that "notwithstanding that cash balance plans are designed to imitate some features of defined contribution plans, they are nonetheless defined benefit plans under ERISA." *Id.* at 158. Thus, regardless of how "hybrid in design a cash balance plan may be, it remains subject to a regulatory framework" that governs defined benefit plans. *Id.* at fn 6. Significantly, this means the "appropriate definition of 'accrued benefit' to use in regard to cash balance plans is that for defined benefit plans: 'the individual's accrued benefit determined under the plan and . . . expressed in the form of an annual benefit commencing at normal retirement age.'" *Richards v. Fleetboston Financial Corp. et al.*, Civil Action No. 04-1638(JHC), 2006 U.S. Dist. LEXIS 15601, *29 (D. Conn. Mar. 31, 2006) (citing ERISA § 3(23)(A), 29 U.S.C. § 1002(23)(A)). It is only for a defined contribution plan that "accrued benefit" is defined simply as the "the balance of the individual's account.'" *Id.* at *30 (citing *Esden, supra* 229 F.3d at 158).

When the statutory definition of accrued benefit is applied to the Plan, it is undeniably apparent that the Plan provides a smaller accrued benefit for older Plan participants at the plan's normal retirement age than for younger participants. Similarly, each individual employee's rate of accrual declines as he or she ages.[14]

In this regard, it can be said that a *traditional* defined benefit plan would violate ERISA if it showed a pattern of annual benefit accruals *identical* to that of either Chart 1 or Chart 2. Defendants essentially contend that ERISA rules applicable to defined benefit plans cease to apply based on the label that the plan sponsor affixes to the plan. This is certainly not the case. Indeed, Defendants treat the plan as a defined benefit plan for other purposes, such as plan

---

[14] The only exception to this sentence is for the first year in each pay credit band, as illustrated on Plaintiff's Charts (see second year of benefit accruals).

funding, where the plan at any given moment might be overfunded (with the possibility of either reduced future plan contributions or a reversion to the employer of "surplus" assets), or underfunded (with the possibility that employees might not receive their full benefits in the event of an employer bankruptcy).

Defendants also seem to assume that employees would receive their account balance rather than the actuarial equivalent of their plan annuity benefit. This is not, as Defendants own brief acknowledges, always the case. If the applicable interest rate falls below 5%, employees who leave employment before attaining normal retirement age will receive more than their account balance, with the percentage of additional benefits correlating directly to age, i.e., the younger plan participant would in such circumstances always receive a larger benefit than an older participant with an identical account balance. The two participants in Defendants' Chart 2 (on page 8 of Defendant's Brief) can illustrate this. If the statutory interest rates fell to 4% in the year 2014, and Employees A and B each leave employment and take an immediate lump sum, the 43-year old employee (who has a 2014 hypothetical account balance of $173,729) would receive a larger lump sum payout (approximately $212,000) than the 58-year old employee (who has a 2104 hypothetical account balance of $192,856 and would receive a lump sum payout of approximately $203,000).[15]  It is difficult to understand how this would not be not age discrimination. Defendants argue, in effect, that because cash-balance plans are designed to resemble defined contribution plans, they should be treated as defined contribution plans when it suits Defendants' legal needs.

---

[15]  This odd result occurs because the account balance would be credited with hypothetical interest credits of 5% annually through normal retirement age and then discounted back to present value using the 4% interest rate.  See IRS Notice 98-6.

It is true that Congress enacted a parallel set of age-based requirements for defined contribution plans and that those rules prohibit an employer from reducing its contribution rate for participants on account of age.  As Defendants observe, the defined contribution "age" rules adopt a compliance test based on present value; however, it is equally true that the *defined benefit* age rules legislated by Congress use a compliance test based on the value of the accrued benefit at normal retirement age.  Def. Mem. at 17.  One can argue with the wisdom of Congress' choice, as Defendants implicitly do, but there is no logical reason why that argument would not apply equally to defined benefit plans with traditional formulas.  Not even Defendants dare go this far.  To the contrary, Defendants apparently agree that traditional defined benefit plans are tested on a retirement-benefit rather than present-value basis, even though a smaller benefit accrual for an older employee can have a significantly larger present value than the greater benefit earned by the younger employee.[16]

Nothing in ERISA permits certain defined benefit plans to elect to use a defined-contribution plan rule for the purpose of measuring compliance with Section 204(b)(1)(H).  Indeed,  the Court in *Richards*, *supra,* in a detailed analysis of section 204(b)(1)(H)(i), concluded that Congress intended to maintain a strict binary structure delineating the differences between defined contribution plans and defined benefit plans.  *Id*. at *33.  In relevant part, the Court wrote:

> When the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended."  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 n.9, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004) (citing 2A N. Singer, Statutes and Statutory Construction § 46:06, p. 194

---

[16]  For example, assuming a 6% interest rate, a 64-year-old who accrued a $100 annual benefit at normal retirement age would have a greater benefit in present value terms than a 21-year old who accrued a $1,000 benefit.  But even Defendants would agree that a "traditional" defined benefit formula so providing would violate Section 204(b)(1)(H)(i).

(6th ed.2000)).  The court finds that *Congress did not intend that "the rate of an employee's benefit accrual," as used in section 204(b)(1)(H)(i) [pertaining to defined benefit plans], to be measured as "the rate at which amounts are allocated to the employee's account."*  Congress' use of the latter phrase, which explicitly requires measurements involving an increase in account balances, in ERISA § 204(B)(2) [pertaining to defined *contribution* plans] demonstrates that Congress could have used the same phrase in the age discrimination provision governing defined benefit plans had it intended to apply the same measurement rule to defined benefit plans.  Instead, it used a completely different phrase, "rate of benefit accrual."  ERISA § 204(b)(2).

In light of the great similarity that this phrase bears to the statutorily defined term "accrued benefit," and the fact that ERISA requires accrued benefit to be measured as an annual benefit commencing at normal retirement age for defined benefit plans, but requires accrued benefit to be measured as the balance of an individual's account for defined contribution plans*, the term "rate of benefit accrual," as used in section 204(b)(1)(H)(i), refers to rate measured as a change in the annual benefit commencing at normal retirement age.*

*Id.* at *33-34 (emphasis added); *See also Cooper et al. v. The IBM Personal Pension Plan*, 274 F. Supp. 2d 1010, 1017 (SD. Ill. 2003) (Cash balance plan's "rate of benefit accrual" refers to rate measured on an age 65 annuity).

Like the Court in *Richards*, this Court, in light of *Esden*, should give no weight to Defendants' assertions, and is indeed bound by the Second Circuit's decision in *Esden*.  To paraphrase a famous recent phrase, Defendants must abide by the rules they have, rather than the rules they wished they had.  Or, as the *Richards* Court noted,

ERISA itself requires the court to compare annual benefits commencing at normal retirement age when considering age discrimination in a cash balance plan under section 204(b)(1)(H). *The court may not pick a different outcome, even one that may appear more sensible to some, when Congress has not chosen that course.*

*Id.* at 40 (emphasis added).

15

In short, there is no basis for Defendants to ask this or any other court to bend or creatively interpret the rules to which they are subject, including ERISA Sections 204(b)(1)(H)(i) and 3(23).[17]

Finally, it should be observed that to satisfy ERISA's backloading rules, Defendants do regard the rate at which the "accrued benefit" accrues as the future benefit payable at retirement

---

[17]   Defendants also point to the *Eaton* Court's examination of a Congressional Conference Report provided in conjunction with the enactment of Section 204(b)(1)(H) for the proposition that Plaintiffs' interpretation of Section 20(b)(1)(H) is untenable.  The example provided in the Conference Report provides for $10 per month in annuity starting from age 65. Defendants argue that at age 66 the $10 per month in annuity payments would be worth less than the $65 per month at age 65.  (Def. Mem. 16).  Thus, Defendants contend, Plaintiff's argument is inconsistent with the example provided by Congress.  In essence, however, Defendants are making the same argument as the Defendants in *Richards*, who claimed that "requiring the rate of benefit accrual to be measured as a rate of increase in an annual benefit commencing at age 65 would not make sense if applied to employees over 65."  *Richards* at *36.  The *Richards* Court addressed this issue as follows:

> [T]he plaintiff's interpretation of "rate of benefit accrual," applied to employees older than 65, does not necessarily lead to results that would contradict the Congressional intent expressed in the statutory text.  Because the definition of "accrued benefit" for defined benefit plans is not explicitly limited to employees under 65, see ERSIA § 3(23), it is reasonable to assume that Congress intended that "accrued benefits" be "expressed in the form of an annual benefit commencing at normal retirement age," even for employees older than 65.  In applying this rule to the calculation of the "rate of benefit accrual" for an employee older than 65, one possibility would be that which the defendants suggest -- to refer to an annuity projected backwards in time to age 65.  This result would not necessarily be absurd. Congress' intent was to assure a benefit measured as of normal retirement age.  The value of that benefit does not change, regardless of whether the employee is younger or older than normal retirement age. What it costs to provide the benefit may change depending on an employee's age. However, that was not Congress' concern when it prohibited the dimunition of the rate of accrual of the benefit expressed as an annual benefit commencing at normal retirement age.

*Richards*, 2006 U.S. Dist. LEXIS at *36-37.

age and not simply the annual increase in the hypothetical account balance. *See* IRS Notice 98-6. This is because the increase in account balance in one year exceeds by more than 133 1/3% the increase in account balance in an earlier year.[18] For example, in their Table 2, Defendants claim that the benefit accrual for Employee A in 2014 will be $16,224, which exceeds 133% of the $9,005 "benefit accrual" in 2006. If this is the way accrued benefits are calculated in a cash-balance plan, the Plan clearly violates ERISA § 204(b)(1)(B). In effect, Defendants argue that they should be able to use one definition of accrued benefit for § 204(b)(1)(H) and a different definition for ERISA § 204(b)(1)(B)'s anti-backloading provisions. This mix-and-match method of statutory definition defies every principle of statutory construction.

### B.  The Complaint States a Claim that the Opening Account Balances Were Age Discriminatory and Resulted in Impermissible Forfeitures

Count II and Count III of Plaintiff's Complaint allege that the Plan discriminates against older workers because of its provision dealing with Frozen Benefits. Essentially, by providing that the guaranteed minimum benefit for employees who were participants in the predecessor plan prior to the Conversion Date was equal to their Frozen Benefit, the Plan effectively provided that participants whose Frozen Benefits exceeded their opening account balances would accrue no new retirement benefits unless and until their cash balance accounts caught up to and exceeded their Frozen Benefits. (Compl. ¶ 44). This period of zero accruals is often referred to as the "wear-away" period or "wear-away" effect. After the wear-away period ends, the participant will again begin accruing benefits. As the age of the participant increases, so to does the time period that their benefits will be frozen. As a result, older plan participants forfeited parts of their benefits.

---

[18]    The full implication of the 133 1/3% requirement of ERISA § 204(b)(1)(H) is explained in detail below.

Defendants argue that there is neither a wear-away effect nor forfeiture of benefits because under the Plan, a Plan participant receives the higher of the benefit under the prior plan or the current Plan.  After a thorough review of documents received from Defendants following the filing of the Complaint, the issues raised by the wear-away effect in Count II are sufficiently addressed by allegations contained in Plaintiff's Count III which alleges impermissible forfeiture and is discussed below.  To that end, Plaintiff is withdrawing Count II of the Complaint.

The wear-away effect is improper because it illegally conditions a participant's rights to collect benefits provided under the Plan, causing prohibited forfeitures.  In order to avoid the real possibility of benefits proving illusory, ERISA § 203(a) provides that benefit accruals must be "nonforfeitable" after a participant has served the required number of years to be vested. Further, a non-forfeitable right under ERISA §3(19) is defined as "unconditional."  "A right which, at a particular time, is conditioned under the plan upon a subsequent event, subsequent performance, or a subsequent forbearance which will cause loss of such right is a forfeitable right at that time. " 26 C.F.R. 1.411(a)-4.  IRS Notice 96-8, 1996-1 C.B. 359, further explains:

> If benefits . . . have accrued [but] those benefits are disregarded when benefits commence before normal retirement age, the plan has effectively conditioned entitlement to the benefits . . . on the employee not taking a distribution prior to retirement age.

See also Esden, supra, 229 F.3d at 168 ("by making part of [Esden's] benefit conditional on the form of payment chosen, the Plan made that benefit forfeitable, in violation of ERISA").  See also Lyons v. Georgia Pacific Corp., 221 F.3d 1235 (11th Cir. 2000) (examining accrual and vesting under cash balance plans).

The plan by its terms caused an improper forfeiture under ERISA because plan participants were unable to accrue benefits during the time period when their Frozen accounts were "catching up" to their Cash Balance accounts – the "wear-away" period.  Indeed, assuming

that the Frozen Benefit and the new cash balance benefit are separate benefits and that on retirement a participant is entitled to both the frozen benefit and the new benefit, the Plan here resulted in forfeiture for participants.  If the opening account balance is a surrogate for the frozen benefit, but has a lower present value than the frozen benefit, a portion of the frozen benefit is then forfeited.[19]  As a matter of law, the Plan is illegal in this regard.  *See Esden, supra*, 229 F.3d at 168.

### C.     The Complaint States a Claim that the Opening Account Balances Violated ERISA's Backloading and Vesting Rules.

Plaintiff's Complaint alleges in Count IV that the Plan violated ERISA § 204(b)(1)(A) (C), 29 U.S.C. § 1054(b)(1)(A)-(C), commonly known as the three percent rule, the 133 1/3% rule and the fractional rule, which governs accrual for defined benefit plans.  Typically, cash balance plans must comply with the 133 1/3% rule which provides that: "a defined benefit plan satisfies the requirements of this paragraph for a particular plan year if under the plan  . . .the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year is not more than 133 1/3% of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year."  ERISA § 204(b)(1)(B); *see also Esden, supra,* 229 F.3d 154, 167 n. 18 (stating "it is undisputed that the only test" a cash balance plan "might satisfy is the so-called 133 1/3% test under ERISA . . . .")

Because the Plan effectively reduced the rate of benefit accrual to zero for some participants with Frozen Benefits (as discussed in section B above), the plan failed the 133 1/3%

---

[19] In *Richards, supra,* the Court misconstrued the "always-in-effect" rule.  However, it is noteworthy that the Court recognizing its tenuous decision suggested that Plaintiffs ask for reconsideration.  *See Richards*, *supra,* 2006 U.S. Dist. LEXIS at *49.

rule for those participants who started earning benefits following one or more years of zero benefit accrual. Defendants cannot dispute this assertion from the facts.

There are two ways to consider the opening account balance: either as part of an "integrated benefit formula," which is the ultimate formula under which the participant will receive a benefit, i.e., the greater of the benefit calculated under the cash balance formula or the Frozen Benefit under the traditional formula (considering salary and years of service frozen as of the date of the plan amendment creating the cash-balance formula), or as two separate formulas. If the latter, the plan violates the rule prohibiting forfeitures (as discussed above) of the vested accrued benefit; if the former, the plan violates the backloading rules.

Assume first that the greater-of benefit formula is a single integrated benefit formula. In that case, a participant who has one or more years of benefit accrual of zero and subsequently has a positive benefit accrual will violate the rule of ERISA § 204(b)(1)(B) that a benefit not exceed by more than 133 1/3% the benefit accrual in any previous year. Defendants, relying on *Register v. PNC Fin. Servs. Group*, No. 04-6097, 2005 WL 3120268 (E.D. Pa. Nov. 21, 2005) argue that this construction of the statute violates the section rule that amendments are treated as always in effect. But for this to be the case, Plaintiff's benefit must be calculated under the cash-balance formula from the time of a participant's entry into the plan, which would include years prior to the conversion.[20] The Plan did not do this.

>    **D.    The Complaint States a Claim Because the Summary of Material Modification Provided to Participants was Insufficient**

Count VI of the Complaint alleges that the summary plan description ("SPD") provided by the Company failed to adequately describe, in a manner calculated to be understood by the

---

[20] Discovery is needed to determine whether this necessary calculation would create a larger benefit for some or all members of the Plaintiff class.

average plan participant, the full effects of the conversion to the Cash Balance Formula, including explanations of the reduction in the rate of benefit accrual with increasing age and the wear-away effect. Compl. ¶ 70. This is a violation of ERISA § 102, 29 U.S.C. § 1022. Defendants respond to this allegation by stating that the "communications Amex provided accurately described the terms of the cash balance plan amendment." (Def. Mem. at 28).

Moreover, Plaintiff asserts that the SPD failed to adequately apprise employees of the nature of the proposed changes. *See Heidgerd v. Olin Corp.*, 906 F.2d 903, 907 (2d Cir. 1990) (because "summary [plan description] will be an employee's primary source of information regarding employment benefits" it must be "sufficiently comprehensive to apprise the plan's participants and beneficiaries of their rights and obligations under the plan.")(quoting 29 C.F.R. § 2520.102-2(a)). The disclosure requirements of 29 C.F.R. § 2520.102-2(a) are strict and require that "the limitation or elimination of technical jargon and of long, complex sentences [and] the use of clarifying examples" is required. *Id.* In other words, an employee should not have to go to an actuary to understand the consequences of their benefits under the Plan. *See Burke v. Kodak Ret. Plan*, 336 F.3d 103, 110 (2d Cir. 2003) (finding that summary plan descriptions "must be written in a manner calculated to be understood by the average plan participant"); *see also Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1040 (2d Cir. 1985) (commenting that unless summary plan descriptions apprise the recipient of the "full import" of benefit-related consequences they fail to comply with ERISA.)

Notwithstanding Defendants' arguments, this issue is not ripe for adjudication at the motion to dismiss stage.[21] It is purely a question of fact as to whether the SPD was provided to

---

[21] Defendants' argument on the statute of limitations is also not ripe for adjudication at this stage. Moreover, when Plaintiff became aware that a breach had occurred is a question of

Plan participants, and if so, whether the SPD was sufficient under ERISA § 102.  *See* Fed. R. Civ. P. 12(b)(6), Note to Subdivision (b) ("Some courts have held that as the rule by its terms refers to statements in the complaint, extraneous matter on affidavits, depositions, or otherwise, may not be introduced in support of the motion, or to resist it.").  Significantly, if Plaintiff's assertion that the SPD failed to comply with ERISA § 102 it means it never went into effect and the statute of limitations does not begin to run.

> **E.     The Complaint States a Claim Because Defendants Failed to Give the Requisite Notice and the Claim is not Time-Barred**

Plaintiff's Count VII alleges that Defendants failed to properly notify employees of the Plan amendment effectuating the cash balance plan pursuant to ERISA § 204(h).  Defendants argue that communications provided by Amex in 1994 and 1995 complied with ERISA § 204(h). ERISA § 204(h) prohibits pension plan amendments providing for a significant rate of future benefit accrual unless each participant is notified of the decreasing benefit accrual at least 15 days prior to the effective date of the change.  *Id.*

In their motion to dismiss Defendants attach notifications sent out to Defendants prior to adoption of the cash balance plan.  Plaintiff maintains that resolution of this claim is not ripe at the motion to dismiss stage since it involves questions of fact, namely whether appropriate notification was provided to plan participants, and if so, when it took place.[22] Further, as a matter of procedure, the Court cannot consider Defendants' citation and attachment of notifications it claims were mailed out to Plan participants.  Because Plaintiff has not alleged that these

_____

fact and would determine when the statute of limitations (whether one is in fact *applicable*) began to run.

[22]  Defendants' argument on the statute of limitations is also not ripe for adjudication at this stage since the Court needs to determine whether and when a notice pursuant to § 204(h) was sent.

notifications were provided at least 15 days before the effective date of the plan amendment, the Court may not consider them.  *See Richards,* 2006 U.S. Dist. LEXIS at *54.  Moreover, under Rule 12(b)(6) Courts may choose to ignore documents submitted in support of motions to dismiss.  *See* Fed. R. Civ. P. 12(b)(6), Note to Subdivision (b) ("Some courts have held that as the rule by its terms refers to statements in the complaint, extraneous matter on affidavits, depositions, or otherwise, may not be introduced in support of the motion, or to resist it.").

### F.    Both Counts VIII and IX State Claims Separate and Apart From Other Claims of the Complaint

As Defendants correctly indicate, resolution of Count VIII and IX are dependent on resolution of Count I.  Specifically, if the Court finds that the Plan reduces the participants' rates of benefit accrual on account of age, then the Court must find that Defendants violated their fiduciary obligations under ERISA § 404 by failing to ensure that the Plan complied with ERISA's anti age-discrimination accrual rules.  Further, the Court must also find that Plaintiff and the Class are entitled to a judgment clarifying their right to receive future benefits from the Plan.

### G.    Plaintiff Withdraws Counts II and V of Her Complaint

At the time of filing the Complaint, Plaintiff had a good faith basis for all Counts as alleged.  Subsequent to its filing, the operative Plan Documents were made available to Plaintiff. Based on a thorough review of these documents, Plaintiff now voluntary withdraws Count II (as noted above) and Count V.

### IV.    Conclusion

For the foregoing reasons, Plaintiff Paula Kritzman asks that this Court deny Defendants' Motion to Dismiss.

Dated: April 28, 2006                    Respectfully submitted,


By:  _/S/  Curtis Trinko
       Curtis V. Trinko
       **LAW OFFICES OF CURTIS V.**
       **TRINKO, LLP**
       16 West 46th Street
       Seventh Floor
       New York, NY 10036


       **SCHIFFRIN & BARROWAY, LLP**
       Joseph H. Meltzer, Esq.
       Edward W. Ciolko, Esq.
       Mark K. Gyandoh, Esq.
       Joseph A. Weeden, Esq
       280 King of Prussia Road
       Radnor, Pennsylvania 19087
       Telephone: (610) 667-7706
       Facsimile: (610) 667-7056


       **Attorneys for Plaintiff**