LAW OFFICES OF
**MORGAN, LEWIS & BOCKIUS LLP**
101 PARK AVENUE
NEW YORK, NEW YORK  10178
(212) 309-6000
FAX:  (212) 309-6273

ATTORNEYS FOR DEFENDANTS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
:
**PAULA KRITZMAN,**                                 :
                                                                     :
                            **Plaintiff,**              :
                                                                     :        **06 CV 0233 (LAK)**
                            **v.**                          :
                                                                     :
**AMERICAN EXPRESS RETIREMENT**   :
**PLAN, AMERICAN EXPRESS**              :
**COMPANY, AMERICAN EXPRESS**       :
**COMPANY EMPLOYEE BENEFITS**       :
**ADMINISTRATION COMMITTEE,**        :        *ELECTRONICALLY FILED*
**JOHN DOES 1-100**                              :
                                                                     :
                            **Defendants.**          :
_____:


**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ....................................................................................................... 1

    A.    Count I Fails To State A Claim, Because The Amex Plan Is Not Age
           Discriminatory As A Matter Of Law. ................................................... 1

           1.    The Amex Plan Does Not Reduce "The Rate Of An Employee's
                    Benefit Accrual . . . Because Of The Attainment Of Any Age." .............. 1

           2.    <u>Richards v. FleetBoston</u> Was Wrongly Decided ..................................... 4

           3.    Plaintiff's Attempts At Statutory Construction Are Misplaced And
                    Cannot Save Her Claim From Dismissal. .................................................. 8

    B.    Count III Fails To State A Claim Because The Opening Account Balances
           Did Not Result In Any Impermissible Forfeitures. ............................... 12

    C.    Count IV Fails As A Matter Of Law Because Plaintiff's Arguments Are
           Based On A Misreading Of ERISA's 133 ⅓ Percent Rule ................................. 13

    D.    Count VI Fails Because The Summary Plan Description (And Other
           Communications) For The Cash Balance Plan Satisfied ERISA's
           Disclosure Requirements And, In Any Event, This Claim Is Time-Barred. ....... 16

           1.    Amex Provided Participants Summaries Of Material Modifications
                    And Summary Plan Descriptions That Accurately Described The
                    Terms Of The Cash Balance Plan. .......................................................... 16

    E.    Count VII Fails Because Amex Provided The Requisite Notice And
           Because It Is Time-Barred. ................................................................... 18

III.    CONCLUSION ................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page**

Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 101 S. Ct. 1895 (1981)...............................12

Auer v. Robbins, 519 U.S. 452, 117 S. Ct. 905 (1997) ..................................................................3

Bonovich v. Knights of Columbus, 963 F. Supp. 143 (D. Conn. 1997)........................................12

Campbell v. BankBoston, 327 F.3d 1 (1st Cir. 2003) ........................................................12, 13, 14

Cooper v. IBM Personal Pension Plan, 274 F. Supp. 2d 1010 (S. D. Ill. 2003)........................1, 4

Eaton v. Onan Corp., 117 F. Supp. 2d 812 (S.D. Ind. 2000)............................................4, 8, 9, 10

Esden v. Bank of Boston, 229 F.3d 154 (2d Cir. 2000).........................................3, 6, 10, 11, 13

Langman v. Laub, 328 F.3d 68 (2d Cir. 2003) ..............................................................................15

Lunn v. Montgomery Ward & Co., 166 F.3d 880 (7th Cir. 1999) ...................................................2

Lunn v. Montgomery Ward & Co., Inc. Ret. Sec. Plan, No. 97 C 3026, 1998 WL
102751 (N.D. Ill. Feb. 26, 1998)...................................................................................................12

Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S. Ct. 1549 (1987)..............................................9

Register v. PNC Fin. Servs. Group, No. 04-6097, 2005 WL 3120268,
(E.D. Pa. Nov. 21, 2005)........................................................................................................ passim

Rhoher v. Raytheon Engineers and Constructors, Inc., 181 F.3d 634 (5th Cir. 1999).................16

Richards v. FleetBoston Financial Corp., --- F.Supp.2d ----, No. Civ.A. 04CV1638, 2006
WL 980565 (D. Conn. Mar. 31, 2006) .................................................................................. passim

Rothman v. Gregor, 220 F.3d 8 (2d Cir. 2000)..............................................................................18

Tootle v. ARINC, Inc., 222 F.R.D. 88 (D. Md. 2004)..............................................................8, 10

White v. Sundstrand Corp., 256 F.3d 580 (7th Cir. 2001)......................................................12, 13

Wilkins v. Mason Tenders District Council Pension Fund, --- F.3d ---,
2006 WL 1046210 (2d Cir. Apr. 21, 2006) ...................................................................................16

Williams v. Caterpillar, Inc., 944 F.2d 658 (9th Cir. 1991)...................................................12, 13

**TABLE OF AUTHORITIES**
(continued)

Page

**STATUTES**

29 U.S.C. § 1002(23) ..................................................................................6, 9

29 U.S.C. § 1002(35) ........................................................................................7

29 U.S.C. § 1022 ............................................................................................16

29 U.S.C. § 1054 ......................................................................................passim

26 C.F.R. §  54.4980F-1 Q&A.18(b) ...........................................................14

26 C.F.R. §  54.4980F-1 Q&A11 ............................................................14, 17

26 C.F.R. § 1.401(a)(4) .................................................................................3, 14

26 C.F.R. § 1.410(b)-3(a)(2)(iii)(C) ...............................................................14

29 C.F.R. §§ 2520.102-2, 102-3 .....................................................................16

Rev. Rul. 81-12, 1981-1 C.B. 228 ..................................................................12

## I.    <u>INTRODUCTION</u>

In her Opposition to the Motion to Dismiss this case, Plaintiff cites two District Court decisions that hold cash balance plans to be age discriminatory.  The second of those decisions, <u>Richards v. FleetBoston Financial Corp.</u>, --- F.Supp.2d ---, No. Civ.A. 04CV1638, 2006 WL 980565 (D. Conn. Mar. 31, 2006) was issued in the District of Connecticut after Defendants' Motion to Dismiss was filed in this case.  Despite <u>FleetBoston</u>, the weight of authority demonstrates that cash balance plans are not age discriminatory.

It is not the pure weight of authority, however, that requires the dismissal of Plaintiff's age discrimination claims.  Rather, it is the language of ERISA, the repeated admonitions and opinions of the agency charged with interpreting the legislation, and the logic expressed by those courts that have upheld cash balance plans.  With all due respect to the courts in Connecticut and Illinois that decided the <u>FleetBoston</u> and <u>Cooper v. IBM</u> cases, those cases were wrongly decided.  <u>IBM</u> has been appealed to and argued in the Seventh Circuit and we expect the Second Circuit to deal with this issue in the future with a probable appeal of <u>FleetBoston</u>.  The Third Circuit also has before it the appeal of the <u>Register v. PNC Fin. Servs. Group</u> case (a case that we believe was rightly decided).  As discussed below, Plaintiff's age discrimination argument has nothing more than the most superficial underpinnings, and cannot withstand the close scrutiny that this important issue deserves.  Similarly, Plaintiff's other arguments do not salvage her attempts to undermine a lawfully designed and adopted pension plan.

## II.    ARGUMENT

**A.    Count I Fails To State A Claim, Because The Amex Plan Is Not Age Discriminatory As A Matter Of Law.**

### 1.    The Amex Plan Does Not Reduce "The Rate Of An Employee's Benefit Accrual . . . *Because Of* The Attainment Of Any Age."

Plaintiff does not dispute that pay credits in the Amex Plan (i.e., "Contribution Credits") are age favored (i.e., they increase with age) and that all participants in the Amex Plan, regardless of age, earn interest at the same rate. (Defendants' Opening Brf. at 5-6, 9-10). This is not age discrimination. See Lunn v. Montgomery Ward & Co., 166 F.3d 880, 883-84 (7th Cir. 1999) (holding that retirement plan did not violate ERISA Section 204(b)(1)(H) where plaintiff "remained in the retirement plan(s), accruing benefits in exactly the same way he had been doing before he turned 65, until he retired"). Plaintiff's method for testing whether a cash balance plan is age discriminatory – comparing annuities payable at age 65 for two different participants, one older and one younger – requires a comparison of annual benefits payable at two vastly different times. That is, Plaintiff compares a 50 year old's annual benefit *in 2021* (when he turns 65) against the annual payment that a 35 year-old will receive *in 2036* (when he turns 65). (Defendants' Opening Brf. at 11-12). Not surprisingly, the values are different due to the greater number of years of interest for the younger employee. This is not "because of" a participant's age, but rather "because of" an application of the time value of money; if the older employee were to remain in the Plan for as long as the younger employee, he would earn interest at the same rate for the same length of time.

Plaintiff's Opposition Brief does not even address the Treasury Department's repeated and consistent determination that cash balance plans are not inherently age discriminatory. The Second Circuit in Esden explained that a "consistent and reasonable interpretation by the responsible agency is entitled to deference, regardless of its form of publication." Esden v. Bank

of Boston, 229 F.3d 154, 169 (2d Cir. 2000)  See also Auer v. Robbins, 519 U.S. 452, 462, 117 S. Ct. 905, 911-12 (1997) (agency's interpretation set forth in amicus brief was entitled to deference, where "[t]here is simply no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question").  Here, the Treasury Department's endorsement of cash balance plans is clear:

- In 1991, the Treasury Department published safe harbor regulations for cash balance plans.[1]  See Treas. Reg. § 1.401(a)(4)-8(c)(3)(iii)(B)  In the preamble to the regulations, the Treasury Department stated the obvious:  "[t]he fact that interest adjustments through normal retirement age are accrued in the year of the related hypothetical allocation [i.e., the pay credit] will not cause a cash balance plan to fail to satisfy the requirements of section 411(b)(1)(H), relating to age-based reductions in the rate at which benefits accrue under a plan."  56 Fed. Reg. 47,524 (1991).  This is an explicit rejection of Plaintiff's theory that cash balance plans are inherently age discriminatory.

- In 1996, the Treasury Department published IRS Notice 96-8, approving cash balance designs with interest credits that accrue up-front and describing how lump sum benefits in a cash balance plan should be determined.  See IRS Notice 96-8, Part III.A.  The Treasury Department would not have issued rules describing how to calculate lump sums in a cash balance plan if its interpretation of ERISA would render all cash balance plans inherently illegal.

- In 1999, IRS Chief Counsel Stuart Brown testified that interest credits under cash balance plans do not cause these plans to violate Code Section 411(b)(1)(H), the Code's counterpart to ERISA Section 204(b)(1)(H).  See Testimony before the Senate Committee on Health, Education, Labor and Pensions, 1999 TNT 183-11 (Sept. 21, 1999).

---

[1]    The Second Circuit in Esden, 229 F.3d 154, cited approvingly to these safe harbor regulations.  See id. at 169-70.

•    In 2002, the Treasury Department proposed regulations that squarely rejected the notion that cash balance plans are inherently age discriminatory.  See 67 Fed. Reg. 76,123-01 (Dec. 11, 2002).[2]

•    In its revenue proposals for 2005, 2006, and 2007, the Treasury Department confirmed that "cash balance plans and cash balance plan conversions are not inherently age discriminatory."[3]

For these reasons, and those in Defendants' Opening Brief (p. 9-18), Plaintiff's challenge to the Amex cash balance plan (and by definition, all cash balance plans) must fail.[4]

**2.    Richards v. FleetBoston Was Wrongly Decided.**

After Defendants filed their Opening Brief, Judge Hall of the United States District Court for the District of Connecticut issued a decision in Richards v. FleetBoston, in which she agreed with the holding of the district court in Cooper v. IBM that all cash balance plans are inherently age discriminatory.  See FleetBoston, 2006 WL 980565, citing Cooper v. IBM Personal Pension Plan, 274 F. Supp. 2d 1010 (S. D. Ill. 2003).  Judge Hall explained the basis of her decision as follows:

> In light of the great similarity that this phrase [rate of benefit accrual] bears to the statutorily defined term "accrued benefit," and the fact that ERISA requires accrued benefit to be measured as an annual benefit commencing at normal retirement age for defined benefit plans, but requires accrued benefit to be

---

[2]    These proposed regulations have since been withdrawn and were replaced by the Treasury Department's legislative proposals, which also endorse cash balance plans.

[3]    See Department of Treasury, General Explanation of the Administration's Fiscal Year 2005 Revenue Proposals 104 (2004); Department of Treasury, General Explanation of the Administration's Fiscal Year 2006 Revenue Proposals 82 (2005); Department of Treasury, General Explanation of the Administration's Fiscal Year 2007 Revenue Proposals 66 (2006).

[4]    See also Eaton v. Onan Corp., 117 F. Supp. 2d 812 (S.D. Ind. 2000) (cash balance plan is not age discriminatory); Register v. PNC Fin. Servs. Group, No. 04-6097, 2005 WL 3120268 (E.D. Pa. Nov. 21, 2005)(same).

> measured as the balance of an individual's account for defined contribution plans, the term "rate of benefit accrual," as used in section 204(b)(1)(H)(i), refers to rate measured as a change in the annual benefit commencing at normal retirement age. The statute is unambiguous in this respect, and the court need not inquire further into its meaning.

FleetBoston, 2006 WL 980565, at *10.  Defendants submit that Judge Hall's decision in

FleetBoston was wrong for at least five reasons.

First, Judge Hall offers no legal basis for her conclusion that "rate of benefit accrual"

must mean the same thing as the specifically defined term "accrued benefit."  As explained

previously, Congress could have used the term "accrued benefit" in Section 204(b)(1)(H) but did

not do so.  (Defendants' Opening Brf. at 12-13; infra at 8-9).  Congress also could have required

that ERISA's age discrimination provision be tested in the same manner as ERISA's 133 ⅓

percent  rule by using the same language as in the 133 ⅓ percent rule, 29 U.S.C. §

1054(b)(1)(B)[5]  (Defendants' Opening Brf. at 15; infra at 9-10).[6]  It did not, and as discussed

above, the agency charged with interpreting these different statutory phrases has declined to

adopt the reading that was adopted in FleetBoston.  See supra at 3-4.

Second, Judge Hall's conclusion that, for purposes of testing compliance with ERISA, an

"accrued benefit" must be "measured as an annual benefit commencing at normal retirement

age" is wrong.  FleetBoston, 2006 WL 980565, at *10.  As explained previously, 29 U.S.C. §

---

[5]  As explained in Defendants' Opening Brief, the 133 ⅓ percent rule generally prohibits a plan from backloading benefits in later years of service by more than 133 ⅓ percent of the benefits earned in earlier years of service.  (Defendants' Opening Brf. at 23-24).

[6]  29 U.S.C. § 1054(b)(1)(B).  ERISA's 133 ⅓ rule – provides that "[a] defined benefit plan satisfies the requirements of this paragraph of a particular plan year if under the plan the accrued benefit payable at the normal retirement age is equal to . . . ."  29 U.S.C. § 1054(b)(1)(B) (emphasis added).  Thus, Congress explicitly required ERISA's 133 ⅓ rule to be tested based on the "accrued benefit" and specifically required that the accrued benefit be expressed as a "benefit payable at the normal retirement age" for purposes of that test.  This same language does not appear in ERISA's age discrimination provision, 29 U.S.C. § 1054(b)(1)(H).

1002(23) (A) and 29 U.S.C. § 1054(c)(3) specifically authorize plans to measure an accrued

benefit as something other than an accrued benefit payable in annuity form at normal retirement

age.[7]  (Defendants' Opening Brf. at 14-15).  Indeed, the Second Circuit in Esden described

exactly how to calculate accrued benefits expressed as a lump sum, relying on 29 U.S.C. §

1054(c)(3).[8]

      Third, Judge Hall also appears to have misunderstood the mathematics relevant to the

example in the Conference Report, discussed at pages 16-17 of Defendants' Opening Brief.

Judge Hall suggested that the example in the Conference Report (the employee receiving a

benefit of $10 per month per year of service at age 65, 66, and 67) was consistent with her

interpretation of Section 204(b)(1)(H) because "[t]he value of that benefit does not change,

regardless of whether the employee is younger or older than normal retirement age."

FleetBoston, 2006 WL 980565, at *10.  This is wrong.  As explained in Defendants' Opening

Brief, a plan that provides a participant a benefit of $10 per month for each year of service at age

65, 66, and 67 – the example in Congress' Conference Report – reduces the rate of benefit

accrual if measured the way Plaintiff suggests, because $10 per month at age 66 (or 67) is less

than $10 per month when expressed in terms of an age 65 annuity.  (Defendants' Opening Brf. at

16).  Thus, Judge Hall's interpretation of Section 204(b)(1)(H) would render illegal the example

that Congress used to demonstrate how the statute was supposed to work.

----

[7]   Generally, participants in a plan must be offered the right to receive their benefit in the form
of an annuity payable at normal retirement age if they so choose, but an annuity is not the
exclusive method of paying a benefit, nor is it the only measure to be used for testing
compliance with ERISA.  How benefits are paid is a different issue from how plans must be
tested for purposes of compliance with ERISA.

[8]   Moreover, Judge Hall's reliance on Esden to support her conclusion as to the interpretation
of Section 204(b)(1)(H) was misplaced, because Esden addressed a particular aspect of
calculating lump sum benefits in a cash balance plan – whipsaw – but never interpreted
Section 204(b)(1)(H) or addressed how to determine whether cash balance plans are age
discriminatory.

Fourth, although Judge Hall held that the IRS' interpretation (expressed in a proposed regulation) of one aspect of Section 204(b)(1)(H) was entitled to some deference or "respect," FleetBoston, 2006 WL 980565, at *7, she ignored the same agency's repeated and considered determination that cash balance plans are not age discriminatory. See supra at 3-4. Indeed, Judge Hall disregarded (without mention) the IRS' interpretation of the phrase "rate of benefit accrual" expressed in the same proposed regulation that she relied upon for other aspects of her decision. Defendants respectfully submit that it was error for Judge Hall to reject a long-standing and considered opinion and interpretation by the Treasury Department that cash balance pension plans are lawful without even discussing why those interpretations are wrong.

Lastly, Judge Hall suggests that if defined benefit plans were supposed to be tested for age discrimination based on the allocation to the employee's account – the way defined contribution plans are tested – Congress would have used the same language for prohibiting age discrimination in a defined benefit plan that it used to prohibit age discrimination for a defined contribution plan. Compare 29 U.S.C. § 1054(b)(1)(H) and 29 U.S.C. § 1054(b)(2). This argument reflects an apparent misunderstanding of the definition of a defined benefit plan. Specifically, a defined benefit plan is defined as any plan other than an individual account plan, i.e., defined contribution plan. 29 U.S.C. § 1002(35). There are many different types of defined benefit plans, which accrue benefits in different ways. Congress could not test age discrimination for a defined benefit plan in terms of an account balance (like it did for defined contribution plans) because many defined benefit plans do not even have "accounts."[9] For a defined benefit plan that mirrors an individual account plan (e.g., a cash balance plan), the rate of benefit accrual should be measured in terms of the way benefits actually are accrued, i.e., earned,

---

[9]    By contrast, all defined contribution plans are account plans. Thus, it made sense for Congress to define the accrued benefit in a defined contribution plan as the account balance.

in the plan – based on allocations to the employee's account.  See Eaton, 117 F. Supp. 2d at 830-

34 (testing age discrimination in a cash balance plan is based on changes to the employee's

account); Tootle v. ARINC, Inc., 222 F.R.D. 88, 93-94 (D. Md. 2004 (same); Register, 2005 WL

3120268, at *7 (E.D. Pa. Nov. 21, 2005 (same).

     Respectfully, Judge Hall erred in concluding that cash balance plans are age

discriminatory, and the FleetBoston decision should not be followed.

    **3.**    **Plaintiff's Attempts At Statutory Construction Are Misplaced And Cannot Save Her Claim From Dismissal.**

     Although she sidesteps the fundamental issue that the Amex Plan cannot be age

discriminatory because it treats older employees at least as favorably as – and generally more

favorably than – similarly situated younger employees, Plaintiff makes a number of statutory

construction arguments in support of her claim in Count I.  These arguments cannot save her

claim from dismissal.[10]

    •     Plaintiff argues that her claim in Count I turns exclusively on the definition of the

phrase "accrued benefit" under ERISA.  (Opp. Brf. at 11-12) ("The legal dispute among the

parties, then, is whether the 'accrued benefit' in a cash balance plan . . . .").  Indeed, the entire

premise of Plaintiff's claim in Count I is based on the definition of "accrued benefit" under

ERISA.  What Plaintiff ignores, however, is that the statutory provision at issue – 29 U.S.C. §

1054(b)(1)(H) – does not actually contain the phrase "accrued benefit."  Instead, the section

refers to a "benefit accrual" and "the rate of an employee's benefit accrual."  The phrase

"accrued benefit" to which Plaintiff refers is specifically defined in 29 U.S.C. § 1002(23).  By

---

[10]    Plaintiff claims that Defendants' arguments are based on the "supposition that the Plan is a defined contribution plan and not a defined benefit plan."  (Opp. Brf. at 4).  This is disingenuous.  Defendants explained in their Opening Brief that "[a]lthough cash balance plans differ from traditional plans like those described above, they are a type of defined benefit plan."  (Opening Brf. at 3) (emphasis added).

contrast, ERISA does not define "benefit accrual" or "the rate of an employee's benefit accrual" that are at issue in this case. Plaintiff's interpretation of 29 U.S.C. § 1054(b)(1)(H) is unreasonable and economically nonsensical for all of the reasons previously explained. She cannot overcome these deficiencies by relying on principles of statutory construction where the statute does not actually use the same defined terms upon which she relies, particularly for a statute as carefully crafted as ERISA. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54, 107 S. Ct. 1549, 1556 (1987) (noting that ERISA was carefully crafted).

•       Plaintiff characterizes Defendants' position as requiring one definition of "accrued benefit" with respect to ERISA's 133 ⅓ backloading rule, 29 U.S.C. § 1054(b)(1)(B), but a different definition with respect to ERISA's age discrimination provision. (Opp. Brf. at 17). This argument also is based on Plaintiff's imprecise characterization of the relevant statutes. First, as explained previously, ERISA's age discrimination provision does not use the phrase "accrued benefit." More importantly, although Defendants acknowledge that ERISA's 133 ⅓ rule is tested with reference to a participant's accrued benefit commencing at normal retirement age, that is only because the relevant statutory provision (unlike the age discrimination provision) specifically requires it. Congress explicitly requires ERISA's 133 ⅓ percent rule to be tested based on the "accrued benefit" and specifically requires that the accrued benefit be expressed as a "benefit payable at the normal retirement age" for purposes of that test. If Congress had wanted ERISA's age discrimination provision to be tested the same way as ERISA's 133 ⅓ rule, it would have used the same language. (Defendants' Opening Brf. at 15). See, e.g., Eaton, 117 F. Supp. 2d at 830 ("The concept of the 'benefit accrual rate' does not have a single, self-evident meaning, especially in the complex world of pension plan regulation. The

term is used and defined in different ways and for different purposes under ERISA and the

Internal Revenue Code.") (also collecting examples).[11]

- Even if the phrases "benefit accrual" and "rate of an employee's benefit accrual"

were synonymous with the defined term "accrued benefit" – contrary to the principles of

statutory construction – Count I would still fail. Although Plaintiff quotes part of the relevant

statute defining an "accrued benefit" as a benefit "expressed in the form of an annual benefit

commencing at normal retirement age," (Opp. Brf. at 8), she glosses over language in the

definition of "accrued benefit" that specifically authorizes the "accrued benefit" to be expressed

as a benefit other than the annual benefit commencing at normal retirement age. (Defendants'

Opening Brf. at 14-15). As explained in detail in Defendants' Opening Brief (and ignored by

Plaintiff in her Opposition Brief), 29 U.S.C. § 1054(c)(3) provides that:

> if an employee's accrued benefit is to be determined as an amount other than an
> annual benefit commencing at normal retirement age. . . the employee's accrued
> benefit . . . shall be the actuarial equivalent of such benefit.

29 U.S.C. § 1054(c)(3) (emphasis added). Thus, ERISA specifically permits an accrued benefit

"to be determined as an amount other than an annual benefit commencing at" age 65. Id. See

also Esden, 229 F.3d at 160, 163 (describing how to calculate an accrued benefit expressed as a

lump sum, quoting 29 U.S.C. § 1054(c)(3); also noting that "the minimum amount of [plaintiff's]

accrued benefit, expressed as a lump sum . . . ."). In other words, Plaintiff's entire theory – that

---

[11]    See Register, 2005 WL 3120268, at *6 ("ERISA does not define the 'rate of an employee's
benefit accrual' for purposes of applying the ERISA age discrimination provisions."); Eaton,
117 F. Supp. 2d at 829-30 ("[T]hese provisions [Section 204(b)(1)(H)] do not require a
measure of a participant's rate of benefit accrual that is based solely on the value of the
participant's annuity payable at normal retirement age."); Tootle, 222 F.R.D. at 93-94
(same). The Eaton court further held that "[t]he argument distinguishing between 'accrued
benefit' and 'rate of benefit accrual' may seem like pretty fine hair-splitting. Nevertheless,
pension law is a highly technical field where hairs are split with ever finer razors." Eaton,
117 F. Supp. 2d at 830 n.8 (internal parenthetical omitted).

an accrued benefit can be expressed only as an annual benefit commencing at normal retirement age – is wrong and Count I fails.

•    Although Plaintiff purports to demonstrate how cash balance plans are age discriminatory using two tables in her brief, these tables are meaningless because they compare benefits payable at two different times, ignore the time value of money and do not look at the actual value of the benefit.  Comparing annuity benefits payable at two different times, based on employees with different life expectancies, is not an apples to apples comparison and does not demonstrate age discrimination.  Indeed, Plaintiff's tables – and her entire argument – ignore that if an older employee (with the same salary and service history as a younger employee) remained in the Plan until the younger employee turned 65, and the benefits for both employees were paid out at the same time, the older employee would have a higher benefit.  Indeed, the only time Plaintiff compares benefits payable at the same time is when she compares lump sum benefits payable pursuant to the "whipsaw" process.  (Opp. Brf. at 13).  It is important to note that Plaintiff is not pursuing a claim that engaging in the whipsaw process – projecting-forward/discounting back the participant's benefit – is illegal age discrimination.  Indeed, she specifically withdrew her challenge to the Amex Plan's calculation of lump sum benefits (Count V) because she recognized that the whipsaw process in the Amex Plan is required by the Second Circuit's decision in Esden and IRS Notice 96-8.  See Esden, 229 F.3d at 169-71; IRS Notice 96-8, 1996-1 C.B. 359-61.  In short, there is no age discrimination.

**B.    Count III Fails To State A Claim Because The Opening Account Balances Did Not Result In Any Impermissible Forfeitures.**

In opposing Defendants' Motion as to Count III of her Complaint,[12] Plaintiff does not even address, let alone distinguish, the Supreme Court's holding in Alessi v. Raybestos-

---

[12]    Plaintiff has withdrawn Count II of her Complaint.

Manhattan, Inc., 451 U.S. 504, 101 S. Ct. 1895 (1981), or the courts of appeals' decisions in

White v. Sundstrand Corp., 256 F.3d 580 (7th Cir. 2001) and Williams v. Caterpillar, Inc., 944

F.2d 658 (9th Cir. 1991).[13]  Instead, Plaintiff simply argues – without any supporting legal

authority – that the Plan causes an impermissible forfeiture because of a "wear-away period."

(Opp. Brf. at 18) ("The plan by its terms caused an improper forfeiture under ERISA because

plan participants were unable to accrue benefits during the time period when their Frozen

accounts [sic] were "catching up" to their Cash Balance accounts [sic] – the wearaway

period.").[14]  As explained in detail below and in Defendants' Opening Brief, a "wear-away"

period is not unlawful.  Indeed, the First Circuit rejected an identical claim in Campbell v.

BankBoston, 327 F.3d 1 (1st Cir. 2003), which also dealt with the conversion of a traditional

plan to a cash balance plan:

> [Plaintiff] argues that this reduction amounts to a forfeiture of an accrued benefit
> in violation of 29 U.S.C. § 1054(g).  There was no forfeiture, because no accrued
> benefits were reduced; only expected benefits were reduced, which [defendant]
> could, under the law, modify or eliminate.
>
> The ERISA anti-cutback provision protects against the erosion of "accrued
> benefits". . . .   The reduction of pension benefits of which [plaintiff] complains
> was merely the elimination of future expected accruals of benefit.  The December
> 31, 1996 amendment to the plan protected all of the pension benefit based on
> [plaintiff's] work for the company up to that point; it merely ceased accruals

---

[13]  See also Rev. Rul. 81-12, 1981-1 C.B. 228 (approving "greater of" feature to protect accrued
benefits following amendment of a plan's actuarial factors); Lunn v. Montgomery Ward &
Co., Inc. Ret. Sec. Plan, No. 97 C 3026, 1998 WL 102751, at *6 (N.D. Ill. Feb. 26, 1998)
(granting a motion to dismiss and holding that "[b]enefits provided by one plan may be
offset by benefits received under other plans provided by the same employer"); Bonovich v.
Knights of Columbus, 963 F. Supp. 143, 146-48 (D. Conn. 1997) (dismissing forfeiture
claim because "plaintiffs overlook the fact that deduction of their benefit-like renewal
commissions is itself part of the formula for determining the amount of their pension
benefits, and because ERISA does not control the content and calculation method of plan
benefits, [defendant] may integrate participants' pension plan benefits with their renewal
commissions").

[14]  Plaintiff appears to have transposed her reference to the "Frozen accounts" and "Cash
Balance accounts" in this sentence.

under the old plan based on employment from that point forward. This was an elimination of an expected, not accrued, benefit. There was no ERISA violation.

Campbell, 327 F.3d at 8-9 (internal citations and quotations omitted).

Plaintiff's reliance on the Second Circuit's decision in Esden and IRS Notice 96-8 to support her claim of an impermissible forfeiture is misplaced. Both Esden and Notice 96-8 involved whipsaw issues for an employee electing a lump sum benefit that was worth less than the value of the accrued benefit. See Esden, 229 F.3d at 169-71 (plan paid participant $61.54 less than lump sum value of accrued benefit); IRS Notice 96-8, 1996-1 C.B. 359-61. (Defendants' Opening Brf. at 22 n.17 (explaining whipsaw)). Here, by contrast, the Plan uses a greater-of formula, so that a participant can never receive less than his or her accrued benefit.[15] Under Section 2.1 and Article 14 of the Amex Plan, it is impossible under the Amex Plan for any employee to receive a lower benefit amount than the participant's accrued benefit. Accordingly, consistent with White, Williams, and Campbell, supra, there is no forfeiture and Count III fails to state a claim for relief.

## C. Count IV Fails As A Matter Of Law Because Plaintiff's Arguments Are Based On A Misreading Of ERISA's 133 ⅓ Percent Rule.

In her Opposition Brief, Plaintiff offers no caselaw, regulation, or any other legal or persuasive authority supporting her claim in Count IV. Nor does Plaintiff even try to distinguish the Register decision in Defendants' Opening Brief, or the FleetBoston decision, both of which reject virtually identical claims to that alleged in Count IV. See Register, 2005 WL 3120268, at *3 (cash balance plan with wear-away feature related to opening account balances does not violate ERISA's 133 ⅓ percent rule); FleetBoston, 2006 WL 980565, at *15-16 (same).

---

[15]    Although Plaintiff alleged a whipsaw claim in her Complaint, she withdrew that claim after she obtained a copy of the Plan. (Opp. Brf. at 23). Thus, Plaintiff concedes that the Amex Plan did not suffer from the same problem at issue in Esden and Notice 96-8.

Instead, Count IV depends on Plaintiff's assertion that <u>all</u> <u>plans</u> that have <u>any</u> wear-away feature are "by definition" illegal.  (Opp. Brf. at 3 ("By definition, wear-away periods violate either ERISA Section 204(b)(1)(A)-(C) . . . or ERISA section 203(a)").  This is wrong as a matter of law.  First, as the Register, <u>FleetBoston,</u> and <u>Campbell</u> decisions make clear, wear-away periods related to the conversion of traditional plans to cash balance plans – and the setting of opening account balances – are not illegal; rather, the wear-away feature protects a participant's benefit earned under the prior formula and ensures that an employee will never receive less than that prior benefit.

Second, the Treasury Department – the agency with authority to interpret and apply the relevant provisions of ERISA – has issued regulations that specifically acknowledge and endorse wear-away periods as part of lawful plan designs, including with respect to cash balance conversion.  For example, the regulations provide safe-harbors (<u>i.e.</u>, exemptions) from certain ERISA requirements[16] for plans that have particular types of wear-away periods.  <u>See</u> 26 C.F.R. § 1.401(a)(4)-13 (describing safe harbor "formula with wear-away" and "formula with extended wear-away").[17]  Current regulations under ERISA Section 204(h), 29 U.S.C. § 1054(h), further provide that a Section 204(h) notice is required for a plan amendment after September 2, 2003[18] "that results in a wear-away period" and describes in detail how notice should be provided when a wear-away results from the conversion of a traditional plan to a cash balance plan.  <u>See</u> 26 C.F.R. §  54.4980F-1 Q&A11(a)(4)(ii).  Of course, the Treasury Department would not endorse

---

[16]    These requirements relate to ERISA's prohibitions against discrimination in favor of highly compensated employees.  This is a separate and distinct issue from ERISA's age discrimination provision and is not being challenged by Plaintiff in her Complaint.

[17]    <u>See also</u> 26 C.F.R. § 1.410(b)-3(a)(2)(iii)(C) (permitting plans where "the plan is applying the wear-away formula . . . and the employee's frozen accrued benefit exceeds the benefit determined under the current formula").

[18]    <u>See</u> 26 C.F.R. §  54.4980F-1 Q&A.18(b).

wear-away features and adopt regulations that require those features to be described to participants if a wear-away period were "by definition" illegal, as Plaintiff claims.

As Defendants explained in their Opening Brief (p. 24-25), if the cash balance formula is treated as if it were in effect for all other plan years (as required by 29 U.S.C. § 1054(b)(1)(B), then no participants would have a frozen benefit because opening account balances are based exclusively on the prior plan's formula.[19]  Plaintiff does not and cannot allege that the cash balance formula violates the 133 ⅓ rule when tested in accordance with the statute's express terms.  Accordingly, Count IV fails as a matter of law.  See Register, FleetBoston, supra.

**D.    Count VI Fails Because The Summary Plan Description (And Other Communications) For The Cash Balance Plan Satisfied ERISA's Disclosure Requirements And, In Any Event, This Claim Is Time-Barred.**

**1.    Amex Provided Participants Summaries Of Material Modifications And Summary Plan Descriptions That Accurately Described The Terms Of The Cash Balance Plan.**

In her Opposition Brief, Plaintiff argues that she needs discovery on two issues before the merits of Count VI can be considered:  (1) "whether the SPD [summary plan description] was provided to Plan participants" and (2) "whether the SPD was sufficient under ERISA § 102.

---

[19]    In an effort to create the appearance of the need for discovery, Plaintiff also suggests that the Amex Plan cannot be tested as if it had always been in effect for purposes of the 133 ⅓ rule unless the Plan actually pays benefits under the cash balance formula as if that formula had always been in effect.  (Opp. Brf. at 20 and n. 20).  This is wrong.  ERISA only requires that the amendment "be treated" as if in effect for all years for purposes of testing compliance with the 133 ⅓ rule.  29 U.S.C. § 1054(b)(1)(B) (i).  Nothing in ERISA's 133 ⅓ rule, or any other provision, requires that the Plan actually pay benefits as if the amendment were in effect for all prior years.  In fact, the Second Circuit rejected this very argument in Langman v. Laub, 328 F.3d 68, 71-72 (2d Cir. 2003)(plan amendment that increased benefits by more than 33% did not violate 133 ⅓ rule despite that plan amendment did not apply to all prior years).  Likewise, both the Register and FleetBoston courts rejected claims based on a violation of the 133 ⅓ rule even though the plans in those cases did not actually apply the cash balance formula to all years of service before the amendment creating the cash balance plan.

(Opp. Brf. at 21-22, emphasis added).  Neither of these issues, however, can save Plaintiff's claim.

First, Plaintiff does not allege in her Complaint that the SPD was not provided to her.  To the contrary, Plaintiff seems to concede in her Complaint that she did receive the SPD.  Plaintiff specifically alleges that "[t]he summary plan description provided by the Company. . . ." (Complaint ¶ 70).  In addition, and in the face of the affidavit of Valeria Christensen, Plaintiff does not claim – in her Complaint, in her Opposition Brief, or in any affidavit – that she did not receive it.  Accordingly, no discovery is necessary or appropriate.

Second, whether the SPD satisfied ERISA's disclosure requirements is a legal question, not a factual issue.  See 29 U.S.C. § 1022; 29 C.F.R. §§ 2520.102-2, 102-3.  As the Second Circuit recently explained:

> But [Plaintiff's] SPD claim does not ask us to review either the [defendant's] exercise of discretion or its interpretation of the *plan*.  Rather, we are called on to judge the [defendant's] compliance with the applicable [ERISA] statute and regulations [regarding the content of SPDs].  To do this, we must construe ERISA's requirement that "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits" be published in the SPD.  29 U.S.C. § 1022 (b).  In other words, the question before us is simply one of statutory interpretation.

Wilkins v. Mason Tenders Dist. Council Pension Fund, --- F.3d ---, 2006 WL 1046210, at *8 (2d Cir. Apr. 21, 2006) (emphasis in original).[20]

Plaintiff has cited no authority that requires an SPD to disclose how to calculate the "rate of an employee's benefit accrual" as that phrase is used in 29 U.S.C. § 1054(b)(1)(H), or whether that "rate" increases or decreases with age.  Nor has Plaintiff cited any authority requiring an

---

[20]  See also Rhoher v. Raytheon Eng'rs and Constructors, Inc., 181 F.3d 634, 639 (5th Cir. 1999) ("whether the summary plan description complied with ERISA's disclosure requirements . . . [is] a legal question which we review *de novo*"); Register, 2005 WL 3120268, at *9 (granting motion to dismiss challenge to cash balance plan SPD).

SPD to disclose that a plan has a "wear-away" feature.  To the contrary, when a wear-away must be described, the Treasury Department specifically said so in its regulations.  26 C.F.R. § 54.4980F-1, Q&A 11.  In any event, moreover, the SPD for the Amex Plan does describe how opening account balances are calculated and that the prior plan benefit is a guaranteed minimum benefit.  (Christensen Dec., Ex. J, p. 49).  By definition, <u>this is the wear-away feature of the Amex Plan</u>.  The mere fact that the SPD does not use the term "wear-away" does not render the SPD deficient.

At bottom, Plaintiff does not contend that the SPD was misleading or inaccurate.  She also does not dispute that the SPD disclosed all of the terms of the Plan in detail, including (1) how opening account balances are calculated, (2) how benefits are earned and calculated for each participant on an ongoing basis, and (3) that participants' prior benefits are guaranteed as a minimum benefit.  Plaintiff does not deny that with this information, an employee can determine how much his or her account balance will change each year and how much he or she is entitled to receive upon retirement.  This is all that ERISA requires.  Count VI fails a matter of law.[21]

**E.    Count VII Fails Because Amex Provided The Requisite Notice And Because It Is Time-Barred.**

In her Opposition to the Motion to Dismiss Count VII, Plaintiff does not identify any deficiencies or inaccuracies in Amex's communications about the operation of the Plan or the conversion from the prior plan formula to the cash balance formula.  Nor does Plaintiff dispute that the communications provided to participants in June 1994, September 1994, March 1995,

---

[21]    Plaintiff also does not meaningfully dispute that Count VI fails because it is time-barred.  Amex published the SPD in 1996, so any claim that the SPD was deficient accrued at that time.  This suit was filed more than three years after the six year limitations period expired.  (Defendants' Opening Brf. at 30-31).  Accordingly, this claim is time-barred.

April 1995, and June 1995 (all of which were attached to Defendants' Motion to Dismiss) satisfied any disclosure obligations under 29 U.S.C. § 1054(h), as it existed in 1995.

Instead, Plaintiff argues in conclusory fashion that there are "questions of fact" as to "whether appropriate notification was provided to plan participants and, if so, when it took place." (Opp. Brf. at 22, emphasis added). This is disingenuous. First, Plaintiff already has everything she needs to articulate whether the communications to her were "appropriate" and why they do not satisfy Amex's disclosure obligations under Section 204(h). Significantly, though, she has not identified even a single deficiency in Amex's disclosures.

Moreover, Plaintiff's suggestion that she needs discovery to know whether and when these communications were provided to other un-named "plan participants" is similarly misguided. This lawsuit was filed by a single Plaintiff. Despite the class allegations, no motion for class certification has been filed and, Defendants submit, none is warranted. The challenge that Defendants have leveled is to Plaintiff Paula Kritzman's claims. Plaintiff does not allege in her Complaint that she did not receive notice about the cash balance plan; instead she just alleges "upon information and belief" that Defendants did not provide "appropriate" communications to some participants. Even in her Opposition Brief, Plaintiff does not claim that she never received these communications, or that she did not receive them on the dates indicated on the communications and in the Declaration of Valeria Christensen.[22] In short, Plaintiff does not

---

[22] In considering Defendants' Motion to Dismiss, this Court may rely on "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." Rothman v. Gregor, 220 F.3d 8, 88 (2d Cir. 2000). Here, Plaintiff challenges the "appropriateness" of these communications as satisfying Defendants' disclosure obligations under ERISA Section 204(h) so they are properly considered as part of Defendants' Rule 12(b)(6) Motion. In any event, Defendants asked the Court to convert their Motion to one for summary judgment with respect to these communications, if necessary. (Opening Brief at 4 n. 2). Plaintiff has not offered any affidavit – or even argument in her brief – that she did not receive these communications. Plaintiff should not be permitted to use her own

challenge the adequacy of Defendants' communications to her about the Amex Plan so Count

VII should be dismissed.[23]

_____

inarticulate and imprecise pleading to force discovery on claims that plainly are without
merit.

[23]    As explained in Defendants' Opening Brief (p. 31), Count VII also is time-barred.  The cash
balance plan became effective on July 1, 1995.  Plaintiff does not dispute that Defendants
were required to issue their 204(h) notice by mid-June 1995 and any claim that Defendants
failed to do so – or that the communications provided were deficient – accrued at that time.
Plaintiff also does not dispute that Count VII is governed by a six-year limitations period.
This action was filed more than 4 ½ years after that limitations period expired.

### III.    <u>CONCLUSION</u>

For each and all of the foregoing reasons, Defendants respectfully request that the

Complaint be dismissed and that Judgment be entered in favor of Defendants.

Dated:  New York, New York
        May 19, 2006                    Respectfully submitted,

                                         **MORGAN, LEWIS & BOCKIUS LLP**

                                         By:___s/Christopher A. Parlo_____
                                              Christopher Parlo (CP 4310)
                                            cparlo@morganlewis.com

                                         101 Park Avenue
                                         New York, NY  10178
                                         (212) 309-6000
                                         Fax:  (212) 309-6001
                                         E-Mail:

                                         Michael L. Banks
                                         (*Pro Hac Vice* Admission Pending)
                                         Jeremy P. Blumenfeld
                                         (Admitted *Pro Hac Vice*)
                                         Morgan, Lewis & Bockius LLP
                                         1701 Market Street
                                         Philadelphia, Pennsylvania  19103-2921
                                         Tel.  215.963.5000
                                         Fax:  215.963.5001
                                         Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically on

May 19, 2006 and accordingly served upon the following:

Law Offices of Curtis V. Trinko, LLP
16 West 46th Street
Seventh Floor
New York, NY 10036

Schiffrin & Barroway, LLP
Joseph H. Meltzer, Esq.
Edward W. Ciolko, Esq.
Mark K. Gyandoh, Esq.
Joseph A. Weeden, Esq.
280 King of Prussia Road
Radnor, Pennsylvania 19087

/s/ Tamara Garnes Mata
Tamara Garnes Mata